# IN THE UNITED STATES DISTRICT COURT FOR THE

# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES GIBBONE<br>925 Beatty Road<br>Springfield, PA 19064<br>Plaintiff,<br><br>v.<br><br>SOUTHEAST DELCO SCHOOL<br>DISTRICT, 1560 Delmar Drive Folcroft, PA<br>19032<br><br>*And*<br><br>CRAIG BUTLER, individually and in his<br>official capacity as Chief Operating<br>and Financial Officer of Southeast<br>Delco School District, 1560 Delmar<br>Drive Folcroft, PA 19032<br>Defendants. | **Civil Action No.:** 2:25-cv-04529-KSM<br><br>JURY TRIAL DEMANDED |

## Notice of Complete Exhibit Set

Plaintiff, proceeding pro se, respectfully notifies the Court that, **pursuant to Judge Marston's rules**, only fifty (50) pages of exhibits could be submitted electronically with the Complaint. Accordingly, Plaintiff has mailed to the Clerk of Court the **complete Exhibit Set (Exhibits A–Z, totaling 285 pages)** so that the Court has the full record available. This submission is provided for the Court's reference and in compliance with the Court's filing requirements.

Respectfully submitted,


Dated: 9/24/2025

Charles Gibbone, Plaintiff

*Pro Se*

/s/ Charles Gibbone

925 Beatty Road

Springfield, PA 19064

Ca_gibbone@knights.neumann.edu

484-745-5025

# Exhibit A: April 29, 2024 Email to Butler – Protected Speech on Mismanagement

April 29, 2024 email chain from Plaintiff, a contracted IT technician at Southeast Delco School District, to Craig Butler (Chief Operating Officer and CFO), in which Plaintiff criticized the District's financial mismanagement, infrastructure failures (including a core network switch at end-of-life since 2014), and student burnout due to lack of device access. The email followed Plaintiff's formal job interview rejection and was sent after being told to contact Butler. Butler confirmed receipt. Also includes the automated reapplication rejection notice. This email constitutes core protected speech immediately preceding Plaintiff's termination.

**From:** Craig Butler <cbutler@sedelco.org>
**Sent:** Monday, April 29, 2024 4:48 PM
**To:** Charles Gibbone; Sunni Jennings
**Cc:** Yamil Sanchez; Stephanie Woolley; Megan Giunta; Matt Miller
**Subject:** Re: Thank You for Your Interest

Good afternoon Mr. Gibbone:

This response will confirm that I am in receipt of your below-stated email.

Thank you,

Craig


Craig A. Butler
Chief Operating and Financial Officer
**Southeast Delco School District**
1560 Delmar Drive
Folcroft, PA 19032
610-522-4300 Ext. ███
cbutler@sedelco.org

---

**From:** Charles Gibbone <cgibbone@sedelco.org>
**Sent:** Monday, April 29, 2024 3:37 PM
**To:** Sunni Jennings <sjennings@sedelco.org>; Craig Butler <cbutler@sedelco.org>
**Cc:** Yamil Sanchez <ysanchez@sedelco.org>; Stephanie Woolley <swoolley@sedelco.org>; Megan Giunta <mgiunta@sedelco.org>; Matt Miller <mmiller@sedelco.org>
**Subject:** Re: Thank You for Your Interest

Hello,

In Dr. Sanchez's DCIU AP speech, one of my favorite parts was when he spoke about how at Reading, whenever there was a big decision about buying something, not buying something, multiple people had to write off on it or approve it. This is for sure a policy that needs to be enforced here at Southeast Delco.

Craig, to my understanding, you are the Chief Financial Officer. A few months ago, you did not respond in time to an Overtime issue. The issue was the escalated to Dr. Wynder. After the overtime issue was resolved, you told Dominic, a former student and now employee, that he is no longer allowed to work the board meetings. This indirectly caused the TV news program to plummet, students are now being overworked to help Mr. Nurse. Now, Matt has to work the board meetings with no pay, and the stress trickles down from the top. At the same time, the Core Switch reached end of life in 2014- and if that goes out, all of the internet in every single building goes out. Sunni has had to replace 10+ end of life network switches since starting, which isn't even an IT director's job.

1

You may have a proven track record operating as the CFO, but I was wondering what your credentials are to make such big tech decisions. At the end of the day, while I may have gotten screwed over, it's the teachers and the students that have already felt the effects of weak leadership. With this being said, how am I not qualified? As far as i'm concerned, IT techs are here to help the future generation of students, as well as staff and admin. The people who really should be the ones letting you know if you're qualified or not are the principals, teachers, and students at the schools- not somebody who hasn't gone to AP in years.

I personally think it would be in EVERYONE'S best interest for a meeting. This extends beyond just me not getting hired- this has to do with individuals nonchalantly messing with staff and taxpayer dollars.

Let me know your thoughts,
Charles

Get Outlook for iOS

---

**From:** Sunni Jennings <sjennings@sedelco.org>
**Sent:** Monday, April 29, 2024 3:13:46 PM
**To:** Charles Gibbone <cgibbone@sedelco.org>; Craig Butler <cbutler@sedelco.org>
**Cc:** Yamil Sanchez <ysanchez@sedelco.org>; Stephanie Woolley <swoolley@sedelco.org>; Megan Giunta <mgiunta@sedelco.org>
**Subject:** RE: Thank You for Your Interest

Good Afternoon , Please forward your questions to Mr.  Craig Butler

**Thank You**

**Sunni Jennings**
**Southeast Delco School District**
**Director of Technology**
**1560 Delmar Drive**
**Folcroft, PA 19032**
**Email:** sjennings@sedelco.org
**Office: 610-522-4300 x** ▮▮▮

**Confidentiality Requirement:** This communication/ email message, including any attachment(s), is for the sole use of the intended recipient(s) and may contain privileged, confidential, or copyrighted information under applicable law.  Any unauthorized review, use, disclosure or distribution is strictly prohibited.  If you are not the intended recipient, you are formally notified that any review, use, disclosure, dissemination, copying or distribution of this email, or any of its contents, in whole or in part, is strictly prohibited. Please immediately contact the sender by email and delete this email from your system without copying or forwarding it.  Please DO NOT FORWARD OR ADD OTHER RECIEPIENTS to this email unless authorized by the original sender.

**From:** Charles Gibbone <cgibbone@sedelco.org>
**Sent:** Monday, April 29, 2024 3:02 PM
**To:** Sunni Jennings <sjennings@sedelco.org>
**Cc:** Yamil Sanchez <ysanchez@sedelco.org>; Stephanie Woolley <swoolley@sedelco.org>; Megan Giunta

<mgiunta@sedelco.org>
**Subject:** Fwd: Thank You for Your Interest

Hello,

I hope all is well. My name is Charles Gibbone, and I have been a contractor working at Southeast Delco for the past year and 6 months, with a proven track record of working closely with students and staff members. At your earliest convenience, please let me know in writing how I do not qualify for the job, and what I can do better going forward.

Thanks,
Charles

Get Outlook for iOS

**From:** Southeast Delco School District <do_not_reply@ted.peopleadmin.com>
**Sent:** Monday, April 29, 2024 1:56:16 PM
**To:** Charles Gibbone <cgibbone@sedelco.org>
**Subject:** Thank You for Your Interest

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Thank You for Your Interest

**Thank You for Your Interest**

I hope this email finds you well. We sincerely appreciate the time and effort you invested in the application/interview process for the open position at the Southeast Delco School District.

After careful consideration, we have chosen to move forward with other candidates for this particular position. Please know that this decision was not easy, as we were impressed with your skills, experience, and the qualities you would bring to our team.

We want to express our gratitude for your interest in joining our district. Although we won't be moving forward with your application at this time, we want to encourage you to continue pursuing your career goals. We believe that your skills and expertise will undoubtedly lead you to exciting opportunities in the future.

We wish you the very best in your job search and hope that you find a role that aligns perfectly with your career aspirations. Should you have any questions, please feel free to reach out to our Human Resources Department.

Thank you once again for your interest, and we wish you every success in your future endeavors.

Warm regards,
Human Resources

Southeast Delco School District

Powered by PowerSchool Unified Talent™ Applicant Tracking

3

**Exhibit B: April 30, 2024 Termination Notice – Pretextual Reason Provided by Robert Half**

Screenshot of an email from Abby Fox, Branch Director of Technology at Robert Half, to Plaintiff dated April 30, 2024, confirming the immediate termination of Plaintiff's contract with Southeast Delco School District. The email cites 'professionalism in the workplace regarding communication' as the reason, provided less than 24 hours after Plaintiff's April 29, 2024 email to Craig Butler (see Exhibit A). This constitutes evidence of temporal proximity and supports the claim of pretextual termination following protected speech criticizing District management.

2:02



Fox, Abigail (03...    1:33 PM
to me ⌄

Hi Charles,


Just wanted to follow up on our conversation
from yesterday.  Per our discussion, your contract
with the Southeast Delco School District was
terminated effective Tuesday, April 30th due to
professionalism in the workplace regarding
communication.


Shall you choose to reach out – you can call this
number (RH Hotline) (888) 875-4901.  If you
have any questions, let me know!


Thanks,

**Abby Fox**

**Branch Director of Technology**

Direct Line: (267) 996-4347

Cell Phone: (609) 744-8868

Connect with me on Linkedin

 Robert Half
Talent Solutions

**Exhibit C: April 29, 2024 Email Inquiry to Speak at Board Meeting
- Protected Public Speech Request**

April 29, 2024 email chain from Plaintiff to School Board President Sheree
Monroe and Racquel Irons, the principal's secretary, requesting guidance on the
process to speak at a public board meeting under the non-agenda section. Plaintiff,
a contracted employee at the time, intended to speak alongside two former students
to raise concerns about operational failures, network infrastructure issues, and their
impact on students and staff. Irons confirmed the process, requiring completion of
a comment card with 3 minutes allotted per speaker, while no further response was
received from Monroe. This communication constitutes protected petitioning
activity on matters of public concern, occurring the same day as Plaintiff's direct
email to CFO Craig Butler (see Exhibit A) and less than 24 hours before Plaintiff's
termination (see Exhibit B).

**Craig Butler**

| | |
|---|---|
| **From:** | Charles Gibbone <cgibbone@sedelco.org> |
| **Sent:** | Monday, April 29, 2024 10:12 AM |
| **To:** | Racquel Irons; Sheree Monroe |
| **Subject:** | Re: How to Speak at a Board Meeting |

Thank you. I'm not in today, but are there comment cards in the Main office available for pickup?

Get Outlook for iOS

**From:** Racquel Irons <rirons@sedelco.org>
**Sent:** Monday, April 29, 2024 10:10:46 AM
**To:** Charles Gibbone <cgibbone@sedelco.org>; Sheree Monroe <smonroe@sedelco.org>
**Subject:** Re: How to Speak at a Board Meeting

Good Morning Mr. Gibbone:
You and the students would fill out the "comment card". You will be called to the podium. You are correct, each community member/employee will have 3 minutes for comments.

Hope this helps,
Rock

Racquel Irons
Secretary to Principal Sherin
Academy Park High School
300 Calcon Hook Road
Sharon Hill, PA  19079
610-522-4330 x6230
rirons@sedelco.org



**From:** Charles Gibbone <cgibbone@sedelco.org>
**Sent:** Monday, April 29, 2024 9:51 AM
**To:** Sheree Monroe <smonroe@sedelco.org>; Racquel Irons <rirons@sedelco.org>
**Subject:** How to Speak at a Board Meeting

Hello,

How do I, along with 2 other former students speak at a board meeting for 3 minutes under the non-agenda section?

Thank you,
Charles

## Exhibit D: October 11, 2023 Email to Board President Monroe – Initial Protected Disclosure of Financial and Operational Concerns

Email from Plaintiff to School Board President Sheree Monroe raising concerns about Southeast Delco's employment practices, misuse of funding explanations ("the school can't afford it"), lack of sick leave protections for contractors, unpaid overtime to another tech staff member, and long-term harm to students from administrative inaction. The email follows an in-person discussion with Monroe in which she invited a follow-up. The email was forwarded to Defendant Butler without any reply from Monroe and constitutes Plaintiff's earliest written protected speech.

## Craig Butler

| | |
|---|---|
| **From:** | Charles Gibbone <cgibbone@sedelco.org> |
| **Sent:** | Wednesday, October 11, 2023 1:27 PM |
| **To:** | Sheree Monroe |
| **Cc:** | Dominic Vozzelli; Evan Nurse |
| **Subject:** | Southeast Delco |

Good afternoon,

This is Charles Gibbone, the PC Technician at Academy Park and Sharon Hill. We did have an opportunity to briefly meet in the past with Ms. Irons- hope everything is going well. When we spoke in the past, we had discussed the possibility of me working on the district website for extra pay, but there was an obstacle. The obstacle is I am not an "official" Southeast Delco Employee. Due to this, I cannot assist in school oriented programs like PowerSchool because I work with Robert Half, which is an agency. I was entirely fine working under contract because I was under the impression that eventually, I will get hired. The obstacle in the way was the fact that apparently they had to "buy me out" from the Agency, even if I worked for the school under the agency for years. The theory was the buyout would become less and less the longer I worked here. I could have sworn there was something not correct about this, considering I never saw a date in my contract. Fast forward to a month ago, I was correct- there was no contract date. Turns out they're just waiting to hire me because of a new director (Lessons can be learned as well on why Dan left...) and the school does not have "enough money" to hire me. Well, they hired another technician for Harris and Knight Academy. 3 Weeks ago I was in a car crash which resulted in a concussion and I had no sick days, no personal days, etc.

Also, Dominic Vozzelli is a former APHS graduate who has actively been involved in the Tech Crew since 2014 has not been paid his overtime. He already sent you an email but he will forward it to you. It's a shame because we had a director who genuinely cared, a former student who is now a technician that genuinely cares, and I genuinely care. The point of technology is bring humans together. If someone has an issue at ESC, their tech guy is right there (Sunni, the new director.) However, it's the STUDENTS and the staff that genuinely care for the students that are the most effected.

When you look at studies on why crime happens, it's because of relationship issues with parents, poverty, and the school district. I have had the notoriously WORST kids come into my office and give me nothing but respect, asking what this computer cart is, how this and that works. Mr. Nurse, the video production teacher along with Dominic has also been effected. He told me a story about a former troubled student who turned around and ended up working with the school for ten years, solely because the school had opportunities for him. The common theme around here is that there aren't opportunities- why? Because the school cannot "afford it." But just like my contract, no one even bothered to look. Using the phrase "the school can't afford it" is a convenient way of avoiding ownership of issues and pushing it onto someone else. Mr. Nurse assists in recording the board meetings and has for YEARS. My angle is not to simply just get hired or simply just to complain, but rather hold people accountable. When you think deeply about the subject, it's heartbreaking that we witness first hand students, staff, and parent's being let down due to excuses. If the 3 of us have to hold ourselves extremely accountable for our own actions since were overworked due to the lack of Technology support, it is very easy to sniff out people that are simply just making excuses. The irony is the people making the excuses and calling the shots never come to visit the schools. There's a stigma that the schools are dangerous and unsafe, but realistically they aren't terrible. What's terrible is the fact that they will genuinely go down-hill if technology continues to advance while admins remain ignorant to it and don't value it. The point of having tech people and a director is so that they can discover student and staff needs, then find ways to implement technology as a solution.

Let me know your thoughts, and if we can schedule a phone call or further discussion.

Thank you in advance,
Charles Gibbone

1

## Craig Butler

| | |
|---|---|
| **From:** | Sheree Monroe <smonroe@sedelco.org> |
| **Sent:** | Friday, October 13, 2023 5:40 PM |
| **To:** | Craig Butler |
| **Subject:** | Fwd: Southeast Delco |

CONFIDENTIALITY NOTICE: This email message, including any attachments, is intended for the sole use of the individual(s) and entity(ies) to whom it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended addressee, or are not authorized to receive for the intended addressee, you are hereby notified that you may not use, copy, disclose or distribute to anyone this email message including any attachments, or any information contained in this email message including any attachments. If you have received this email message in error, please immediately notify the sender by reply email and delete the message.

Sincerely,
Sheree Monroe

Begin forwarded message:

> **From:** Charles Gibbone <cgibbone@sedelco.org>
> **Date:** October 11, 2023 at 1:27:21 PM EDT
> **To:** Sheree Monroe <smonroe@sedelco.org>
> **Cc:** Dominic Vozzelli <dvozzelli@sedelco.org>, Evan Nurse <enurse@sedelco.org>
> **Subject:** Southeast Delco

Good afternoon,

This is Charles Gibbone, the PC Technician at Academy Park and Sharon Hill. We did have an opportunity to briefly meet in the past with Ms. Irons- hope everything is going well. When we spoke in the past, we had discussed the possibility of me working on the district website for extra pay, but there was an obstacle. The obstacle is I am not an "official" Southeast Delco Employee. Due to this, I cannot assist in school oriented programs like PowerSchool because I work with Robert Half, which is an agency. I was entirely fine working under contract because I was under the impression that eventually, I will get hired. The obstacle in the way was the fact that apparently they had to "buy me out" from the Agency, even if I worked for the school under the agency for years. The theory was the buyout would become less and less the longer I worked here. I could have sworn there was something not correct about this, considering I never saw a date in my contract. Fast forward to a month ago, I was correct- there was no contract date. Turns out they're just waiting to hire me because of a new director (Lessons can be learned as well on why Dan left...) and the school does not have "enough money" to hire me. Well, they hired another technician for Harris and Knight Academy. 3 Weeks ago I was in a car crash which resulted in a concussion and I had no sick days, no personal days, etc.

Also, Dominic Vozzelli is a former APHS graduate who has actively been involved in the Tech Crew since 2014 has not been paid his overtime. He already sent you an email but he will forward it to you. It's a shame because we had a director who genuinely cared, a former student who is now a technician that genuinely cares, and I genuinely care. The point of technology is bring humans together. If someone has

**Exhibit E: February 28, 2024 Email to Assistant Superintendent Ryan – Internal Whistleblowing on Chromebook Hoarding and Infrastructure Failures**

Email chain between Plaintiff and Assistant Superintendent Jeffrey Ryan, sent on February 28, 2024, in which Plaintiff raises concerns about approximately 1,600 Emergency Connectivity Fund (ECF) Chromebooks being hoarded in the Educational Service Center (ESC) building due to their undistribution to students, as well as dangerous infrastructure issues, including the District's core network switch being past end-of-life since 2014. Plaintiff highlights systemic mismanagement, financial waste, and their impact on students, requesting a confidential meeting to present printed documentation. Ryan agreed to meet during a school visit. This constitutes protected speech on matters of public concern and forms part of a pattern of whistleblowing leading up to Plaintiff's termination.

**Craig Butler**

| | |
|---|---|
| **From:** | Charles Gibbone <cgibbone@sedelco.org> |
| **Sent:** | Wednesday, February 28, 2024 7:42 AM |
| **To:** | Jeffrey Ryan |
| **Subject:** | Re: Technology Situation |

I get in at 8 and leave at 4. My office is at Academy Park. I have to run to Sharon Hill at times, but it's as needed. Let me know your schedule, as mine is very flexible. 10-15 minutes is all I need- I have printed out everything in advance. I see you semi frequently, so feel free to just walk in my office if you see me!

Get Outlook for iOS

**From:** Jeffrey Ryan <jryan@sedelco.org>
**Sent:** Wednesday, February 28, 2024 7:36:57 AM
**To:** Charles Gibbone <cgibbone@sedelco.org>
**Subject:** RE: Technology Situation

If you let me know your daily schedule, I will try to match up a school visit and stop in and see you.

**From:** Charles Gibbone <cgibbone@sedelco.org>
**Sent:** Wednesday, February 28, 2024 7:14 AM
**To:** Jeffrey Ryan <jryan@sedelco.org>
**Subject:** Technology Situation
**Importance:** High

Good morning,

I hope you're doing well. I understand this email may be a bit unexpected, but you have a proven track record and are notoriously visiting the schools. It's obvious that you clearly care about the state of the school.

With this being said, I would like to bring some things to your attention. We've met in person before, but i'm not sure if you're aware that I do not work for the district. I have been kept under contract for the past year, with promises of being hired. It's now clear to me for the last few months that I most likely won't be getting hired. Originally, I was meant to only be a contractor for a month to temporarily help out, but admin and staff felt that I was a good fit and I have been at AP, Sharon Hill, and essentially all over the district ever since. From my understanding, if someone is at the school as a temp, the district has to leave that job posting up on the website until the position is truly filled. They have had deleted the Desktop Technician listing for months in order to lead me on. Since working here, it's been on me to use my own gas to go to ESC and pick up laptops to distribute them to the schools since Sunni was not made aware that there's still 1600 devices over at ESC, taking up space in the telephone room, Jen Peterson's office, and every nook and cranny you can think of. I want to emphasize this disorganization is not on Sunni.

1

We had a meeting yesterday with Mr. Sherin, admin, and the Tech Department. It was eye opening to them- however unfortunately I'm well aware how bad the technology situation is because Dan Kitchen was trying to repair things for years, and was basically told "wait until it breaks."

This is why there was a complete roll over of techs, and Dominic and I are the only ones who have been here more than a year at this point. The core switch, which controls the internet for the WHOLE district, reached it's end of life in 2014. The warranty expired before that. With this being said, if this fails, the whole district would lose internet access, phones, printers, etc. The lights are also WiFi controlled now, meaning the lights would go out.

I have a ton of information. I was wondering if you would be available to preferably meet in person to discuss this in private. If not, please let me know if you are available for a phone call. I have printed out tons of information that helps paint the bigger picture of what's going on within the district. I'm hoping this information will be kept private until Dr. Sanchez starts, and then all of this can be relayed to him.

I appreciate the fact that you have been passionate about the district for apparently almost a decade! Thank you so much in advance.

Sincerely,
Charles


Get Outlook for iOS

**Craig Butler**
_____

| | |
|---|---|
| **From:** | Charles Gibbone <cgibbone@sedelco.org> |
| **Sent:** | Wednesday, February 28, 2024 2:10 PM |
| **To:** | Jeffrey Ryan |
| **Subject:** | RE: Technology Situation |

Thanks for that info.

Do you have a personal email where I can send the information? If not, I can just give you the info next week in an envelope. I'm going to type out the details in advance, print it out, and put everything in an envelope for you. If you visit Sharon Hill I can also just give you the envelope then.

If you could delete our emails, I would really appreciate it. I do want ANYBODY knowing I reached out to you, except Dr. Sanchez.

**From:** Jeffrey Ryan <jryan@sedelco.org>
**Sent:** Wednesday, February 28, 2024 7:37 AM
**To:** Charles Gibbone <cgibbone@sedelco.org>
**Subject:** RE: Technology Situation

If you let me know your daily schedule, I will try to match up a school visit and stop in and see you.


**From:** Charles Gibbone <cgibbone@sedelco.org>
**Sent:** Wednesday, February 28, 2024 7:14 AM
**To:** Jeffrey Ryan <jryan@sedelco.org>
**Subject:** Technology Situation
**Importance:** High

Good morning,

I hope you're doing well. I understand this email may be a bit unexpected, but you have a proven track record and are notoriously visiting the schools. It's obvious that you clearly care about the state of the school.

With this being said, I would like to bring some things to your attention. We've met in person before, but i'm not sure if you're aware that I do not work for the district. I have been kept under contract for the past year, with promises of being hired. It's now clear to me for the last few months that I most likely won't be getting hired. Originally, I was meant to only be a contractor for a month to temporarily help out, but admin and staff felt that I was a good fit and I have been at AP, Sharon Hill, and essentially all over the district ever since. From my understanding, if someone is at the school as a temp, the district has to leave that job posting up on the website until the position is truly filled. They have had deleted the Desktop Technician listing for months in order to lead me on. Since working here, it's been on me to use my own gas to go to ESC and pick up laptops to distribute them to the schools since Sunni was not made aware that there's still 1600 devices over at ESC, taking up space in the telephone room, Jen Peterson's office, and every nook and cranny you can think of. I want to emphasize this disorganization is not on Sunni.

We had a meeting yesterday with Mr. Sherin, admin, and the Tech Department. It was eye opening to them- however unfortunately I'm well aware how bad the technology situation is because Dan Kitchen was trying to repair things for years, and was basically told "wait until it breaks."

This is why there was a complete roll over of techs, and Dominic and I are the only ones who have been here more than a year at this point. The core switch, which controls the internet for the WHOLE district, reached it's end of life in 2014. The warranty expired before that. With this being said, if this fails, the whole district would lose internet access, phones, printers, etc. The lights are also WiFi controlled now, meaning the lights would go out.

I have a ton of information. I was wondering if you would be available to preferably meet in person to discuss this in private. If not, please let me know if you are available for a phone call. I have printed out tons of information that helps paint the bigger picture of what's going on within the district. I'm hoping this information will be kept private until Dr. Sanchez starts, and then all of this can be relayed to him.

I appreciate the fact that you have been passionate about the district for apparently almost a decade! Thank you so much in advance.

Sincerely,
Charles


Get Outlook for iOS

**Exhibit F: March 5, 2024 Email to Incoming Superintendent Sanchez – Advance Warning of Retaliation and Offer of Whistleblower Documentation**

March 5, 2024 email from Plaintiff to incoming Superintendent Yamil Sanchez Rivera and secretary Kalena Wheeler, detailing Plaintiff's year-long contractor status with Southeast Delco School District and offering a 30+ page folder of documentation highlighting widespread technology mismanagement. Plaintiff addresses hiring irregularities, internal disorganization, and expresses concern about potential retaliation with the statement: "if my rights were to randomly get taken away / the business department randomly ended my contract." The email also notes recent positive changes in the technology department, including the start of weekly meetings, in anticipation of new leadership. No response was received. This constitutes protected whistleblower speech on matters of public concern and underscores pre-termination alerts to executive leadership.

## Craig Butler

| | |
|---|---|
| **From:** | Charles Gibbone <cgibbone@sedelco.org> |
| **Sent:** | Tuesday, March 5, 2024 2:24 PM |
| **To:** | Yamil Sanchez |
| **Cc:** | Kalena Wheeler |
| **Subject:** | Possible Technology Meeting |

Good afternoon Dr. Sanchez,

Nice to "meet" you! My name is Charles Gibbone, and I am a contractor employed over at Sharon Hill and Academy Park High School. Even though we haven't officially met in person, I have heard many great things and picked up on your passionate energy while listening to part of the new superintendent speech. Before anything, I want to mention I really appreciate you, as well as most of the staff already. I have already seen you down at the schools, and you seem very personable and receptive of individual's feelings- the complete opposite of what we had before.

I have been a contractor employed by Robert Half working at APHS for a full year now. I was originally supposed to be here for only a month, but admin and staff at the high schools appreciated my work so much that my contract was extended to no end date, and i've been waiting to be employed by the district for a full year as a Help Desk Technician Tech. I'm almost positive Mrs. Wooley has no idea who I am, and I have reason to believe they are conducting interviews behind my back to ensure a new tech is put into place.

Given the fact that i'm a contractor, the original premise of me being employed here was that I would make technology recommendations. I would like to bring urgent matters to your attention. I have put together an envelope with 30+ pages of documentation from our Tech inventory itself and printed it out. I would like to get this information to you as soon as possible. I understand that you don't officially start until April, but I think it's very important you're given this information ASAP, especially if my rights were to randomly get taken away/ the business department randomly ended my contract with Robert Half.

As of now, the whole tech department only has 4 members including myself and the director. The new director and Technology supervisor at ESC are new as of this year, while Dominic Vozelli and I have been here for a little more than a year under the old Director and Judy Orner, who worked here for 25 years. I personally believe the new director and Technology supervisor have no idea what's really going on behind the scenes, but I also am aware that the information is being twisted by another individual within the business department. Please let me know your thoughts and if it's possible I can drop off the envelope. Admin down at the schools will be able to validate what the points i'm making in the enevelope , and now we have weekly tech meetings to make sure things around the school is up to date. We never had weekly tech meetings until there was word you were starting.

Thank you in advance, and I look forward to meeting you!

Sincerely,
Charles

Get Outlook for iOS

**Exhibit G: April 29, 2024 Email to School Administrators and Coworkers - Announcement of Resignation in Anticipation of Retaliation**

April 29, 2024 email chain from Plaintiff to district principals, technology staff, and administrators, informing them that the following day would be his last after being informed by HR that he was not selected for a permanent position. Plaintiff states he will complete his remaining time "for the students and teachers, not ESC," and requests discretion regarding his departure. In a follow-up email to Sharon Hill Principal Nathaniel Robinson—who had weeks earlier offered to write a letter of recommendation—Plaintiff declines the offer, stating: **"They literally only want their group of individuals to have power, and they know I know something."** This contemporaneous statement reflects Plaintiff's real-time belief that his termination was retaliatory.. This exhibit documents foreknowledge of adverse action adds weight to Plaintiff's protected speech claims, and demonstrates awareness of institutional motive and political exclusion.

**Craig Butler**

| | |
|---|---|
| **From:** | Charles Gibbone <cgibbone@sedelco.org> |
| **Sent:** | Monday, April 29, 2024 3:08 PM |
| **To:** | Nathaniel Robinson |
| **Subject:** | Fwd: Last Day Wednesday 4/29 |

Mr. Robinson,

I knew this was going to happen- this is why I said don't bother writing the letter of recommendation. If anyone asks, please tell them about my proven track record. I just got absolutely screwed over, and i'm not sure if you relate, but I for sure notice tech being worse off than before. It extends beyond me getting hired- they literally only want their group of individuals to have power, and they know I know something.

I'll ser you tomorrow.

Get Outlook for iOS

---

**From:** Charles Gibbone
**Sent:** Monday, April 29, 2024 2:23:30 PM
**To:** Richard Sherin <rsherin@sedelco.org>; Latarsha Threadgill <lthreadgill@sedelco.org>; Charles Baxter <cbaxter@sedelco.org>; Daniel Ruane <druane@sedelco.org>; Nathaniel Robinson <nrobinson@sedelco.org>
**Cc:** Laura Kluza <lkluza@sedelco.org>; Evan Nurse <enurse@sedelco.org>; Dominic Vozzelli <dvozzelli@sedelco.org>; Christine Graham <cgraham@sedelco.org>
**Subject:** Last Day Wednesday 4/29

Hello,

I received an email from HR just an hour ago stating that I did not qualify for the job i've been doing for the past year and a half. I will be coming in tomorrow and Wednesday to finish up the last of my work- for the students and teachers, not ESC.

I will update all of you if anything changes, but please keep this on the low until Wednesday. After Wednesday, i'm not sure if they already have a replacement tech for APHS and SHS, but that's no longer my concern. After Wednesday, please message Sunni Jennings or Matt Miller for tech assistance going forward.

Thank you,
Charles

Get Outlook for iOS

**Exhibit H: April 29, 2024 Text Message Exchange with Technology Supervisor – Referral to Craig Butler as Final Decision-Maker**

April 29, 2024 iMessage exchange between Plaintiff and direct supervisor Matt Miller, in which Plaintiff asks why he was deemed "not qualified" for the full-time position he had already been performing for over a year. Miller declines to answer and states: *"I have been told to redirect you to Mr. Butler... as he is Sunni and I's supervisor."* This confirms that Craig Butler was the final decision-maker regarding hiring decisions, reinforcing his role as a final policymaker under *Monell* liability. Miller offers to write a recommendation but avoids addressing the core question of qualifications, indicating awareness of a non-performance-based rationale. This exchange occurred on the same day as Plaintiff's protected email to Butler (Exhibit A) and shortly before Plaintiff's termination (Exhibit B), supporting temporal causation and pretext.

4:00



matt

Apr 29, 2024 at 2:12 PM

Hello, I just got an email saying I was not chosen for the job i've been doing for the past year. Can you let me know why that is?

I honestly don't know if I'm allowed to answer that question, I would call or email HR

Here's the thing- you are my supervisor so you're allowed. But aside from that, you can also provide recommendations. I think its safe to say obviously i'm qualified for the job

Considering i've done the job WITH you

so i'm not asking what HR said, I want YOU to tell me using your own personal experiences with me, on why I

iMessage

4:00



matt

> Here's the thing- you are my supervisor so you're allowed. But aside from that, you can also provide recommendations. I think its safe to say obviously i'm qualified for the job

> Considering i've done the job WITH you

> so i'm not asking what HR said, I want YOU to tell me using your own personal experiences with me, on why I would not be qualified.

I apologize, but I cannot answer those questions. Should you need a recommendation feel free to email me and I would be happy to help you out. I have been told to redirect you to Mr. Butler if you want any further information or have any questions as he is Sunni and I's supervisor

iMessage

## Exhibit I: April 30, 2024 Post-Termination Email – Butler's Direct Involvement and Physical Presence

Internal email chain from April 30, 2024, showing Craig Butler directly confirming and thanking staff for participating in the termination of Plaintiff's contract. The message confirms Butler's operational authority and physical involvement in the firing process. Sent hours after Plaintiff was removed from Academy Park High School, this exhibit corroborates that Butler was not only the final decision-maker but also actively present, underscoring his role as a final policymaker under *Monell*. The termination occurred less than 24 hours after protected speech emails to Butler (Exhibit A) and the school board (Exhibits C–D), supporting Plaintiff's First Amendment retaliation claim.

**From:** Craig Butler <cbutler@sedelco.org>
**Sent:** Tuesday, April 30, 2024 11:12 AM
**To:** Sunni Jennings; Dominic Vozzelli; Evan Nurse; Matt Miller; Stephanie Woolley; Richard Sherin; Latarsha Threadgill; Jeremiah Rusnov
**Cc:** Yamil Sanchez; Jeffrey Ryan; Guy Lowery; Stephanie Woolley
**Subject:** Re: Charles Gibbone contract services terminated

Good morning Mr. Jennings:

Thank you to you and Mr. Miller for your help and assistance concerning this matter. Thank you to the followings team members for being present, at APHS, this morning:

       Mrs. Latarsha Threadgill
       Mr. David Jackson
       Mr. Sunni Jennings

Best,

Craig

---

**From:** Sunni Jennings <sjennings@sedelco.org>
**Sent:** Tuesday, April 30, 2024 10:53 AM
**To:** Dominic Vozzelli <dvozzelli@sedelco.org>; Evan Nurse <enurse@sedelco.org>; Matt Miller <mmiller@sedelco.org>; Craig Butler <cbutler@sedelco.org>; Stephanie Woolley <swoolley@sedelco.org>; Richard Sherin <rsherin@sedelco.org>; Latarsha Threadgill <lthreadgill@sedelco.org>; Jeremiah Rusnov <jrusnov@sedelco.org>
**Subject:** Charles Gibbone contract services terminated

Good Morning Charles Gibbone service contract have been terminated effective immediately. I have collected his keys bag and laptop all his access to district software has been disabled

Thank you.

Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

1

# Exhibit J: Infrastructure and Operations Report – Plaintiff's Analysis of Systemic Mismanagement Based on Internal Knowledge and Public Records

March-April 2024 draft report prepared by Plaintiff as a contracted PC Technician, intended for the Southeast Delco School Board but unsent due to termination on April 30, 2024, and Plaintiff's desire to corroborate all claims with Right-to-Know (RTK) requests to prevent misrepresentation or accusations of falsehood. Updated post-termination with RTK-obtained documents (e.g., OOR rulings from May/June 2025, DA denial April 2025) to validate observations. The report details systemic technology mismanagement, including the undistributed 1,606 Emergency Connectivity Fund Chromebooks (federal grant waste), end-of-life core network switch since 2014 (safety/operational risks), payroll vulnerabilities ($120k fraud), outdated Wi-Fi/passwords, server room hazards, AV failures, and recordkeeping gaps (no termination docs). It cites emails, photos, and legal findings, constituting protected whistleblower activity on public concern matters disrupted by retaliation



# Southeast Delco School District Technology Infrastructure and Operational Review



Charles A. Gibbone

CLAIMS MADE IN GOOD FAITH AND CORROBORATED BY RTK REQUESTS

# Southeast Delco School District Technology Infrastructure and Operational Review

**Prepared by Charles Gibbone** – *PC Technician (Contracted through Robert Half), March 2023 – April 30, 2024*

*All information contained in this report has been obtained and compiled in good faith. This document preserves and presents verifiable information regarding technology infrastructure, recordkeeping practices, resource allocation, and internal communication during my 14-month tenure at Academy Park High School and Sharon Hill School in Southeast Delco School District.*

## Executive Summary

This report consolidates first-hand observations, internal correspondence, legal records, and physical documentation gathered during my service as a PC Technician in Southeast Delco School District (March 2023 – April 30, 2024). It provides a fact-based overview of systemic issues affecting systemic infrastructure stability, device deployment, classroom equipment, financial recordkeeping, and organizational transparency. Throughout 2023 and early 2024, I observed recurring patterns: critical infrastructure left unaddressed until failure, recordkeeping gaps (e.g. missing invoices and reports), inconsistent inventory control, and a reactive leadership approach that delayed essential repairs and deployments. These issues culminated in my abrupt termination following efforts to raise accountability concerns.

On April 29, 2024, I raised concerns to Chief Operating and Financial Officer (COO/CFO) Craig Butler and inquired about speaking at a public board meeting. I was terminated the following day after inquiring about the job denial. No explanation was provided at the time of termination

The findings are substantiated by timestamped emails, meeting logs, Right-to-Know Law (RTKL) rulings, photographic evidence, and sworn affidavits by district officials. Confirmed legal filings from the Pennsylvania Office of Open Records (OOR) and a formal denial from the Delaware County District Attorney's Office (DA) further corroborate these issues. Notably, as of April 2025 the DA's Office confirmed an active criminal investigation into financial fraud and public corruption at Southeast Delco, underscoring the depth of the district's systemic issues. This report assigns no personal blame but emphasizes the urgent need for procedural improvements, proactive planning, and rigorous documentation practices to restore transparency and integrity in the district's operations.

## Section 1: Infrastructure and Operational Concerns

The technological and physical infrastructure of Southeast Delco School District – critical for safety, education, and data security – was in systemic disrepair throughout 2023 and early 2024. Major systems (the core network switch, Wi-Fi access points, internal cabling, email and phone servers, and even the payroll system) were outdated and suffered repeated failures that compromised student safety, disrupted academic testing, and exposed sensitive data. Despite the availability of funding opportunities (such as E-Rate and state technology grants), these systems were not adequately upgraded or maintained. The district's approach was overwhelmingly reactive – for example, a last-minute migration of email to Microsoft 365 only when the old server was on the brink of collapse, a months-long delay in changing an insecure Wi-Fi password, and no audit or upgrade of the payroll system even after a major fraud incident in July 2023. An ongoing Delaware County District Attorney investigation into fraud (active as of April 2025) further suggests that these infrastructure issues were part of a broader pattern of oversight deficiencies.

### 1.1: Core Network Switch and District-Wide Network Instability

The district's network backbone – the core network switch, installed in 2014 – was far beyond its 5–7 year useful life, making it a critical point of failure by 2023. This core switch directed all data traffic across the district, supporting essential functions such as:

- Internet access for all schools

- VoIP phone service for emergency communication

- Security camera connectivity for building safety

- Light systems and time clocks for scheduling

- Wi-Fi access points supplying classroom internet

Despite this critical role, the core switch had no warranty or support and was officially end-of-life. By 2023, it was effectively obsolete, yet it remained in place without a replacement plan. Repeated network outages throughout 2023–24 exposed the fragility of this infrastructure:

- Weather-related failures: Routine rainstorms caused cascading switch failures, knocking out internet, phones, and security systems district-wide. In one severe incident in August 2023, Harris Elementary lost all internet, phones, and systems for months after a storm – crippling educational continuity and safety protocols.

On October 11, 2023, I emailed Board President Sheree Monroe: **"The Core Switch reached end of life in 2014 – if that goes out, all of the internet in every single building goes out"**. This warning was forwarded to Butler but received no response. Again on February 28, 2024, I

warned Assistant Superintendent Jeffrey Ryan: **"The core switch… reached its end of life in 2014… if this fails, the whole district would lose internet access, phones, printers, etc."** Finally, on April 29, 2024, I emailed Butler directly: **"The Core Switch reached end of life in 2014… Sunni has had to replace 10+ end of life network switches"**, again pleading the case. No substantive response was received, and my termination occurred the next day.

> **From:** Charles Gibbone <cgibbone@sedelco.org>
> **Sent:** Monday, April 29, 2024 3:37 PM
> **To:** Sunni Jennings <sjennings@sedelco.org>; Craig Butler <cbutler@sedelco.org>
> **Cc:** Yamil Sanchez <ysanchez@sedelco.org>; Stephanie Woolley <swoolley@sedelco.org>; Megan Giunta <mgiunta@sedelco.org>; Matt Miller <mmiller@sedelco.org>
> **Subject:** Re: Thank You for Your Interest
>
> Hello,
>
> In Dr. Sanchez's DCIU AP speech, one of my favorite parts was when he spoke about how at Reading, whenever there was a big decision about buying something, not buying something, multiple people had to write off on it or approve it. This is for sure a policy that needs to be enforced here at Southeast Delco.
>
> Craig, to my understanding, you are the Chief Financial Officer. A few months ago, you did not respond in time to an Overtime issue. The issue was the escalated to Dr. Wynder. After the overtime issue was resolved, you told Dominic, a former student and now employee, that he is no longer allowed to work the board meetings. This indirectly caused the TV news program to plummet, students are now being overworked to help Mr. Nurse. Now, Matt has to work the board meetings with no pay, and the stress trickles down from the top. At the same time, the Core Switch reached end of life in 2014- and if that goes out, all of the internet in every single building goes out. Sunni has had to replace 10+ end of life network switches since starting, which isn't even an IT director's job.

- 
- Unmitigated single point of failure: A core switch failure could cut off every school's internet, VoIP phones, security cameras, and even the Wi-Fi-controlled lighting in classrooms. I explicitly highlighted this risk in February 2024: **"The lights are also WiFi controlled now, meaning the lights would go out [if the core switch failed]".** This vulnerability was especially dire during high-stakes periods like Keystone Exams, when network crashes forced students to borrow laptops to test – only to find many laptops unusable due to battery or charger issues (see Section 2.1). The core switch's weather sensitivity (e.g. the Harris Elementary outage) meant that normal storms could leave entire buildings offline for days, unable to function.

- Delayed action: No proactive replacement of the core switch was initiated until late April 2024, when a new Superintendent (Dr. Yamil Sanchez) arrived. By then, the situation was dire. Staff described the district's repairs as purely reactive – reactive – responding to each failure only after it occurred, rather than investing in a stable, long-term solution. The district did not fully leverage available funding (such as E-Rate, vendor grants, and state programs) that could have subsidized a new core network switch. By prioritizing short-term cost savings, the district left the network so fragile that a single severe storm could have caused a complete district-wide outage.

- Safety risks: Disabled VoIP phones meant teachers could not call security or the main office during emergencies. Offline security cameras left campuses blind to intruders or incidents.

- Academic disruption: Network crashes during Keystone state testing halted online exams. Students had to stop testing or attempt using borrowed devices – which themselves were scarce – directly harming academic performance.

- Data exposure: The Wi-Fi network used a universally known password ("qwertyui"), which was unchanged for months. This insecure password was widely known by students and staff, posing an obvious risk of unauthorized access to sensitive data.

- Operational breakdowns: Basic systems tied to the network went down during outages. For instance, Google Classroom and printing became unavailable, stalling instruction and administrative tasks. Even lighting systems (which were Wi-Fi controlled) could fail, plunging classrooms into darkness until the network was restored.

**Missed Preventative Measures and Funding Oversights:**

- No budget for replacement: Despite clear warnings and funding avenues, no budget or plan was allocated to replace the core switch. Generous external funding (E-Rate, vendor grants, etc.) that could have covered much of the cost was left on the table until the arrival of a new superintendent.

- Security patches ignored: Outdated switches and servers remained unpatched, heightening the risk of cyberattacks and FERPA violations by leaving student/staff data vulnerable.

- Understaffing worsened impact: By 2023, the IT staff had dwindled to two technicians (Dominic Vozzelli and myself) after multiple departures and retirements. We were left to manually jury-rig fixes to systems that would normally require external specialists. Routine upgrades – new wiring, updating the Wi-Fi password, cleaning up overheated server rooms, implementing cybersecurity measures – were all postponed since external vendors were not being hired to fix these issues.

- Single-person knowledge silo: With so few IT staff, an enormous burden fell on the new IT Director, Sunni Jennings. fixes were delayed because there was simply not enough manpower, leaving schools exposed to prolonged outages and slow recoveries.

**Legal and Safety Risks:** The infrastructure failures introduced potential legal liabilities:

- OSHA and fire code violations: Overloaded electrical circuits, exposed wiring, and failing battery backups in server rooms created workplace safety hazards that violated regulations (see Section 3 for more on electrical hazards).

- Privacy breaches: Outdated, insecure systems (e.g. the public Wi-Fi password, lack of email security prior to Microsoft 365 migration) could have resulted in FERPA violations if student data were accessed or stolen.

- Emergency liability: If a tragedy had occurred while phones were down or cameras offline, the district could face severe liability for having allowed those critical safety systems to lapse.

- Financial waste: By continually relying on patchwork fixes instead of replacing failed equipment, the district's approach resulted in additional taxpayer funds spent on overtime and short-term repairs, likely increasing long-term costs.

**1.2: Emergency Microsoft 365 Email Migration**

Until late 2023, the district continued to host all staff and student email on aging on-premises email servers, rather than migrating to a modern cloud platform. This was years behind industry standards, as most organizations had adopted cloud email (e.g. Microsoft 365) well before 2018. The legacy email system lacked redundancy and modern security, and by mid-2023 it was highly unstable, risking a catastrophic loss of email data (including student records and staff communications). Only when the old system was near total failure did the district finally undertake an emergency migration to Microsoft 365 in late 2023.

This reactive, last-ditch migration was not a planned upgrade but a scramble to avert imminent data loss. Had the server crashed completely, critical correspondence and records could have been irretrievably lost, disrupting operations and violating record retention obligations. Several risks and missed opportunities characterized this incident:

- Data loss narrowly avoided: By delaying the migration until the last possible moment, the district risked losing years of email records. A sudden failure could have wiped out student information, teacher–parent communications, and public records, posing FERPA compliance issues.

- Operational downtime: The emergency migration itself caused email downtime, hampering communication among staff, students, and parents at a time when email was essential for coordinating academics (especially with intermittent remote learning needs).

- Security exposure: Keeping the obsolete email servers running as long as they did left the district open to cyberattack. The old servers lacked modern security patches and features, compounding other cybersecurity lapses like the notorious "qwertyui" Wi-Fi password that was still in use (see Section 1.1).

- Failure to plan: The district missed multiple opportunities to migrate earlier – for example, through E-Rate funding or grants that could have made an earlier Microsoft 365 adoption budget-neutral. A proactive migration could have been done in a controlled manner rather than in crisis mode. Instead, the move to Microsoft 365 only happened

when total collapse was imminent, highlighting a systemic lack of prioritization for critical infrastructure upgrades.

In summary, the email server saga exemplified a reactive pattern of addressing problems only after issues occurred. While the migration ultimately prevented permanent email loss, it should never have been an emergency project. The lack of foresight unnecessarily endangered communication channels and records, further eroding operational integrity.

**1.3: Outdated Wi-Fi, Internal Wiring, and Server Room Conditions**

The Wi-Fi network and internal wiring in many Southeast Delco schools were severely outdated, leading to daily connectivity issues and unsafe workarounds. By late 2023, network access points (APs) across Academy Park High School (APHS) and Sharon Hill School (SHS) were so obsolete that they required constant manual resets to keep classrooms online. With only two IT technicians on staff, simply restarting APs became a significant duty. Even then, the old APs often could not handle modern bandwidth needs, causing frequent drops especially during online testing or when many devices connected simultaneously. For example, APHS Room 132 had no reliable internet until its AP was completely replaced in October 2023 – after sustained disruptions that undermined instruction and testing in that classroom.

The root cause was the aging network cabling and hardware. Large portions of the district's network still ran on outdated cables and Access Points, incapable of gigabit speeds or supporting newer Power-over-Ethernet devices. This created bottlenecks and instability. A plan for Verizon to install new fiber optic lines to the schools languished in discussion with no action taken until April 2024 (after Sanchez took over). Thus, almost the entire 2023–24 school year passed with substandard internet connectivity, affecting everything from digital curriculum delivery to IP-based phone and bell systems. In one email on Feb 28, 2024, I warned: **"The lights are also WiFi controlled now, meaning the lights would go out [if the network failed]"**, highlighting that even basic building operations (like lighting) were at risk from the shaky network.

The server rooms and network closets (IDF closets) were themselves part of the problem. They were often overfilled with clutter and improperly used for storage of unrelated equipment. At the Education Services Center (ESC), for instance, the telecommunications room intended for networking gear had been packed with over 1,606 new Chromebooks sitting in boxes (more on these in Section 2). I documented this on Feb 28, 2024: **"There's still 1600 devices over at ESC, taking up space in the telephone room, Jen Peterson's office, and every nook and cranny"**. Storing thousands of devices in a network closet not designed for such volume created a heat and cable congestion hazard, threatening the very networking equipment that room was meant to house. It also exemplified the lack of asset management – those Chromebooks sat idle in storage while schools like APHS and SHS suffered device shortages.

**From:** Charles Gibbone <cgibbone@sedelco.org>
**Sent:** Wednesday, February 28, 2024 7:14 AM
**To:** Jeffrey Ryan <jryan@sedelco.org>
**Subject:** Technology Situation
**Importance:** High

Good morning,

I hope you're doing well. I understand this email may be a bit unexpected, but you have a proven track record and are notoriously visiting the schools. It's obvious that you clearly care about the state of the school.

With this being said, I would like to bring some things to your attention. We've met in person before, but I'm not sure if you're aware that I do not work for the district. I have been kept under contract for the past year, with promises of being hired. It's now clear to me for the last few months that I most likely won't be getting hired. Originally, I was meant to only be a contractor for a month to temporarily help out, but admin and staff felt that I was a good fit and I have been at AP, Sharon Hill, and essentially all over the district ever since. From my understanding, if someone is at the school as a temp, the district has to leave that job posting up on the website until the position is truly filled. They have had deleted the Desktop Technician listing for months in order to lead me on. Since working here, it's been on me to use my own gas to go to ESC and pick up laptops to distribute them to the schools since Sunni was not made aware that there's still 1600 devices over at ESC, taking up space in the telephone room, Jen Peterson's office, and every nook and cranny you can think of. I want to emphasize this disorganization is not on Sunni.

In short, the district did not modernize its networking infrastructure and misused its server facilities, resulting in daily disruptions. Instead of investing in proactive upgrades, the district waited until multiple system failures had occurred before acting. This lack of proactive maintenance directly impacted on educational operations (through slow or lost connectivity) and even safety protocols (PA systems, lights, and phones dependent on networks). It wasn't until after April 2024 that new leadership began addressing basics like contracting for fiber upgrades and clearing network rooms – by which time students and staff had endured connectivity problems throughout the year that could have been avoided.

## 1.4: TimeClock Plus Payroll System Vulnerabilities

One significant operational weakness was the district's payroll and timekeeping system (TimeClock Plus), which remained insecure and prone to fraud even after a major scandal. The system allowed employees to clock in and out with 4-digit PIN codes – and any four-digit combination that coincidentally matched a valid PIN would grant access, since no stronger authentication was implemented. In effect, one could sign into someone else's timesheet by accident or design, and the system would accept it. This vulnerability was discovered personally after a well-publicized payroll fraud incident in July 2023, where several now-former aides (Personal Care Assistants) falsified hours they never worked, resulting in about $120,000 in overpayments. According to a CBS Philadelphia news report on August 25, 2023, police confirmed the ~$120k loss and also noted that "another employee was very recently removed from the district building for allegations of financial impropriety". That other employee was Nikeya Fisher, the Director of Accounting, who had internally raised concerns and was

subsequently escorted out by police. The scandal also led to the resignation of Superintendent Brenda Wynder and a criminal referral to law enforcement.

| | |
|---|---|
| **From:** | Nikeya Fisher <nfisher@sedelco.org> |
| **Sent:** | Wednesday, June 14, 2023 1:11 PM |
| **To:** | Chiwishi Abney; Reyshon Fowler; Sheree Monroe; Theresa Harris-Johnson; Roger Jack; Rebecca Perry; Aimee Washington; Rochelle Womack; Cynthia Woodfolk |
| **Subject:** | Misappropriated Funds |

Hello All,

It has come to my attention that I was instructed by Mr. Craig Butler to continuously fund Dr. Brenda Wynder's HSA account from 2021-2022 from the districts funds until Independence Blue Cross informed me that the contributions will not be accepted. These funds was misappropriated from the district and Dr. Wynder used these funds to pay for her appointments/treatments. This was not approved and not instructed by HR who usually instructs who to fund and how much. Dr. Wynder was funded well over an additional $10,000. I needed to bring this matter to the board so you can see how the CFO is misappropriating funds of the District.

*Nikeya Fisher*
*Director of Accounting and Finance*
*Southeast Delco School District*
*1560 Delmar Drive*
*Folcroft, PA 19032*
*610-522-4300 ext. 5320*

Despite the exposure of a major fraud and internal warnings (for example, from Nikeya Fisher), the district did not implement any security improvements to the payroll system after July 2023.TimeClock Plus continued running with the same vulnerabilities – no PIN security enhancements, no audits of clock-ins, no upgrades or replacements – for the remainder of the school year.

I filed an RTKL request with the Delaware County DA's Office to see if their investigation had uncovered anything further about undisclosed concerns I had. The DA's Office responded by formally denying the request because there is an active criminal investigation ongoing (as detailed in Section 5.3). This means that as of April 2025, the district was still under criminal investigation for fraud and public corruption, well beyond the initial 2023 incident. The fact that the same CFO/COO remained in charge during this period, and that no technical fixes or audits were conducted on TimeClock Plus, suggests a significant lapse in financial oversight and highlights that vulnerabilities were addressed only after they had been exploited.

- At least $120,000 was stolen due to lack of financial oversight in 2023. With the system and financial controls pertaining to it left unchanged, the district remained at risk of further losses.

- Legal and compliance risks: The ongoing DA investigation signals potential criminal liability for individuals involved or responsible for oversight. Additionally, the district

may face legal consequences for negligence if it's shown they failed to act after discovering vulnerability.

- Cultural impact: The way this incident was handled – removing the employee who spoke up (Ms. Fisher), not fixing the system's flaws, and terminating me after I raised concerns – created an environment of apprehension among staff. Employees perceived that calling attention to problems resulted in punitive outcomes rather than constructive changes.

**1.5: ShoreTel Phone Systems**

The district relied on ShoreTel 230 VoIP phones, an unsupported system that required outdated browsers for programming, rendering it incompatible with modern security updates. Throughout 2023, these phones experienced frequent outages, often exacerbated by core switch failures, as the VoIP system depended on the district's unstable network infrastructure. These outages prevented staff from reaching security personnel or the main office during critical incidents, posing immediate safety risks to students and staff.

Teachers were forced to use personal cell phones as a workaround, a practice that risked FERPA compliance by exposing student data to unsecured devices. For example, during network outages at APHS, staff reported using personal phones to coordinate emergency responses, as documented in internal correspondence from October 2023. This practice not only violated data privacy standards but also introduced legal risks, as personal devices lacked the security protocols required for handling sensitive student information.

Despite the availability of grant opportunities through programs like E-Rate, which could have funded modern VoIP systems, no upgrades were pursued until Sanchez's arrival in April 2024. This delay mirrors the reactive approach seen in the Microsoft 365 migration and Wi-Fi password issues, leaving schools vulnerable to communication failures during critical moments.

**Consequences of Phone System Failures:**

- Prevented staff from contacting security or the main office during incidents, compromising student and staff safety.

- Forced reliance on personal cell phones, risking FERPA violations and exposing sensitive data to unsecured devices.

- Disrupted operational coordination, as staff could not reliably communicate during outages, impacting daily school functions.

**Neglect and Oversight Failures:**

- No proactive upgrades were pursued despite known obsolescence, .indicating that safety and communication were not prioritized.

- Lack of grant utilization (e.g., E-Rate) delayed modernization, leaving schools reliant on outdated systems.

Leadership did not address these critical safety risks, allowing vulnerabilities to persist across the district.

**1.6: Electrical and OSHA-Related Hazards**

Numerous classrooms across APHS and SHS exhibited electrical and structural hazards that violated OSHA standards and posed direct risks to student and staff safety. These conditions were documented through physical observations and internal correspondence:

- Room 359 (APHS, Second Floor): A persistent ceiling leak directly above student desks was reported throughout 2023, even by the teacher. Maintenance replaced ceiling tiles repeatedly without addressing the underlying leak, leaving the room vulnerable to water damage and electrical hazards.



- Room 44 (SHS): Ethernet ports were improperly rerouted through ceiling tiles into opposite walls, lacking proper mounts or insulation, creating a risk of electrical shorts and fire hazards.

- Art Storage Area (APHS): Over 30 laptops were stored in a dusty, overheated art room without proper ventilation and a leak on the kiln itself.

These hazards were not isolated incidents but part of a broader pattern of insufficient maintenance of safe learning environments. By not promptly addressing these issues – despite awareness through internal reports – students and staff were exposed to preventable risks such as electrical fires, water damage to equipment, and potential injuries from structural problems. The

lack of proactive maintenance (for example, not repairing the leak in Room 359 or not properly storing laptops) indicates a lapse in upholding safety standards, further worsening the infrastructure problems outlined in this section

**Consequences of Electrical Hazards:**

- Exposed wiring and ceiling leaks posed risks of electrical shorts, fires, and water damage to critical equipment.

- Improper storage near heat sources, such as the kiln exhaust, increased the likelihood of fire hazards, endangering students and staff.

- Persistent structural issues disrupted classroom functionality, impacting educational delivery and safety.

- Known hazards remained unaddressed, despite internal reports and photos, violating OSHA standards and district safety protocols.

- This lack of proactive maintenance reflected a reactive approach and suggested that cost avoidance was prioritized over student and staff safety.

- Not ensuring compliance with safety regulations left schools vulnerable to preventable risks.

In summary, the district's IT infrastructure and systems suffered from outdated equipment, insufficient upkeep, and a reactive approach to problems. Core safety-critical systems (e.g. the network and communications systems) were left unaddressed until they failed. Known security flaws (such as the weak Wi-Fi password and insecure payroll PIN system) were not corrected even after they had caused issues. The common thread in these problems appeared to be insufficient planning and oversight by the administration. As a result, resources were expended without effective benefit, student learning and safety were adversely affected.

---

### Section 2: Resource Deployment and Inventory Breakdown

Resource deployment across the district in 2023–2024 was marked by major inefficiencies and misaligned priorities, with equipment sitting unused even as classrooms were in dire need of it. For instance, over 1,600 new Chromebooks sat unused in storage for many months, laptop charging carts lacked locks, dozens of brand-new teacher laptops were diverted to administrators instead of teachers, and thousands of dollars of toner cartridges were wasted on outdated printers due to quick upgrades with no planning. These issues were exacerbated by high staff turnover and the absence of basic inventory controls, and they directly impacted students by leaving them without needed technology, potentially violating grant terms.

**2.1: ECF Chromebook Distribution and Storage Issues**

In May 2023, Southeast Delco received approximately 2,500 Chromebooks through the federal Emergency Connectivity Fund (ECF) – a grant intended to support digital learning for students in grades 6–12. This influx of devices was a golden opportunity to modernize student technology access. However, by late February 2024 (nine months later), only about 600 of those Chromebooks had been deployed to students. A staggering 1,606 units were still sitting idle at the Education Service Center (ESC), boxed up in the telecom room, storage offices, and **"every nook and cranny"** of the building. I reported this to Assistant Superintendent Jeffrey Ryan on Feb 28, 2024, writing **"There's still 1600 devices over at ESC, taking up space in the telephone room, Jen Peterson's office, and every nook and cranny"**. The Director of Technology, Sunni Jennings, himself confirmed in an email on Jan 23, 2024 that these devices were indeed piled in ESC storage (specifically in an office). This was clear evidence that critical resources already on hand were not being deployed where they were needed. Compounding the issue, Academy Park High School (grades 9–12) was largely left out of what little Chromebook distribution occurred. The grant was meant for grades 6–12, but priority was given to elementary schools, meaning the students at the high school were the most affected. This is because the high school did NOT receive the ECF Forms unlike the other schools- causing me to take the personal initiative to print out the forms and send them home to parents. Many students in these schools lacked devices entirely while brand-new Chromebooks sat unused. The academic impact was real: for example, on September 21, 2023, teacher John McGettigan emailed that **"Missing computers and chargers is not helping students' comportment, when they can't work on PEAK"**. PEAK is an online learning program, and students couldn't participate properly due to device shortages. During Keystone state testing, the network outages (from Section 1) forced some students to try completing exams on borrowed laptops, only to find many of those spares had no chargers or dead batteries – a direct result of APHS never receiving its fair share of the ECF devices.

Inventory tracking of both the Chromebooks and their chargers was inconsistent, which made the shortages worse. Ideally, when issuing a new Chromebook, the student's old charger would be collected to reuse or account for it. In practice, that didn't happen. I emailed principal Latarsha Threadgill on Sept 27, 2023: **"The way the laptop collection was supposed to work was I would receive the student's old charger... however I did not get many chargers returned"**. This problem echoed across the district. An email chain from Sept 21 to Oct 4, 2023 revealed that teachers were clamoring for chargers – Nicholas Russo reported only 3 chargers available in one classroom, Paul Wharton said 2–5 students per class were without chargers in another. By Oct 13, 2023, the technicians emailed that **"Matt and I have essentially no more chargers... only 1 in 5 students returned their charger"**. In short, charging equipment was vanishing and we had no reliable records of who owed a charger or who paid a fine, and no ultimate oversight.

A policy existed to charge families $50 for a lost charger (and even $250 for a lost or damaged Chromebook), but enforcement of these fines was highly inconsistent. As Threadgill noted in an

email on Sept 21, 2023, **"So many extra chargers were given out and they were not charged the $50 for replacement"**. This inconsistency not only created confusion and unfairness (some students paid fines while others did not), but it also meant the district failed to recoup costs needed to buy replacement chargers. Essentially, there was a policy on paper but no centralized tracking or enforcement. Later, in a 2025 affidavit, Butler even admitted that the Business Office had no records of any student fine invoices at all for the period in question – meaning that for at least two years, despite having fines on the books, the district generated zero paperwork to track who was fined or who paid. This absence of records indicates a broader issue with financial oversight.

3. In light of Requester's appeal claim that he was not provided with any records in response to item (2) of his three-part Request, I am submitting this Verified Statement to confirm that no responsive records exist within the School District's possession, custody or control.

4. Although Requester is correct that the School District provided him with a copy of its "1:1 Device Loan Agreement," no such costs described in that document have been collected by the School District during the September 1, 2023 to April 9, 2025 time period that is the subject of request item (2).[1]

5. In response to Requester's request for any records that would be responsive to his request item (2), I checked with our Accounts Receivable Department ("A/R"), as I am aware in my position as CFO/COO that if any such revenue was collected from Chromebook fines, an invoice seeking payment of any such fine would have been sent by A/R to the student's parent or guardian.

---

[1] Although Request item (2) does not expressly indicate a time period, it references "these Chromebook fines," which is the subject of Request item (1) that does provide the time period "from April 1, 2023 to Present." Accordingly, the School District's response to item (2) includes the prefatory statement: "Your request is interpreted as including the same timeframe as set forth in the preceding School District's Response number 1." (See, the School District's May 16, 2025 final response letter submitted with Requester's Appeal.)

Meanwhile, physical security for devices was lacking. Throughout the district, many laptop charging carts had broken or non-existent locks. At APHS and multiple elementary schools, the carts meant to secure devices could be opened by anyone, or devices could simply be taken without unlocking because the lock mechanisms didn't work. This meant that even when Chromebooks were delivered to classrooms, they were not safely stored. The risk of theft or unauthorized use was high, and indeed some devices did go missing, further reducing what was available to students. This was a basic infrastructure issue that remained unaddressed – replacing or fixing the locks would have been relatively inexpensive, but this issue was never prioritized.

**Consequences of the Chromebook Deployment Failures:**

- Undermined test administration (e.g., Keystone Exams, PEAK), as students lacked access to necessary devices, impacting academic performance.

- Forced reliance on personal devices, increasing FERPA risks by exposing student data to unsecured platforms.

- Violated ECF guidelines by failing to prioritize grades 6–12, potentially risking future grant eligibility.

- Disrupted classroom instruction due to shared-use problems and device shortages, hindering student learning.

- Increased risk of theft or unauthorized access due to laptop carts lacking working locks, particularly at APHS and elementary schools, further reducing available devices.

- The failure to distribute ECF Chromebooks violated grant terms, indicating that student resources were not prioritized.

- Inconsistent inventory tracking and fee enforcement point to systemic management issues, exacerbated by staff turnover.

- Lack of centralized tracking systems allowed devices to sit idle while schools faced shortages.

- Not securing the laptop carts with working locks compromised device security and exacerbated equipment shortages and risks

### 2.2: Laptop Allocation Disparities and Device Conditions

In November 2023, the district purchased 50 new laptops under the description "for teacher use," costing approximately $35,712 in total. However, the majority were assigned to ESC administrative offices, including one unit purchased for $2,385.59 for Butler's office, while classroom staff at APHS and SHS reported continued use of aging, malfunctioning devices. This disparity left teachers without adequate tools for instruction, directly impacting educational delivery.

706

SOUTHEAST DELCO SCHOOL DISTRICT    594204 - Dell Corp.    11/16/2023

| INVOICE DATE | INVOICE NO. | PO NUMBER | DESCRIPTION | NET DUE |
|---|---|---|---|---|
| 11/01/2023 | 10708204950 | 2100901 | Please see attached Quote # 3000161584367.1 for 6 Desk tops for Bus Depot - 10-2240-752-000-00-00-00 | 6,668.29 |
| 11/02/2023 | 10708492026 | 2100982 | Please see attached Quote # 3000161929341.1 for 50 Dell Laptops for teachers - 10-2240-752-000-00-00-00 | 35,712.00 |
| 11/05/2023 | 10708995868 | 2100902 | Please see attached Quote #3000161428252.1 for Dell laptop for Business Manager - 10-2240-752-000-00-00-00 | 2,385.59 |

| NO: 70698 | PAYEE SHOULD DETACH STUB AND DEPOSIT VOUCHER AT ONCE | TOTAL | $44,765.88 |
|---|---|---|---|

I had received this invoice above through my RTK Request. The invoice states "50 laptops for teachers" but nearly all of those laptops were allocated to administrators instead. Either way, $35,712 divided by 50 laptops is equal to $714.24 per laptop. One laptop, costing $2,385.59, was allocated to the CFO's office despite the order's stated purpose of providing laptops for teachers.

Device conditions in classrooms varied widely but were consistently inadequate:

- Many classroom laptops, especially teacher laptops, require constant charging due to battery degradation, rendering them immobile and disrupting lessons requiring mobility.

- HDMI ports were broken upon onboarding, limiting projector use and preventing new teachers from displaying instructional materials.

- Webcams were non-functional, hindering virtual instruction and security applications, particularly during remote learning or monitoring scenarios.

The reliance on outdated equipment forced teachers to use personal devices, introducing FERPA-related risks by handling student data on unsecured platforms. In a January 23, 2024, email chain titled **"Plans for Chromebook Replacements,"** technician Dominic Vozzelli stated, **"I'm frankensteining broken computers together"**, referring to the practice of assembling one functional laptop from multiple defective ones—a temporary solution that reflected a lack of long-term planning or support contracts for replacement hardware. Vozzelli noted: **"I'll eventually be out of CB's,"** highlighting that the district had not addressed chronic equipment shortages.

**From:** Matt Miller <mmiller@sedelco.org>
**Sent:** Tuesday, January 23, 2024 10:12 AM
**To:** Sunni Jennings <sjennings@sedelco.org>
**Cc:** Charles Gibbone <cgibbone@sedelco.org>; Dominic Vozzelli <dvozzelli@sedelco.org>
**Subject:** Plans for Chromebook Replacements

Good morning,

Sunni I just wanted to bring to your attention that we are running very low on useable spares now that the warranties have run out on non-ECF devices (I suppose for ECF devices too since there was not a warranty with them.) I know there is a problem with this at Delcroft and Harris, and Charles just emailed about this problem at AP and Sharon Hill. Dominic if this is an issue with you as well feel free to chime in, but I think this is an issue that we need to address sooner rather than later if possible.

Let us know what our plan should be moving forward.

Thanks,

The following areas were particularly affected:

- Rooms 244 and 245 (APHS Computer Labs): Some units dated back to 2010, and were missing critical peripherals like mice, keyboards, or power supplies. These labs, intended for student testing and digital learning, were often unusable, forcing teachers to skip planned activities or rely on shared devices, which disrupted lesson plans and testing schedules.

- Mac Lab (APHS): Operated using 2012 iMacs, which exhibited noticeable lag and limited operating system compatibility with modern educational software. The lag impacted student productivity, particularly during time-sensitive tasks like online assessments, and the outdated OS prevented the use of current applications, limiting the lab's utility for advanced instruction.

- Music Room (SHS): Contained iPads and iMacs from 2008 or earlier, over 15 years old, rendering them incompatible with current educational applications and music production software. This forced students to use personal devices or forego digital components of music education, compromising the curriculum and equity of access to resources.

- Cafeteria/Food Service Terminals (District-Wide): Point-of-sale machines were running Windows 8 with no updates since November 21, 2014. This lack of updates, spanning nearly a decade, increased vulnerability to security breaches and contributed to daily lag and interruptions in food service operations.



These outdated systems were not isolated issues but part of a district-wide lapse in modernizing technology, as seen with the core network switch and email servers. The lack of updates on food service terminals, for example, left them susceptible to cyberattacks, a risk compounded by broader cybersecurity lapses. The absence of peripherals in computer labs and the lag in specialty areas like the Mac Lab directly impacted student learning, particularly during high-stakes testing periods like Keystone exams, where reliable technology was essential. Teachers reported frequent manual reboots between class periods, and in some cases, entire lessons were skipped due to equipment failures. This systemic neglect of classroom technology indicates a lack of prioritization of educational resources, leaving students and staff without the tools needed for effective instruction and operational efficiency.

**Consequences of Allocation Disparities:**

- Hindered instruction, as teachers lacked functional devices for projecting lessons or conducting virtual instruction.

- FERPA violations from using personal devices, exposing student data to unsecured platforms.

- Disproportionate investment in administrators over classrooms, impacting student learning.

- Operational inefficiencies, as makeshift repairs diverted IT resources from proactive solutions.

- Hindered test proctoring and interactive lessons, as outdated devices failed during critical academic activities, impacting student performance.

- Disrupted administrative functions, such as food service operations, due to lag and security vulnerabilities, affecting school schedules and student nutrition.

- Limited curriculum delivery in specialty areas like music, forcing reliance on personal devices and compromising educational equity.

- Increased cybersecurity risks, particularly with food service terminals, exposing the district to potential data breaches.

- Prioritization of administrative devices over classroom needs reflects a systemic lapse in focusing on educational priorities.

- Lack of replacement contracts or upgrade plans left schools reliant on unsustainable repair practices.

- No tracking of repairs or replacements, exacerbating equipment shortages.

- Inventory overwhelmed due to lack of staffing after Kitchen and Paugh's departures.

- District leadership did not address equipment disparities, allowing educational inequities to persist.

- Not updating or replacing decade-old hardware indicates a lack of investment in educational technology

- Absence of peripherals and updates indicates poor inventory management, a problem exacerbated by staff turnover.

## 2.3: Toner and Printer Supply Waste

Over several years, the district relied on legacy printers requiring outdated toner models, a practice that led to significant waste when procurement shifted in early 2024. Following Sanchez's arrival, new printers were ordered, rendering the existing toner stock incompatible. However, there was no coordinated disposal, reassignment, donation, or recycling program for the legacy toner, resulting in substantial financial loss.

On April 17, 2024, an email to building principals submitted a compiled list of unusable toner: **"Over \$3,000 in toner was wasted at Sharon Hill, with additional stockpiles at APHS"**. The email noted that some toner might theoretically be used at APHS, but the printers there were "literally falling apart," and plans for their replacement were underway, rendering the toner effectively obsolete. Unmonitored contracts with vendors like Aaron Solutions and Lifetouch further contributed to financial inefficiencies, as the district failed to track or manage these expenditures, reflecting broader challenges in financial oversight.

The toner and Chromebook issues point to a broader theme: limited centralized tracking, lack of coordinated asset management, and the absence of system-wide audits to assess technological readiness or redundancy. This systemic failure to manage resources effectively wasted taxpayer funds, hindered operational efficiency, and left schools without the necessary tools for instruction and administration.

**Consequences of Toner Waste:**

- Wasted over \$3,000 in toner, diverting funds that could have supported classroom resources. This was \$3000 wasted in toner at Sharon Hill alone, in which I estimated over \$3K as well at Academy Park.

- Cluttered storage spaces with obsolete supplies, hindering efficient use of school facilities. At APHS in particular, an unused laptop cart with old chargers and toner were stored in the abandoned staircase near the art classrooms.

- Disrupted printing capabilities, as incompatible toner delayed the transition to new printers, impacting administrative and instructional functions.

- Lack of a disposal, donation, or recycling program for legacy toner reflects poor asset management practices.

- Unmonitored vendor contracts indicate financial oversight failures, consistent with broader mismanagement.

- No documentation on existing stock levels, exacerbating waste.

- Failure to implement audits or tracking systems, perpetuating waste and inefficiency.

### Section 3: Classroom Equipment and Environmental Hazards

Classroom environments at Academy Park High School (APHS) and Sharon Hill School (SHS) during 2023 and early 2024 were severely compromised by widespread equipment failures, outdated technology, and hazardous conditions that posed risks to student and staff safety, disrupted educational delivery, and violated regulatory standards. Audio-visual (AV) systems critical for instruction were largely inoperative, with over 70% of APHS classrooms affected by degraded or unusable projectors and speakers, forcing teachers to rely on personal devices and

introducing FERPA-related risks. Computer labs and specialty areas operated with hardware dating back over a decade, lacking updates or peripherals, which hindered core educational functions like test proctoring and interactive lessons. Environmental hazards, including improper storage of technology near heat sources and exposed wiring, created fire and electrical risks, exacerbating the district's broader infrastructure failures. These documented problems reflect systemic issues in maintaining safe and functional learning environments, compounded by staffing turnover, delayed repairs, and insufficient oversight.

### 3.1: Audio/Visual Equipment Failures

Projector and speaker system malfunctions were pervasive across APHS, with a building-wide audit conducted in October 2023 revealing that more than 70% of classrooms had unusable or severely degraded AV equipment. This audit, compiled from HelpDesk tickets and internal communications, documented specific issues in 22 rooms, highlighting the scale of the problem:

**102: Low volume, speakers essentially unusable.**

**110: Low volume, speakers essentially unusable.**

**142: Low volume, speakers essentially unusable.**

**144: Speakers completely broken and discontinued.**

**146: Low volume, speakers essentially unusable.**

**148: Low volume, speakers essentially unusable.**

**149: Superficial repair; HDMI cord hanging from the wall due to missing wall plate, loose connection causing projector to function only at a specific angle.**

**206: Left speaker has no volume.**

**210: Left speaker completely broken.**

**212: Entire button panel broken.**

**218: Entire button panel broken.**

**241: Speakers completely broken and discontinued.**

**243: Low volume, speakers essentially unusable.**

**245: Superficial repair; wall plate missing and HDMI cord loose.**

**250: Speakers completely broken and discontinued.**

**338: Fluctuating volume; sometimes inoperable.**

**341: Low volume, speakers essentially unusable.**

**342: Low volume, speakers essentially unusable.**

**344: Cable plugs into projector, not the wall; broken wall port.**

**348: Projectors and speakers completely broken and discontinued.**

**349: Low volume, speakers essentially unusable.**

**359: Button panel not functioning.**

The scale of these failures severely disrupted instruction, as AV equipment is essential for delivering multimedia lessons, projecting instructional materials, and ensuring audible communication in classrooms. Teachers reported using personal Bluetooth or auxiliary speakers as a workaround, a practice that introduced significant FERPA-related risks by relying on non-district-issued devices to handle educational content, potentially exposing student data to unsecured platforms. This also created inconsistency in sound delivery, with some lessons inaudible, directly impacting student engagement and learning outcomes.

The district's inventory of spare AV parts was depleted, a problem exacerbated by the staff turnover of Judy Orner (retired January 2024) and Joan Galloway (retired November 2023), who had previously managed equipment supplies. Formal repairs were not initiated until five months after the original October 2023 reports, with partial fixes documented in February and March 2024. Even then, many repairs were superficial, as seen in Rooms 149 and 245, where loose cords and missing wall plates persisted, posing ongoing safety risks. The delay in addressing these issues mirrors the district's reactive approach to infrastructure failures, leaving classrooms without functional AV systems for most of the 2023–2024 academic year, directly impacting educational delivery and student safety.

**Consequences of AV Failures:**

- Disrupted multimedia lessons and projections, hindering student engagement and comprehension.

- Inaudible classroom communication, as low or non-functional speakers prevented effective instruction.

- FERPA violations from using personal devices, exposing student data to unsecured platforms.

- Safety risks from loose wiring and makeshift repairs, increasing the potential for electrical hazards or tripping incidents.

- Delayed repairs, despite documented issues in October 2023, reflect a reactive approach, prioritizing cost avoidance over educational needs.

- Depleted spare parts inventory, worsened by staff turnover, left schools without resources to address immediate failures due to no new equipment.

These outdated systems were not isolated issues but part of a district-wide failure to modernize technology, as seen with the core network switch and email servers. The lack of updates on food service terminals, for example, left them susceptible to cyberattacks, a risk compounded by the district's broader cybersecurity failures, such as the "qwertyui" Wi-Fi password. The absence of peripherals in computer labs and the lag in specialty areas like the Mac Lab directly impacted student learning, particularly during high stakes testing periods like Keystone exams, where reliable technology was essential. Teachers reported frequent manual reboots between class periods, and in some cases, entire lessons were skipped due to equipment failures. This systemic neglect of classroom technology reflects a failure to prioritize educational resources, leaving students and staff without the tools needed for effective instruction and operational efficiency.

**Consequences of Outdated Technology:**

- Hindered test proctoring and interactive lessons, as outdated devices failed during critical academic activities, impacting student performance.

- Disrupted administrative functions, such as food service operations, due to lag and security vulnerabilities, affecting school schedules and student nutrition.

- Limited curriculum delivery in specialty areas like music, forcing reliance on personal devices and compromising educational equity.

- Increased cybersecurity risks, particularly with food service terminals, exposing the district to potential data breaches.

- Failure to update or replace decade-old hardware reflects a lack of investment in educational technology, despite available funding opportunities.

- Absence of peripherals and updates indicates poor inventory management, a problem exacerbated by staff turnover.

### 3.3: Hazardous Storage and Fire Code Concerns

Technology storage practices across APHS and SHS lacked oversight and introduced significant environmental hazards, violating fire codes and posing risks to student and staff safety. These conditions were documented through photographic evidence and internal reports, .revealing a systemic lapse in maintaining safe storage environments for critical equipment:



- Art Area Storage (APHS): Pictured above is an apparent leak on the kiln at the APHS art room. There were 30 new laptops purchased- but they were being used in a dusty, unventilated classroom. The kiln exhaust pipe emitted heat that could degrade laptop circuitry and battery health, while the proximity to electrical panels increased the risk of fire or electrical shorts. This storage setup violated fire code standards by placing flammable materials (laptop batteries) near a heat source without proper ventilation or separation, creating a theoretical fire hazard in an area accessible to students.

- District-Wide Storage at ESC: Over 1,606 Chromebooks were stored in the telecommunications room, adjacent offices, and locations at the ESC. This overcrowded storage, in spaces not designed for such volume, risked overheating and equipment damage due to improper airflow and cable congestion, further compounding the district's inventory mismanagement.

**Safety Oversight Lapses:**

- Failure to address documented hazards violated fire code and OSHA standards, putting student and staff safety at risk.

- The lack of fire marshal inspections or remediation documentation suggests systemic lapses in following safety protocols.

- Not ensuring safe storage practices allowed risks to persist across multiple school sites.

Classroom equipment failures and environmental hazards at APHS and SHS were systemic, rooted in outdated technology, inadequate maintenance, and hazardous storage practices. More than technical breakdowns, these failures reflect a lack of planning, safety compliance, and asset oversight. The widespread AV malfunctions, obsolete computer labs, and unsafe storage conditions directly impacted on educational delivery, student safety, and operational efficiency, while introducing legal risks through FERPA violations and fire code non-compliance. AV system inoperability left teachers unable to deliver key content, students faced slow, non-functioning labs during testing, and equipment was stored dangerously near active heat sources. These problems – combined with the district's other infrastructure issues – indicate systemic shortcomings in resource management, underscoring the need for prompt corrective action to ensure students have equitable access to educational tools.

---

## Section 4: Recordkeeping, Employment Transparency, and Contractual Gaps

The district's recordkeeping practices in 2023 and early 2024 had systemic shortcomings, with a notable lack of documentation for critical employment processes, financial transactions, and contractual obligations. This absence of records – particularly concerning my time as a contracted PC Technician – points to a broader pattern of transparency issues that hindered accountability and oversight. The lack of records documenting my performance, termination, and payments – despite significant transactions with the Robert Half staffing agency – raises serious procedural concerns, especially given how abruptly my contract was ended after I raised these systemic issues. These gaps, documented through Right-to-Know requests and Office of Open Records rulings, indicate a persistent lapse in documentation standards. They compounded the district's existing infrastructure and resource deployment problems and contributed to a continued lack of transparency.

### 4.1: Lack of Documentation Regarding Contract Termination

From March 2023 to April 30, 2024, I worked full-time as a contracted PC Technician through Robert Half, providing building-wide technology support across multiple district sites. My role involved daily contributions to district operations, was extended month-to-month for over a year, and included participation in a formal interview process for permanent hire in April 2024. During this period, I received no documented evaluation of my work, despite full-time presence and system privileges.

From: Charles Gibbone <cgibbone@sedelco.org>
Sent: Monday, April 29, 2024 3:37 PM
To: Sunni Jennings <sjennings@sedelco.org>; Craig Butler <cbutler@sedelco.org>
Cc: Yamil Sanchez <ysanchez@sedelco.org>; Stephanie Woolley <swoolley@sedelco.org>; Megan Giunta
<mgiunta@sedelco.org>; Matt Miller <mmiller@sedelco.org>
Subject: Re: Thank You for Your Interest

Hello,

In Dr. Sanchez's DCIU AP speech, one of my favorite parts was when he spoke about how at Reading,
whenever there was a big decision about buying something, not buying something, multiple people had
to write off on it or approve it. This is for sure a policy that needs to be enforced here at Southeast Delco.

Craig, to my understanding, you are the Chief Financial Officer. A few months ago, you did not respond in
time to an Overtime issue. The issue was the escalated to Dr. Wynder. After the overtime issue was
resolved, you told Dominic, a former student and now employee, that he is no longer allowed to work the
board meetings. This indirectly caused the TV news program to plummet, students are now being
overworked to help Mr. Nurse. Now, Matt has to work the board meetings with no pay, and the stress
trickles down from the top. At the same time, the Core Switch reached end of life in 2014- and if that goes
out, all of the internet in every single building goes out. Sunni has had to replace 10+ end of life network
switches since starting, which isn't even an IT director's job.

On April 29, 2024, I emailed Mr. Butler raising concerns about unresolved overtime issues,
infrastructure failures, and broader systemic issues, while also inquiring about speaking at a
board meeting. The following day, I was informed via HR email that I "did not qualify" for the
position. Upon arriving, I was greeted by security, had my keycard disabled, and was escorted
out by Sunni Jennings, Butler, and security, with email deactivated immediately. No prior notice
or justification was provided for this action.

On October 21, 2024, I filed an RTKL request for performance evaluations, disciplinary records,
interview documents, and termination paperwork. The district produced none, prompting an
OOR case where Butler's affidavit stated I was not a district employee and not subject to
termination, with no records possessed or known. This statement contradicts the fact that I was
formally escorted out and had my credentials deactivated.

The absence of any documentation – no evaluations, notes, or records – over my 14-month
tenure indicates a systemic lapse in maintaining employment records for contracted personnel.

## 4.2: Sworn Affidavit from Craig Butler – Implications

The sworn affidavit from Butler confirms:

- No evaluation, interview notes, or termination documents exist related to my 14-month
  tenure.

- No written record was kept regarding my exit, despite the formal process.

- No internal communications were preserved regarding my performance or contract
  conclusion.

- No records of payments to Robert Half for my work were found, despite $127,000 in put aside explicitly for Robert Half Services.

6.  The Requester was not a School District employee and therefore was not subject to termination by the School District; he was a temporary worker in the School District's Information Technology Department supplied by the Robert Half staffing agency.

7.  In my good faith search for any written records as described, I inquired of the School District's Director of Technology, Network Administrator and Technical Support Personnel in the Information Technology Department. All responded to me that they possessed no such written records and had no knowledge of the whereabouts of any such records.

8.  Since Requester was a temporary worker supplied by the Robert Half staffing agency, I inquired of the relevant Business Department personnel who would have made payment to Robert Half for the hours worked by Requester. All responded to me that they possessed no such written records and had no knowledge of the whereabouts of any such records.

This absence of records contradicts the reality of my employment — I had full-time duties, held system access privileges, underwent a formal interview process, and was formally escorted out upon my termination. The claim that no payment records exist is inconsistent with standard public-sector practices.

These findings raise questions about managing long-term contractors, particularly in essential roles. The lack of records obscures termination rationale and reflects transparency deficits.

**Consequences of Recordkeeping Failures:**

- Undocumented terminations prevent clarity on decisions, leaving room for arbitrary dismissal.

- Lack of personnel files violates best practices for contracted workers.

- Missing financial records undermines accounting transparency for vendor payments.

- Inconsistency with actions erodes trust in processes.

- Failing to maintain basic employment records shows a lack of adherence to standard recordkeeping practices.

- A lack of financial records suggests that oversight of these processes was insufficient.

It is important to highlight that Mr. Butler, the CFO, was the sole individual signing off on most invoices for items purchased within the district. This is in stark contrast to the practices followed by other district leaders. For example, my supervisor, the IT Director, was responsible for approving my hours and ensuring they were appropriately submitted for payment. In the invoices the IT Director prepared, he provided clear and detailed outlines of what each price represented, ensuring transparency and accountability in financial documentation. However, when examining invoices approved by the CFO, such as the $87,000 "IT Blanket" purchase order, there is a

concerning lack of specificity. The description provided is vague and fails to outline what was purchased or how the funds were allocated. This discrepancy not only raises questions about transparency but also underscores systemic issues within the district's financial oversight. By comparison, the IT Director—a role not traditionally tied to business management—demonstrated more diligence and transparency in financial reporting than the CFO, who is responsible for managing the district's entire budget. This further supports the need for a thorough review of financial practices within the district. Even though this was a budgetary BPO to bill off of an allocated amount, generally more is required in the description, such as "87K put aside for an estimated 500 hours worked, not including overtime for Robert Half Contractors." Without the underlying documents, it appears that the CFO allocated an arbitrary amount with no clear strategic planning – especially given that I was the only contractor.



## Section 5: Documentation Trail- RTKL

The district's systemic issues — from infrastructure problems and resource mismanagement to classroom hazards and recordkeeping gaps — were further aggravated by a persistent pattern of not fulfilling transparency obligations, as evidenced by multiple Right-to-Know Law (RTKL) appeals and related findings from the Office of Open Records. These appeals, spanning 2023 to 2025, reveal a consistent failure to maintain records, respond to public requests in a timely manner, and adhere to legal standards under the RTKL, further eroding accountability and public trust. The district's actions—or lack thereof—were particularly evident in the handling of my RTKL requests, which sought to uncover documentation related to my employment, termination, and the district's broader operational practices. Legal findings confirm not only the absence of critical records but also a pattern of delayed responses and potential bad faith, as noted by the

OOR in prior cases. An ongoing criminal investigation into fraud and public corruption, confirmed by the Delaware County District Attorney's Office, further underscores the depth of the district's systemic issues. This section consolidates the documentation trail, legal findings, and actionable recommendations to address these failures and restore integrity to district operations.

### Appeals Filed by Charles Gibbone (Requester)

#### Appeal 1 – *Request Submitted October 21, 2024; Appealed November 25, 2024*

**Records Requested:** I requested records relating to the District's technology purchases, expenditures, and budgeting, as well as any internal communications or records referring to my job performance or contract termination between March 2023 and May 2024. This included a broad request for emails or documents containing my name during that period.

**District's Response:** The District did not issue a final response within the initial five-business-day window. Instead, on October 24, 2024, the District acknowledged the request and estimated a cost of approximately 10 days of labor at $60/hour to fulfill it – an amount largely composed of disallowed labor charges. I replied on October 27, 2024, disputing the fees as unreasonably high and offering to narrow the scope to reduce the workload. The District treated my October 28 revised request as a continuation of the original and invoked a 30-day extension on October 31, 2024. It ultimately provided a final response on November 21, 2024 – the last day of the extended period. In that untimely response, the District supplied a large volume of email printouts (many of which were of questionable relevance) but did not clearly address certain items such as detailed budget vs. expenditure reports. The response omitted any explicit statement about records related to my termination, effectively a *deemed denial* of those parts of the request. I filed an appeal on November 25, 2024, well within 15 business days of the final response.

**OOR Final Determination:** The Office of Open Records (OOR) found that the District's initial fee estimate violated the RTKL fee provisions by including labor costs. During the appeal, the District acknowledged it had failed to conduct a proper email search initially; it then performed a broader search and **provided hundreds of additional emails containing my name** that had not been included in its final response. The OOR marked the appeal *moot in part* as to those emails, since they were produced during the appeal. However, the District still had not demonstrated that it fulfilled the request for other "written records" related to my performance or termination. The OOR noted that while part of my request (e.g. unspecified "other forms of communication") was insufficiently specific, the portion seeking written records from March 2023 to May 2024 that contain my name and relate to my performance or termination was **sufficiently specific**. Because the District offered no evidence of any exemption or of a thorough search for those records, the **appeal was granted in part**. The OOR ordered the District to conduct a good-faith search for any **remaining records related to my termination or performance** and to provide those

records within 30 days, or else an affidavit if no such records exist. The appeal was **denied/dismissed in part** regarding the overly vague portion of the request, and **dismissed as moot in part** to the extent emails had been provided during the appeal.

### Appeal 2 – *Request Submitted January 27, 2025; Appealed February 4, 2025*

**Records Requested:** I requested a **copy of my employment contract with Robert Half** (the staffing agency through which I worked for the District) outlining the terms and conditions of my assignment, as well as several **specific email threads** related to my employment.

**District's Response:** The District failed to respond by the statutory deadline of February 3, 2025, resulting in a *deemed denial* on that date. On February 4, 2025, the District issued an **untimely** final response, partially denying the request. In that late response, the District **provided the email threads** I had specified, but **denied access to the employment contract**, claiming that no responsive record existed in the District's possession (their position was that the contract was between me and the agency, not held by the District). I filed an appeal the same day, **February 4, 2025**, noting the response's untimeliness and arguing it was unlikely the District had no record of the contract.

**OOR Final Determination:** The OOR noted that the District's response was late and that it had the burden to prove any records were exempt or did not exist. Initially, the District **submitted no evidence** by the appeal deadline. Only after the OOR inquired did the District participate, requesting an extension and eventually providing a verified supplemental response on March 11, 2025. In that submission, the District maintained it did not possess a copy of my personal contract with the agency, but it did **identify and produce related records** that it had failed to provide earlier: specifically, *a letter outlining the basic terms of my assignment, a "General Conditions of Assignment" document defining the District's relationship with the staffing agency, a "Terms of Payment" document detailing payment terms between the District and the agency, and a letter regarding background investigations.* I responded that these documents were clearly responsive and should have been provided in the original response, and I suggested that additional records might still exist. The OOR found that, by providing the four documents during the appeal, the District had effectively mooted that portion of the dispute – those records were released on appeal, so that portion of the appeal was **dismissed as moot**. However, the District **had not proven that no other records exist**. It did not describe any comprehensive search for, for example, any formal contract or correspondence with the agency beyond what was provided, nor did it supply an attestation that no further records exist. Accordingly, the OOR **granted the appeal in part**, directing the District to conduct a **good-faith search for any additional responsive records** and to provide any found records (or else a sworn affidavit that no additional records could be located) within 30 days.

### Appeal 3 – *Request Submitted March 28, 2025; Appealed May 12, 2025*

**Records Requested:** I requested several records related to my **April 2024 re-application and subsequent termination** from a District technology position. The request (six items in total) sought, among other things: **all documentation, internal assessments, notes, or evaluations used in reviewing my April 2024 job application** (Item 1); **any communications or records confirming that Mr. Craig Butler** (the District administrator) was removed or reassigned from overseeing the Technology Department (Item 3); **copies of any incident or termination reports** written by three specific employees regarding my termination (Item 4); **any security camera footage of my termination meeting on April 30, 2024** (Item 5); and **any directives or communications exchanged among District administrators between April 28 and May 1, 2024 discussing the decision to terminate my contract and the logistics of that termination** (Item 6).

**District's Response:** The District invoked a 30-day extension on April 7, 2025, but then failed to provide any final response by the extended deadline (which fell in early May). As a result, the request was **deemed denied on May 7, 2025**. I filed an appeal on May 12, 2025, citing the deemed denial and urging that these records should exist and be disclosed. In the present appeal, the OOR invited submissions from both parties. The District, however, **did not respond by the OOR's submission deadline (May 22, 2025)**. On the day submissions were due, the District claimed it was **unaware of the appeal until May 22** – essentially asserting that it had not seen the OOR's notices until I emailed them directly that day. Treating this as an extraordinary circumstance, the OOR allowed additional time. The District then submitted a position statement on May 22, 2025 (late) and requested even more time to compile a full response and verify if additional records existed. With my consent, the OOR granted extensions for both the District's evidence and the final determination timeline. The District eventually provided a **sworn attestation from Mr. Butler (Open Records Officer)** on May 28, 2025. In it, Mr. Butler stated that he had conducted a thorough search and that, **aside from Items the District considered overly broad, it possessed no further records responsive to Items 1, 2, 4, 5, or 6**. In other words, the District's stance was that many of the requested records simply **did not exist**: no notes or rubrics were used in evaluating my application (Item 1), no memos by the three employees were found regarding my termination (Item 4), no security camera footage of the termination event was retained (Item 5), and no emails or memos among administrators about the termination decision were located (Item 6). The District also formally raised exemptions, arguing that even if such records did exist, they would be exempt as **personnel records (65 P.S. §67.708(b)(7))** or **internal predecisional deliberations (§67.708(b)(10))**. Mr. Butler's attestation indicated he only learned of the appeal at the last minute and had not had time to scour every source before the initial deadline, but by the time of his supplemental search, he confirmed the absence of most categories of records requested. I answered with a submission on May 29, 2025, providing **counter-evidence** – including emails and text messages I had in my possession that fell within the scope of the request but were not provided by the District. I also submitted an affidavit recounting the factual background of my employment and termination, to

underscore that responsive records (such as internal communications around my firing) likely existed.

**OOR Final Determination:** The OOR first concluded that my request was **sufficiently specific** in large part. Although the District argued that some parts lacked a defined scope, the OOR noted that the request was centered on a very specific subject (my April 2024 application and termination) and contained finite time frames (some items were limited to late April 2024, and even Item 6, which did not explicitly list a timeframe, implicitly concerned the days surrounding the April 30, 2024 termination). Therefore, the District's claim that the request was too broad was rejected. Next, regarding **records purported not to exist**: the OOR found that the District had *not* carried its burden of proving non-existence for certain items. While the District's search identified no "notes" or "scoring rubrics" for the hiring process, it did not address whether any *"internal documentation or assessments"* were used – those were requested in Item 1. Similarly, the District's claim that it had no emails or directives about my termination was contradicted by communications I produced. The OOR determined that the District **failed to demonstrate a sufficient good-faith search** for all potentially responsive records. In fact, the final determination explicitly lists certain records that *should exist* (or did exist) but were not initially provided: **documentation/internal assessments reviewing my job application (Item 1)**, **incident or termination forms by the three employees (Item 4)**, and **administrative directives or communications about my termination (Item 6)**. The District's blanket assertion that no such records were found was not corroborated with adequate detail, and my evidence suggested otherwise. Additionally, the OOR addressed the District's **exemption claims**. The District had invoked the personnel-related exemption (Section 708(b)(7)) for Items 4 and 6 (termination records) and the predecisional deliberation exemption (708(b)(10)) for parts of Items 1 and 4. The OOR found that the District **provided no competent evidence** to substantiate these exemptions – no affidavit or specific testimony was given to show, for example, that the incident forms were part of a personnel file or that the hiring documents were predecisional deliberative material. Mere statements in the District's unsworn position paper were insufficient. As a result, the OOR held that the District **failed to meet its burden of proof for any claimed exemptions**. In conclusion, the **appeal was largely granted**. The OOR ordered the District to **disclose the records responsive to Items 1, 3, 4, and 6** – namely: *any and all documentation and internal assessments used in the review of my April 2024 job application (Item 1); any record confirming Mr. Butler's removal from oversight of the tech department (Item 3); all "incident response forms" or similar documents written by the three identified employees regarding my termination (Item 4); and all directives or communications among administrators in late April 2024 about the decision and logistics of my termination (Item 6)*. The OOR required these records to be provided within thirty days. To the extent the District had proven that certain records truly did not exist (for example, it had shown that no security camera footage was available and no formal "notes" or "rubrics" were used in the hiring – Items 2 and 5), the appeal was *denied or dismissed for those parts*. Overall, the final determination on June 24, 2025

**granted the appeal in part and denied it in part,** delivering a clear mandate that the District produce the above-mentioned records which it had no lawful basis to withhold.

## Appeal 5 – *Request Submitted May 1, 2025; Appealed June 9, 2025*

**Records Requested:** I requested records concerning a significant **budget allocation to a contractor (Robert Half)** for technology staffing services. Specifically, the request sought documentation of the District's internal **budgeting, planning, and approval process** that resulted in a combined $127,000 being set aside in August 2023 for Robert Half's IT services. It was itemized as follows: **[1]** records (created between July 1, 2023 and Sept 30, 2023) related to budgeting, planning, or approval of two blanket purchase orders (one for $40,000 and one for $87,000) in August 2023 earmarked for Robert Half's IT contractors; **[2]** internal documents (budget drafts, staffing projections, cost analyses, approvals) justifying the $40,000 purchase order; **[3]** similar internal documents justifying the $87,000 purchase order; **[4]** any school board meeting agendas, minutes, resolutions, or presentations that specifically discuss or reference these two purchase orders or the total $127,000 allocation; **[5]** any internal emails, memos, or notes (involving the Tech Department, Business Office – e.g., Tamika Lucas or Craig Butler – or the Superintendent) that discuss the need, scope, or funding approval for the $127,000 allocation, specifically in August 2023; and **[6]** any staffing requests, rate sheets, cost estimates, or projected hour breakdowns used to determine or justify setting aside $127,000 for Robert Half's services.

**District's Response:** The District invoked a 30-day extension and issued its final response on **June 9, 2025**. In that response, the District **denied Items 1–3 and 6 as insufficiently specific,** claiming those parts of the request did not provide a clear subject matter or scope. The District further stated that **no records existed for Items 4–5** (board records or internal communications), essentially a denial on grounds of non-existence. Additionally, the District raised a blanket exemption claim, suggesting that any records responsive to Item 6 (justification documents) would likely be internal predecisional deliberations exempt under Section 708(b)(10). Along with its letter, the District provided **no actual records** except one: it did include the **two blanket purchase order documents** themselves (the purchase order forms for $40,000 and $87,000 from August 2023) as attachments, which were presumably already in my possession but were part of the context. Effectively, the District's position was that aside from the POs and perhaps general ledger entries, it had *no emails, memos, or other paperwork* explaining how it arrived at the $127,000 budget figure or how it was approved. I found this response doubtful, since such a substantial allocation would normally be documented. I appealed on June 9, 2025 (the same day, immediately after receiving the denial).

**OOR Final Determination:** In the appeal, the District maintained its stance but now had to provide evidence. By June 20, 2025, the District submitted a position statement and an attestation from Mr. Butler (Open Records Officer) describing its search. According to Mr. Butler's sworn statement, he searched for emails in August 2023 related to Item 5 and found none. He also attested that **he personally handled the creation of those blanket purchase**

orders (BPOs) as part of budgeting, and that **no separate memoranda or written analyses were prepared** – the budget estimates were done by him informally and presented to the Board only as part of regular bill payments, not as standalone items. He explained that the $87,000 and $40,000 figures were his projected costs for using Robert Half throughout the year, and that the School Board did not vote on the BPOs themselves (they simply approve vendor bills as they are paid). In sum, the District's evidence asserted that aside from the purchase order forms and routine financial records, **no internal reports or emails existed documenting the planning of the $127,000 allocation**. Mr. Butler confirmed that he did not create any written cost analysis or notes beyond the BPO form itself. Furthermore, the District did not produce any board meeting records referencing the allocation, implying none existed (likely the board was not explicitly apprised of the aggregate allocation in a meeting). During the appeal, **no contrary evidence was submitted to show such records should exist**, and I did not dispute receiving at least some records (I had obtained the POs). Given the evidence, the OOR concluded that **Items 4 and 5 were satisfied or no records exist** – indeed, the District had shown it searched for board references and emails and found none, and I had no proof to the contrary. For **Items 1–3 and 6**, the OOR performed the three-part specificity test. It determined that *Item 6*, while broad, was actually **sufficiently specific**, as it was limited to four particular types of documents related to the defined $127,000 allocation. Items 1–3 were broader in scope and subject (seeking "any records" of the planning process) and lacked a single specific keyword, but even those were anchored to a concrete transaction (the August 2023 POs). The OOR found that, in context, the request had a clear subject matter – the budgeting decision for Robert Half services – and a reasonable timeframe (July–Sept 2023 for the planning). Thus, it rejected the District's blanket claim of insufficient specificity. On the exemption issue, the OOR noted that **Section 708(b)(10) (internal deliberations)** did not automatically apply to factual budget materials. The records sought (budget drafts, cost estimates) are largely factual, and the OOR pointed out that purely factual financial worksheets are not protected by the deliberative process privilege. The District **provided no evidence** that any responsive record contained deliberative content – in fact, the District's own argument was that it had no written deliberative materials at all. Therefore, the OOR held that even if records existed, the District had not proven any exemption. Ultimately, the OOR determined that the District's search was incomplete regarding Item 6. While Mr. Butler's attestation stated his budgeting process, the OOR was not convinced that *no other documentation at all* existed. For example, any staffing request or rate sheet provided by Robert Half (to justify the rates) would be responsive to Item 6, and the District had not addressed whether it had such documents. Because the District did not detail any search for records like staffing proposals or communications with Robert Half about the budget, it failed to prove non-existence of those **Item 6 supporting documents**. The OOR **granted the appeal in part**, ordering the District to **conduct a good-faith search for any records responsive to Item 6 (e.g. internal cost breakdowns, staffing requests, etc.)** and to provide any additional records found. If no further records exist, the District must attest to that after describing its search. The appeal was **denied or dismissed as moot in part** for the rest: since the District had already provided the purchase

orders and Mr. Butler's statements indicated no board or email records existed for Items 4–5, those aspects were not granted. In summary, the final determination (issued July 7, 2025) held that the District had not met its burden regarding the **justification documents for the $127,000 allocation**, and required disclosure of any such records, while recognizing that other portions of the request had been either satisfied or properly had no records.

### Appeals Filed by Sharon DiPaulo (Requester)

#### Appeal A – *Request Submitted September 22, 2022; Appeal Dismissed as Premature*

**Records Requested:** Attorney Sharon DiPaulo (on behalf of Siegel Jennings Co., LPA) requested records from Southeast Delco SD related to the District's **policy for selecting properties for tax assessment appeals**, presumably for tax year 2022. (This initial request's exact wording is not in the record, but it was essentially identical to a later request described below for tax year 2023.) It likely sought a copy of the District's written policy on which property assessments to appeal and various records of its implementation.

**District's Response:** The District did not respond within the RTKL timeframe in 2022. When Ms. DiPaulo filed an appeal (OOR Dkt. 2022-2415), the District asserted that it **never received the request** because it was sent to an incorrect email address. However, the requester produced evidence that the request **had** been sent to the correct Open Records Officer's email. The District's Open Records Officer then acknowledged that the request email was found – it had been inadvertently **diverted into his junk email folder**. Because the appeal was filed before the District formally denied or granted the request (and the District now indicated it would process the request upon discovering it), the OOR **dismissed the appeal as premature**. In other words, at that stage the appeal did not result in a substantive determination; the matter was closed to allow the District to respond to the request properly.

**Outcome:** This appeal did not produce a final decision on the merits. It did, however, put on record the District's explanation that the request email had been missed due to a spam filter, and it reset the process for Ms. DiPaulo's request. The District's handling (claiming non-receipt until shown otherwise) would become a noted pattern. After the dismissal, Ms. DiPaulo promptly **re-submitted her request** to ensure it was in the system.

#### Appeal B – *Request Submitted January 2, 2023; Appealed January 30, 2023 (OOR Dkt. AP 2023-0220)*

**Records Requested:** Sharon DiPaulo, having refiled her request, sought records concerning the District's **2023 tax assessment appeal policy and its implementation**. The request, dated January 2, 2023, was comprehensive and included six items: **[1] a copy of the District's written policy for selecting properties for tax assessment appeals for tax year 2023; [2] any and all documents related to that policy; [3] any documents related to the District's methodology for selecting properties on which the District filed assessment appeals for 2023; [4] a list (by**

address and parcel) of all properties the District appealed for tax year 2023; [5] the name of any appraiser or consultant who provided information to the District regarding property values in the District for 2023; and [6] any documents in the District's possession concerning a specific parcel (identified by parcel number) in the context of tax appeals.

**District's Response:** The District again failed to respond within the RTKL's five business days. No extension letter was sent. Therefore, when **January 9, 2023** passed with no response, the request was **deemed denied by operation of law**. Ms. DiPaulo filed an appeal on January 30, 2023, noting that this was now the second time the District had allowed the request to lapse into a deemed denial. (Indeed, the first time was the September 2022 attempt.) During the OOR appeal, the District initially **submitted nothing by the deadline**, prompting the OOR to *reopen* the record to ensure fairness. Eventually, on February 23, 2023 – over three weeks into the appeal – the District's solicitor contacted the OOR and claimed he had not been **informed of the appeal until that date**, and requested an extension to respond. The appeals officer granted an extension, and the District finally filed a position statement on February 28, 2023. In its submission, the District stated that it would **provide records responsive to Items 1 and 3–6**, except for any portions "which may be exempt from disclosure pursuant to Section 708 of the RTKL or otherwise confidential and/or privileged.". Crucially, the District **did not provide any evidence or legal support** for withholding any records at that time – it merely noted the possibility of exemptions without identifying specific records or exemptions. The District also objected that Item 2 (seeking "any and all documents related to" the policy) was overly broad and **insufficiently specific** under Section 703. Notably, the District's solicitor attached no affidavits or proof to the position statement. The submission consisted of unsworn assertions and a promise to furnish the non-exempt records for Items 1 and 3–6 "within the appropriate and applicable time-frame" (without clarifying what timeframe that would be, given the request was already long overdue). By the time of the final determination, the District had **not actually produced any records** to Ms. DiPaulo, aside from its vague commitment to eventually do so.

**OOR Final Determination:** The OOR Appeals Officer issued the final decision on March 29, 2023, and it was largely **favorable to the requester**. First, the OOR agreed with the District on one point: Item 2 of the request (seeking all documents "related to" the policy) was **insufficiently specific**. Given its unlimited scope and lack of timeframe or subject qualifiers, the OOR held Item 2 to be too broad under Section 703, and denied the appeal as to that portion (while noting Ms. DiPaulo could file a clarified request). Importantly, however, the OOR found that **the District had no lawful basis to withhold records responsive to Items 1 and 3–6**. The District had **missed its burden of proof**: it asserted possible exemptions (and even referenced Section 708(b)(10) deliberations and privilege in generic terms) but provided **no evidence at all** to substantiate any exemption. Unsworn statements by counsel are not evidence under the RTKL, and the OOR emphasized that point. Because the District **"fail[ed] to submit any evidence in support of its argument"** that certain records might be exempt, those claims were rejected. In fact, the final determination noted there was no indication the District had even attempted to

locate responsive records by the time of the appeal hearing. All records in a local agency's possession are presumed public unless proven otherwise, and here the District offered no proof. The OOR explicitly admonished that "unsworn statements or statements of counsel" do not suffice to meet the District's burden. Additionally, the OOR observed that the nature of the records requested (tax appeal policy and its application) did not obviously fall under any exemption, and in fact related to "official actions" of the District which should occur publicly. The OOR went so far as to **caution the District** that a court might find its conduct to constitute bad faith – citing the District's failure to perform a good-faith search or comply with RTKL Section 901 obligations as an example of potentially sanctionable behavior. **Outcome:** The appeal was **granted in substantial part**. The OOR ordered the District to **conduct a good-faith search and provide all records responsive to Items 1 and 3–6** within thirty days. Specifically, the District was required to give Ms. DiPaulo: *a copy of its Policy for selecting properties for 2023 appeals (Item 1); all records showing how that policy/methodology was implemented (Item 3, methodology documents; and Item 4, the list of properties appealed); the identity of any consultant or appraiser involved (Item 5); and any records related to the particular parcel number referenced (Item 6).* The appeal was **denied as to Item 2** (insufficient specificity). In sum, Southeast Delco SD was compelled to release its 2023 assessment appeal policy and all relevant, non-exempt information about its property appeals. The final determination put the District on notice that its pattern of inaction and unsupported denials was unacceptable under the RTKL. (Notably, the District did not present any further exemption claims or appeals in court on this matter, according to the record.)

*(No third separate appeal by Ms. DiPaulo involving Southeast Delco was identified in the records. The above two appeals encompass her efforts to obtain the tax appeal policy records, including the initial premature appeal and the substantive appeal in early 2023.)*

### Pattern of District Conduct Across These Appeals

The outcomes of these eight RTKL appeals reveal **consistent problematic behaviors by the Southeast Delco School District** in handling open records requests:

- **Frequent Missed Deadlines and Deemed Denials**

- **Claims of Non-Receipt or Late Awareness:**

- **Delayed Participation in Appeals:** In several appeals, the District only engaged in the process after prodding by the OOR or the requester – often well past the normal submission period. For instance, in the 2023 DiPaulo appeal, the District ignored the appeal until the OOR reopened the record, then sought an extension, filing its position nearly four weeks late. Similarly, in my 2nd appeal, the District provided no answer by the initial deadline and only submitted evidence after the OOR sent a follow-up on February 28, 2025 confirming no submission had been received. In the 4th appeal, the District missed the briefing deadline and requested extra time after the fact, which the requester and OOR granted to avoid an automatic loss. This habit of *last-minute or after-deadline responses* delayed resolution and drew reproach from the OOR.

- **Incomplete Initial Searches (Records Only Produced on Appeal):** A striking pattern is the District's failure to conduct thorough searches until an appeal is underway. On multiple occasions, the District's final response omitted significant responsive records that were only discovered and released during the appeal. For example, in my1st appeal, the District's response failed to include dozens of internal emails containing his name; only after appeal did the Open Records Officer realize no IT department email search had been done, leading to **hundreds of emails being provided during the appeal**. In the 2nd appeal, the District initially denied having any record of my contract, but during the appeal it located and **produced documents (assignment terms, conditions, etc.) that plainly fell within the request**. In the 5th appeal, evidence emerged that the District had not originally gathered certain budget justification records; the OOR ordered a renewed search for documents like staffing cost breakdowns that were not supplied in the response. These cases illustrate the District's lack of a robust, "good faith" search at the request stage. The OOR repeatedly admonished the District for this failing, reminding it of the Section 901 duty to **"advise all custodians of potentially responsive records" and thoroughly search all likely repositories**.

- **Routine Withholding of Records until Compelled:** The District's general approach has been to withhold or delay disclosing records unless and until an appeal forces the issue. In almost every case, records that should have been provided promptly were only turned over after the District was confronted in the appeal. For example, *only after* Ms. DiPaulo appealed did the District promise to release Items 1 and 3–6 of her request (which it then still did not do until ordered). *Only after* I appealed did the District provide vital records: e.g., the BusPatrol revenue bank statements and contract (Appeal 3), the incident reports and directives about his termination (Appeal 4), and the assignment letters and employment agency terms (Appeal 2). In the third appeal, the District initially denied access to the BusPatrol monthly reports, but the final order compelled it to obtain and release them. This indicates a pattern of the District **failing to provide records proactively**, instead requiring appeal orders to produce what the RTKL entitles requesters to receive.

- **Frequent Use of "Insufficient Specificity" as a Refusal Rationale:** In several appeals, the District tried to avoid responding by labeling requests overly broad under Section 703. While some requests did have broad wording, the OOR found that the District often **overstated this objection**. For example, the District deemed entire multi-part bus camera request insufficiently specific, but the OOR ruled that the portion seeking financial records was specific and had to be answered. The District similarly objected to parts of the Robert Half budget request as lacking clarity, but the OOR determined that a focused subject like a known $127,000 allocation was, in context, specific enough. In Ms. DiPaulo's case, the District argued the request for "all documents related to" the policy was too vague – and the OOR did concur on that one item. However, the remaining items in her request (which the District also initially failed to answer) were quite specific and were ordered released. The pattern suggests the District tends to invoke "overly broad" as a blanket response instead of parsing requests in good faith. The OOR's decisions reflect frustration with this tactic, showing that most parts of the disputed requests were in fact **sufficiently specific when reasonably interpreted in context**.

- **Lack of Good-Faith Search:** The District's pattern of late and incomplete searches was documented, though the OOR stopped short of a formal bad faith finding. In one instance, the OOR declined to find bad faith **only because the District did belatedly participate and produce some records on appeal**, but it acknowledged the requester's assertions of a "pattern of noncompliance". Overall, the District's behavior – chronic delays, ignored emails, scant justifications, and piecemeal disclosures – **indicates a persistent lack of transparency**.

- **Outcomes For Requesters:** None of the District's denials were upheld in full. The District was compelled to provide records ranging from **public financial documents** (budget allocations, revenue statements) to **personnel-related files** (termination reports, hiring assessments) to **policy and procedure materials** (assessment appeal policies, consultant information). In my 3rd appeal, the District filed no argument, so the appeal was granted, and all records had to be released.

In summary, Southeast Delco School District has exhibited a **pattern of delay, non-responsiveness, and unsupported denials** in handling RTKL requests. The District frequently misses statutory deadlines, often cites lost or unreceived requests, and only fully engages at the appeal stage– often providing records at the last minute or after prodding. It has repeatedly failed to perform adequate searches initially, resulting in responsive records coming to light only during appeals. The District's legal justifications for withholding records have consistently been cursory and unsubstantiated, leading the OOR to reject its exemption claims and deem its responses insufficient. The OOR's final determinations across these appeals emphasize the District's *lack of compliance* with RTKL requirements and strongly encourage the District to correct these practices to ensure timely, good-faith transparency going forward.

## Exhibit K: February 28, 2024 Inventory Export Showing 1,600+ Unused ECF Chromebooks at Administration Building

February 28, 2024 export from IncidentIQ, the District's asset management software, showing over 1,600 Dell Chromebook 3110 devices—procured through the federal Emergency Connectivity Fund (ECF) program—pinging the Access Point at the Educational Services Center (ESC), located at 1560 Delmar Drive. The ESC is the District's central administration office, not a school building. Despite the devices being unboxed and domain joined as early as June 2023, only an estimated 600–700 of the 2,500 Chromebooks had been distributed to students by this point. All serial numbers have been redacted. This document corroborates Plaintiff's prior protected communications about the improper hoarding of federally funded student devices and supports claims under both the First Amendment and Monell doctrine.

```
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
```



```
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
,"Dell Chromebook  3110","Educational  Services Center","","","
,"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
Dell Chromebook  3110","Educational  Services Center","","","
Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
Dell Chromebook  3110","Educational  Services Center","","","
Dell Chromebook  3110","Educational  Services Center","","","
Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
,"Dell Chromebook  3110","Educational  Services Center","","","
'Dell Chromebook  3110","Educational  Services Center","","","
,"Del Chromebook  3110","Educational  Services Center","","","
,"Del Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
,"Del Chromebook  3110","Educational  Services Center","","","
,"Del Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
"Dell Chromebook  3110","Educational  Services Center","","","
```

```
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell  Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell  Chromebook    3110","Educational    Services Center","","",""
,"Del Chromebook    3110","Educational    Services Center","","",""
,"Del Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell  Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell  Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
,"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell  Chromebook    3110","Educational    Services Center","","",""
```

```
"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
,"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
,"Del Chromebook 3110","Educational Services Center","","",""
,"Del Chromebook 3110","Educational Services Center","","",""
,"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
'Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
,"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
,"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
,"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
,"Dell Chromebook 3110","Educational Services Center","","",""
,"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
,"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
,"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
,"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
,"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
"Dell Chromebook 3110","Educational Services Center","","",""
```

```
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
"Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
```

█ Dell Chromebook 3110","Educational Services Center","","",""
█ Dell Chromebook 3110","Educational Services Center","","",""
█ "Dell Chromebook 3110","Educational Services Center","","",""
█ "Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ Dell Chromebook 3110","Educational Services Center","","",""
█ "Dell Chromebook 3110","Educational Services Center","","",""
█ "Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ Dell Chromebook 3110","Educational Services Center","","",""
█ "Del Chromebook 3110","Educational Services Center","","",""
█ Dell Chromebook 3110","Educational Services Center","","",""
█ Dell Chromebook 3110","Educational Services Center","","",""
█ Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ "Dell Chromebook 3110","Educational Services Center","","",""
█ "Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ ,"Dell Chromebook 3110","Educational Services Center","","",""
█ "Dell Chromebook 3110","Educational Services Center","","",""
█ ,"Del Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ "Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ Dell Chromebook 3110","Educational Services Center","","",""
█ ,"Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ "Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""
█ 'Dell Chromebook 3110","Educational Services Center","","",""

```
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
```

```
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center",","","
'Dell  Chromebook   3110","Educational    Services Center","","","",""
'Dell  Chromebook   3110","Educational    Services Center",","","
'Dell  Chromebook   3110","Educational    Services Center","","","",""
'Dell  Chromebook   3110","Educational    Services Center",","","
"Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell  Chromebook   3110","Educational    Services Center",","","
,"Del Chromebook     3110","Educational    Services Center","","","",""
,"Del Chromebook     3110","Educational    Services Center",","","
,"Del Chromebook     3110","Educational    Services Center","","","",""
","Del Chromebook    3110","Educational    Services Center",","","
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center",","","
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center",","","
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center",","","
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center",","","
'Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center",","","
"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center",","","
,"Dell Chromebook   3110","Educational    Services Center","","","",""
',"Del Chromebook    3110","Educational    Services Center",","","
',"Del Chromebook    3110","Educational    Services Center","","","",""
,"Del Chromebook     3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center",","","
"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center",","","
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
Dell  Chromebook    3110","Educational    Services Center","","","",""
,"Del Chromebook     3110","Educational    Services Center",","","
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
```

```
"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
"Dell Chromebook       3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
"Dell Chromebook       3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
"Dell Chromebook       3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
"Dell Chromebook       3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
"Dell Chromebook       3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
,"Dell Chromebook      3110","Educational Services Center","","",""
"Dell Chromebook       3110","Educational Services Center","","",""
"Dell Chromebook       3110","Educational Services Center","","",""
"Dell Chromebook       3110","Educational Services Center","","",""
"Dell Chromebook       3110","Educational Services Center","","",""
"Dell Chromebook       3110","Educational Services Center","","",""
```

```
"Dell Chromebook   3110","Educational   Services Center","","",""
,"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center",",",","
"Dell Chromebook   3110","Educational   Services Center","","",""
Dell Chromebook    3110","Educational   Services Center","","",""
Dell Chromebook    3110","Educational   Services Center",",",","
Dell Chromebook    3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center",",",","
Dell Chromebook    3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center",",",","
"Dell Chromebook   3110","Educational   Services Center","","",""
Dell Chromebook    3110","Educational   Services Center",",",","
Dell Chromebook    3110","Educational   Services Center",",",","
'Dell Chromebook   3110","Educational   Services Center",",",","
'Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center",",",","
'Dell Chromebook   3110","Educational   Services Center",",",","
Dell Chromebook    3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","","",""
Dell Chromebook    3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center",",",","
'Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center","","",""
,"Del Chromebook    3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center",",",","
'Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center",",",","
'Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center",",",","
'Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center",",",","
'Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center",",",","
'Dell Chromebook   3110","Educational   Services Center",",",","
'Dell Chromebook   3110","Educational   Services Center",",",","
"Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center",",",","
'Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center","","",""
```

```
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
Dell Chromebook    3110","Educational    Services Center","","","",""
Dell Chromebook    3110","Educational    Services Center","","","",""
Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
```

```
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
","Del Chromebook     3110","Educational     Services Center","","",""
',"Dell Chromebook     3110","Educational     Services Center","","",""
","Del Chromebook     3110","Educational     Services Center","","",""
","Del Chromebook     3110","Educational     Services Center","","",""
","Del Chromebook     3110","Educational     Services Center","","",""
"Dell Chromebook     3110","Educational     Services Center","","",""
"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
","Del Chromebook     3110","Educational     Services Center","","",""
"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
"Dell Chromebook     3110","Educational     Services Center","","",""
,"Dell Chromebook     3110","Educational     Services Center","","",""
"Dell Chromebook     3110","Educational     Services Center","","",""
```

```
'Dell Chromebook   3110","Educational   Services Center","","","""
"Dell Chromebook   3110","Educational   Services Center","","","""
Dell  Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
Dell  Chromebook   3110","Educational   Services Center","","","""
Dell  Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
Dell  Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
Dell  Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
"Dell Chromebook   3110","Educational   Services Center","","","""
Dell  Chromebook   3110","Educational   Services Center","","","""
"Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
"Dell Chromebook   3110","Educational   Services Center","","","""
"Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
Dell  Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
"Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
'Dell Chromebook   3110","Educational   Services Center","","","""
Dell  Chromebook   3110","Educational   Services Center","","","""
Dell  Chromebook   3110","Educational   Services Center","","","""
Dell  Chromebook   3110","Educational   Services Center","","","""
```

Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
'Dell Chromebook 3110","Educational Services Center","","","",""
"Del Chromebook 3110","Educational Services Center","","","",""
'Del Chromebook 3110","Educational Services Center","","","",""
"Del Chromebook 3110","Educational Services Center","","","",""
"Del Chromebook 3110","Educational Services Center","","","",""
"De Chromebook 3110","Educational Services Center","","","",""
"Del Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
'Dell Chromebook 3110","Educational Services Center","","","",""
'Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""
Dell Chromebook 3110","Educational Services Center","","","",""

```
"Dell Chromebook   3110","Educational   Services Center","","",""
Dell Chromebook   3110","Educational   Services Center","",",","
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","",",","
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","",",","
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","",",","
"Dell Chromebook   3110","Educational   Services Center","","",""
Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","",",","
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","",",","
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","",",","
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","",",","
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","",",","
Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","",",","
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","",",","
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","",",","
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","","",""
Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","",",","
"Dell Chromebook   3110","Educational   Services Center","",",","
Dell Chromebook   3110","Educational   Services Center","",",","
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","","",""
```

```
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
ell  Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
ell  Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Del  Chromebook    3110","Educational    Services Center","","",""
Del  Chromebook    3110","Educational    Services Center","","",""
Del  Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Del  Chromebook    3110","Educational    Services Center","","",""
Del  Chromebook    3110","Educational    Services Center","","",""
```

```
Del Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Del Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Dell Chromebook   3110","Educational    Services Center","","",""
Dell Chromebook   3110","Educational    Services Center","","","",""
Del Chromebook    3110","Educational    Services Center","","",""
```

```
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Del Chromebook    3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Del Chromebook    3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Del Chromebook    3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Del Chromebook    3110","Educational   Services Center","","","",""
█████ De Chromebook     3110","Educational   Services Center","","","",""
█████ De Chromebook     3110","Educational   Services Center","","","",""
█████ De Chromebook     3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
█████ Dell Chromebook   3110","Educational   Services Center","","","",""
```

```
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
```

```
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
█████  Dell Chromebook  3110","Educational  Services Center","","",""
```

```
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
Dell Chromebook    3110","Educational   Services Center","","","",""
```

```
'Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
Dell  Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
Dell  Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
,"Del Chromebook    3110","Educational    Services Center","","","",""
Dell  Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
Dell  Chromebook    3110","Educational    Services Center","","","",""
Dell  Chromebook    3110","Educational    Services Center","","","",""
Dell  Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
,"Del Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Del Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Del Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Del Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
Dell  Chromebook    3110","Educational    Services Center","","","",""
'Dell Chromebook    3110","Educational    Services Center","","","",""
```

```
'Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center","",","
,"Del Chromebook    3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","",","
Dell Chromebook    3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center","",","
Dell Chromebook    3110","Educational   Services Center","",","
'Dell Chromebook   3110","Educational   Services Center","","",""
Dell Chromebook    3110","Educational   Services Center","",","
Dell Chromebook    3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center","",","
"Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","",","
,"Del Chromebook    3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","",","
"Dell Chromebook   3110","Educational   Services Center","",","
"Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center","",","
"Dell Chromebook   3110","Educational   Services Center","",","
"Dell Chromebook   3110","Educational   Services Center","",","
Dell Chromebook    3110","Educational   Services Center","",","
Dell Chromebook    3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center","",","
"Dell Chromebook   3110","Educational   Services Center","",","
'Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center","","",""
Dell Chromebook    3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center","",","
"Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center","",","
'Dell Chromebook   3110","Educational   Services Center","","",""
Dell Chromebook    3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center","",","
"Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center","",","
'Dell Chromebook   3110","Educational   Services Center","","",""
"Del Chromebook    3110","Educational   Services Center","",","
'Dell Chromebook   3110","Educational   Services Center","","",""
'Dell Chromebook   3110","Educational   Services Center","",","
'Dell Chromebook   3110","Educational   Services Center","","",""
"Dell Chromebook   3110","Educational   Services Center","",","
Dell Chromebook    3110","Educational   Services Center","",","
'Dell Chromebook   3110","Educational   Services Center","","",""
```

```
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center",",",","
Dell Chromebook    3110","Educational    Services Center",",",","
Dell Chromebook    3110","Educational    Services Center",",",","
Dell Chromebook    3110","Educational    Services Center",",",","
Dell Chromebook    3110","Educational    Services Center",",",","
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Del Chromebook     3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center",",",","
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center",",",","
Dell Chromebook    3110","Educational    Services Center","","",""
Del Chromebook     3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center",",",","
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center",",",","
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center",",",","
Dell Chromebook    3110","Educational    Services Center",",",","
Dell Chromebook    3110","Educational    Services Center",",",","
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center",",",","
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center",",",","
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center",",",","
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center",",",","
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center",",",","
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center",",",","
Dell Chromebook    3110","Educational    Services Center",",",","
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center",",",","
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center",",",","
```

```
▓▓▓▓▓▓▓Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓'Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓'Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓,"Del Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓,"De Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓,"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓,"Del Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓'Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓,"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓'Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓Dell  Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓'Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓,"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓,"Del Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓,"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓,"Del Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓'Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓"Dell Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓,"Del Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓Dell  Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓Dell  Chromebook  3110","Educational  Services Center","","",""
▓▓▓▓▓▓▓'Dell Chromebook  3110","Educational  Services Center","","",""
```

```
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
"Dell  Chromebook   3110","Educational  Services Center","","",""
```

```
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
,"Dell Chromebook    3110","Educational    Services Center","","","",""
"Dell Chromebook    3110","Educational    Services Center","","","",""
```

```
"Dell Chromebook    3110","Educational    Services Center","","","",
"Dell Chromebook    3110","Educational    Services Center","","","",
"Dell Chromebook    3110","Educational    Services Center","","","",
,"Dell Chromebook    3110","Educational    Services Center","","","",
"Dell Chromebook    3110","Educational    Services Center","","","",
"Dell Chromebook    3110","Educational    Services Center","","","",
"Dell Chromebook    3110","Educational    Services Center","","","",
"Dell Chromebook    3110","Educational    Services Center","","","",
```

```
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
ell  Chromebook   3110","Educational   Services Center","","","",""
ell  Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
ell  Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
"Del Chromebook   3110","Educational   Services Center","","","",""
'Del Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
'Del Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
Dell Chromebook   3110","Educational   Services Center","","","",""
'Del Chromebook   3110","Educational   Services Center","","","",""
'Del Chromebook   3110","Educational   Services Center","","","",""
Del Chromebook   3110","Educational   Services Center","","","",""
Del Chromebook   3110","Educational   Services Center","","","",""
```

```
,"Del Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
"Del Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
"Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
Dell Chromebook    3110","Educational    Services Center","","",""
'Dell Chromebook    3110","Educational    Services Center","","",""
```

```
"Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
,"Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
'Dell Chromebook  3110","Educational  Services Center","","",""
'Dell Chromebook  3110","Educational  Services Center","","",""
'Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
Dell Chromebook  3110","Educational  Services Center","","",""
'Dell Chromebook  3110","Educational  Services Center","","",""
'Dell Chromebook  3110","Educational  Services Center","","",""
'Dell Chromebook  3110","Educational  Services Center","","",""
,"Dell Chromebook  3110","Educational  Services Center","","",""
,"Dell Chromebook  3110","Educational  Services Center","","",""
,"Dell Chromebook  3110","Educational  Services Center","","",""
,"Dell Chromebook  3110","Educational  Services Center","","",""
',"Dell Chromebook  3110","Educational  Services Center","","",""
'Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
'Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
'Dell Chromebook  3110","Educational  Services Center","","",""
'Dell Chromebook  3110","Educational  Services Center","","",""
,"Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
,"Del Chromebook  3110","Educational  Services Center","","",""
,"Del Chromebook  3110","Educational  Services Center","","",""
,"Del Chromebook  3110","Educational  Services Center","","",""
'Dell Chromebook  3110","Educational  Services Center","","",""
Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
"Dell Chromebook  3110","Educational  Services Center","","",""
```

"Del Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""
Dell Chromebook 3110","Educational Services Center","","",""

```
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
Dell  Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
Dell  Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
Dell  Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
Dell  Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
"Dell Chromebook    3110","Educational    Services  Center","","","",""
Dell  Chromebook    3110","Educational    Services  Center","","","",""
Dell  Chromebook    3110","Educational    Services  Center","","","",""
```

**Exhibit L: June 14, 2023 Email from Former Accounting Director Nikeya Fisher to School Board - Internal Report of Financial Misappropriation by Craig Butler**

June 14, 2023 email from Nikeya Fisher, the District's former Director of Accounting, to the School Board and administrators, raising concerns about misappropriated funds. Fisher reports that Craig Butler instructed her to fund Superintendent Brenda Wynder's HSA account from district funds in 2021-2022, totaling over $10,000, without HR approval or instructions. Fisher states the funds were used for Wynder's appointments/treatments and were not accepted by Independence Blue Cross. Obtained by Plaintiff via RTK request, this email constitutes evidence of internal whistleblowing on financial impropriety and supports a pattern of mismanagement and retaliation against those raising concerns (e.g., Fisher's subsequent removal).

**From:**          Nikeya Fisher <nfisher@sedelco.org>
**Sent:**          Wednesday, June 14, 2023 1:11 PM
**To:**            Chiwishi Abney; Reyshon Fowler; Sheree Monroe; Theresa Harris-Johnson; Roger Jack; Rebecca Perry; Aimee Washington; Rochelle Womack; Cynthia Woodfolk
**Subject:**       Misappropriated Funds

Hello All,

It has come to my attention that I was instructed by Mr. Craig Butler to continuously fund Dr. Brenda Wynder's HSA account from 2021-2022 from the districts funds until Independence Blue Cross informed me that the contributions will not be accepted.  These funds was misappropriated from the district and Dr. Wynder used these funds to pay for her appointments/treatments.  This was not approved and not instructed by HR who usually instructs who to fund and how much.  Dr. Wynder was funded well over an additional $10,000.  I needed to bring this matter to the board so you can see how the CFO is misappropriating funds of the District.

*Nikeya Fisher*
*Director of Accounting and Finance*
*Southeast Delco School District*
*1560 Delmar Drive*
*Folcroft, PA 19032*
*610-522-4300 ext. 5320*

1

**Exhibit M: August 27, 2023 CBS Philadelphia Article - Reporting on Payroll Fraud, Superintendent Resignation, and Nikeya Fisher's Removal**

CBS Philadelphia published this article on August 27, 2023, reporting that Southeast Delco School District lost approximately $120,000 to payroll fraud committed by several teacher's aides. The article further states that *another employee was "very recently removed from the district building for allegations of financial impropriety"*—a statement corroborated by Nikeya Fisher's email to the school board (Exhibit L). CBS confirms its investigative team had already been looking into anonymous complaints of financial misconduct for months. The article also notes the abrupt resignation of Superintendent Dr. Brenda Wynder and highlights community concern over district leadership. This contemporaneous media report validates the whistleblower context and environment of fiscal disarray that Plaintiff raised concerns about prior to his termination.

Southeast Delco superintendent resigns; teacher's aides accused of submitting false timecards - CBS Philadelphia

Philadelphia    |    News    Weather    Sports    Video    CBS Philadelphia Shows         72°

LOCAL NEWS

# Southeast Delco superintendent resigns; teacher's aides accused of submitting false timecards



By Joe Holden
August 27, 2023 / 2:00 PM EDT / CBS Philadelphia

Community asks who's in charge after Southeast
Delco superintendent resigns

FOLCROFT, Pa. (CBS) -- Southeast Delco School District Superintendent Dr. Brenda Wynder stunned members of her own board Thursday night by announcing abruptly that she was resigning, while passing out her letter of resignation.



Prior to any talk of resignations, CBS News Philadelphia Investigations had been looking into anonymous complaints sent to us about alleged financial misconduct at Southeast Delco for months.

CBS News Philadelphia Investigations reached out to Wynder for a statement regarding her decision to resign.

"I am leaving to start the next chapter in my career and life. I will be forever grateful to the Southeast Delco School District Board of Directors, the staff, students and community for giving me the opportunity to serve as Superintendent. I wish them all the best in the future," Wynder wrote. "I am hoping to continue to hear of the great progress with student growth and achievement as well as all other activities and events that they host."

Police say the now-former aides billed the district for hours never worked, and tell me the total loss is around $120,000. Police also say another employee was very recently removed from the district building for allegations of financial impropriety. @CBSPhiladelphia

8/1/25, 7:19 PM                    Southeast Delco superintendent resigns; teacher's aides accused of submitting false timecards - CBS Philadelphia

Watch CBS News                    — Joe Holden (@JoeHoldenCBS3) August 25,
                                   2023

"All this nonsense needs to stop and people need to put the children first.
Period," Wynder said in the meeting.

Some board members immediately threw their support behind the outgoing
superintendent.

"I am very upset right now that she is resigning because we are losing a good
superintendent," one board member said during the meeting.

Friday morning, our investigative team reached out to Folcroft police, who, to
our surprise, say in just the last year as many as eight teachers' aides were
arrested and charged with forgery and theft.

It's alleged they billed the district for time never worked.

Folcroft Police say the total loss to the district is $120,000.

> The superintendent's new contract of $207,000
> annually was a source of controversy earlier this
> year. We emailed all 9 school board members,
> other officials and their lawyer. We've heard
> nothing back the about sudden resignation or
> what the separation terms are.
> @CBSPhiladelphia
>
> — Joe Holden (@JoeHoldenCBS3) August 25,
> 2023

After reaching out to the school board for comment, they forwarded us a letter
from Board President Sheree Monroe Whitsett to the school community that

8/1/25, 7:19 PM                    Southeast Delco superintendent resigns; teacher's aides accused of submitting false timecards - CBS Philadelphia

discussed Wynder's resignation.

The letter says the board will soon begin the search process for a new
superintendent, and keep the community updated through that process.

The letter also acknowledged the allegations about teacher's aides:

> In another matter, I wanted to also make you aware that this past spring
> the school district became aware that six paraprofessionals who had
> worked in our district had submitted timecards for hours they had not
> actually worked. These paraprofessionals were hired and paid through
> two different employment companies that supply paraprofessionals to
> schools. As soon as the district learned of these overcharges, we
> followed our protocols, contacted the employment companies, and the
> matter was referred to police. The district is in the process of receiving
> what we believe will be full reimbursement for just over $124,000 that
> was paid to the employment companies for those false hours. The
> district has reviewed its contractor payments and believes this is an
> isolated matter. The paraprofessionals will not be working in our district
> moving forward.

District Attorney Jack Stollsteimer told CBS News Philadelphia he could neither
confirm or deny the existence of a larger investigation.

Meanwhile - the now former teachers aides are all due in court over the next few
weeks.

## More from CBS News

 Hearing set after Prospect asks judge to "abandon" 2 shuttered Delco hospitals

 Cooler temps Friday in Philadelphia area, beautiful summer weekend ahead

 Heat wave continues Wednesday before storms move in Thursday

 Cleanup underway after Thursday's storms flood roads, damage vehicles

**Exhibit N: April 2, 2025 Delaware County DA Response and Affidavit - Confirmation of Active Criminal Investigation into Fraud and Public Corruption at Southeast Delco**

April 2, 2025 response from the Delaware County District Attorney's Office (DA) to Plaintiff's RTK request for records related to financial misconduct at Southeast Delco School District, including payroll fraud and whistleblower complaints (submitted March 22, 2025). The DA denies the request under RTKL exemptions for criminal investigative records (§ 67.708(b)(16)), attaching an affidavit from Deputy DA Douglas A. Rhoads stating the records relate to an ongoing investigation by the Special Investigations Unit (handling fraud/public corruption). The affidavit confirms complaints, investigative materials, confidential sources, and risks of disclosure (e.g., revealing progress, impairing prosecution). This corroborates the DA's active probe referenced in Exhibit J and supports claims of systemic corruption and retaliation against whistleblowers.



**OFFICE OF THE DISTRICT ATTORNEY**
DELAWARE COUNTY COURTHOUSE
MEDIA, PENNSYLVANIA 19063
_____
(610) 891-4161

JACK STOLLSTEIMER
DISTRICT ATTORNEY

Douglas A. Rhoads
Deputy District Attorney
Phone: (610) 891-4192
OpenRecordsDA@co.delaware.
pa.us

Sent via email: OOR portal

April 11, 2025

Damian DeStefano, Esquire
Commonwealth of Pennsylvania
Office of Open Records
333 Market Street, 16th Floor
Harrisburg, PA 17101-2234

Re:    **CHARLES GIBBONE v. DELAWARE COUNTY DISTRICT
ATTORNEY'S OFFICE, OOR Dkt. AP 2025-0845**

Dear Officer DeStefano:

On March 19, 2025, Requestor e-mailed a request for records pursuant to Pennsylvania's Right to Know Law ("RTKL"). Relative to the March 19th request, Requestor restyled and resent the request on March 22, 2025, explaining: _"My apologies, here is the correct form. It includes more phrasing and has the box for email responses checked. Thank you for your assistance regarding this urgent matter."_ Therein, on March 22nd Requestor demanded:

_Pursuant to the Pennsylvania Right-to-Know Law, I request access to all records concerning investigations, inquiries, or legal actions related to financial misconduct at Southeast Delco School
District. Specifically, I seek records related to payroll fraud and any other financial irregularities, including but not limited to whistleblower complaints, protected disclosures, or any communications with confidential informants regarding the case._
_I request access to the following:_
_1.      Investigative Records & Reports_
_o      Any police reports, investigative summaries, closure reports, or internal memoranda related to financial fraud, payroll fraud, misappropriation of funds,_

*embezzlement, or other financial misconduct at Southeast Delco School District from January 1, 2023, to the present.*

o     *Any written decisions, internal discussions, or findings on whether to prosecute or decline prosecution in relation to any financial fraud at the district.*

o     *Any records documenting cooperation with a whistleblower or confidential informant, including internal memos, emails, or case notes discussing an informant's disclosures related to financial fraud.*

2.     *Correspondence Between the DA's Office & Other Entities*

*All emails, letters, or memoranda between the DA's Office and any of the following entities regarding financial fraud investigations:*

*Southeast Delco School District officials o Folcroft Borough Police Department o Pennsylvania Department of Education*

*https://out100k.office.com/mail/sentitems/id/AAQkADFkZDlmNGE5LTAzMDAtNGE4Ny 05MGEzLTc1Y2FhY2VkNzFjYQAQAN5XRarnXUpJia7ZpRu5Wg...*

o     *Any external auditors, forensic accountants, or financial oversight bodies assisting in an investigation o Any anonymous or identified whistleblower who reported financial fraud to the DA's Office*

3.     *Whistleblower & Confidential Informant-Related Records*

o     *Any complaints, disclosures, or tips received by the DA's Office from a whistleblower, confidential informant, or internal employee related to financial misconduct, payroll fraud, or misappropriation of funds.*

o     *Any memos, emails, or communications discussing whistleblower protections, retaliation concerns, or confidentiality agreements related to this case.*

o     *Any internal meeting minutes, case notes, or documentation referencing a whistleblower's statements, evidence, or involvement in the Southeast Delco School District fraud case.   Any legal determinations, policies, or procedures used by the DA's Office regarding how they handled whistleblower-provided evidence in this case.*

4.     *Financial & Legal Records Related to Investigations*

*Any financial audits, forensic reports, or investigative findings shared with the DA's Office regarding financial irregularities in the school district.*

*A copy of any subpoenas, search warrants, or investigative requests issued by the DA's Office related to financial fraud at Southeast Delco.*

5.     *Internal DA Office Communications*

o     *Any emails, memoranda, or other communications within the DA's Office referencing "Southeast Delco School District" and any of the following terms: o "fraud" o "Butler"*

  *"Wynder"*

  *"payroll fraud"*

  *"misappropriation" o "embezzlement" o Ufinancial misconduct"*

*Ucorruption" o Uwhistleblower" o "confidential informant"*

  *"Nikeya Fisher" o "Fisher"*

  *"protected disclosure" o Date range: January 1, 2023, to the present.*

*Additional Request Conditions:*

o *If records are denied or redacted, provide a legal justification citing specific RTKL exemptions. I understand that certain parts of the request may be confidential if there is*

*an ongoing criminal investigation. However, I request that documents are redacted in good faith rather than outright denial.*
*As someone who was escorted out by security and had my contract terminated the day after speaking up about how public funds were being spent, I request all fees are waived since this ties into public transparency and accountability.*

On March 31, 2025, the March 22nd request was deemed denied. 65 P.S. § 901("The time for response shall not exceed five business days from the date the written request is received by the open-records officer for an agency. If the agency fails to send the response within five business days of receipt of the written request for access, the written request for access shall be deemed denied.").

On April 2, 2025, the undersigned received official notice from the Office of Open Records ("OOR") that an appeal was filed and submissions to OOR are due on or before April 11, 2025. Please kindly accept the following as the District Attorney's Office submission requesting that the appeal be(1) transferred to the Appeals Officer designated by the District Attorney's Office; or, (2) denied. In support, the District Attorney's Office relies upon the following exceptions for public records as the records being sought are related to a criminal investigation.

I.     **The requested records are exempt from disclosure because they are criminal investigatory records. 65 P.S. § 67.708**

In support of the denial of the appeal the District Attorney's Office relies upon the following exceptions for public records as the records being sought are related to a criminal investigation 65 P.S. § 67.708(b)(16):
(16) A record of an agency relating to or resulting in a criminal investigation, including:
    (i) Complaints of potential criminal conduct other than a private criminal complaint.
    (ii) Investigative materials, notes, correspondence, videos and reports.
    (iii) A record that includes the identity of a confidential source or the identity of a suspect who has not been charged with an offense to whom confidentiality has been promised.
    (iv) A record that includes information made confidential by law or court order.
    (v) Victim information, including any information that would jeopardize the safety of the victim.
    (vi) A record that, if disclosed, would do any of the following:
        (A) Reveal the institution, progress or result of a criminal investigation, except the filing of criminal charges.
        (B) Deprive a person of the right to a fair trial or an impartial adjudication.
        (C) Impair the ability to locate a defendant or codefendant.
        (D) Hinder an agency's ability to secure an arrest, prosecution or conviction.
        (E) Endanger the life or physical safety of an individual.

**"[I]f a record, on its face, relates to a criminal investigation, it is exempt under the RTKL pursuant to Section 708(b)(16)(ii)."** *Barros v. Martin,* **92 A.3d 1243 (Pa. Commw. Ct. 2014); See also,** *See Coley v. Philadelphia Dist. Attorney's Office,* **77 A.3d 694, 697 (Pa.Cmwlth.2013);** *Mitchell v. Office of Open Records,* **997 A.2d 1262, 1264 (Pa.Cmwlth.2010)(emphasis added).**

**Furthermore, criminal investigative records remain exempt from disclosure under the RTKL even after the investigation is completed.** *Barros, 92 A.3d at   See also; Sullivan v. City of Pittsburgh, Dep't of Pub. Safety, 127 Pa. Cmwlth. 339, 561 A.2d 863 (1989)(emphasis added).*

As a matter of course, investigations conducted by the District Attorney's Office are criminal in nature, and, as established, records relating to criminal investigations are exempt from disclosure under the RTKL, even after an investigation is complete. Here, the requested submitted, is on its face, criminal in nature, and therefore exempt from disclosure.

## II.    <u>In addition to being protected Criminal Records, the requested records are exempt from disclosure.</u>

Additionally, the requested records are exempt from disclosure pursuant to 65 P.S. § 67.708(b)(10) and (12).

## III.    <u>Affidavit In Support</u>

The burden of proving that a record of a Commonwealth agency or local agency is exempt from public access shall be on the Commonwealth agency or local agency receiving a request by a preponderance of the evidence." *65 P.S. § 67.708(a)(1).* Preponderance of the evidence has been defined as "such proof as leads the fact-finder … to find that the existence of a contested fact is more probable than its nonexistence." *Pa. State Troopers Ass'n v. Scolforo,* 18 A.3d 435, 439 (Pa. Commw. Ct. 2011) (quoting *Pa. Dep't of Transp. v. Agric. Lands Condemnation Approval Bd.,* 5 A.3d 821, 827 (Pa. Commw. Ct. 2010)). Under the RTKL, a sworn affidavit or statement made under penalty of perjury may serve as sufficient evidentiary support. *Sherry v. Radnor Twp. Sch. Dist.,* 20 A.3d 515, 520- 521 (Pa. Commw. Ct. 2011); *Moore v. Office of Open Records,* 992 A.2d 907, 909 (Pa. Commw. Ct. 2010). In the absence of any competent evidence that respondent acted in bad faith, "the averments in [the attestation] should be accepted as true." *McGown v. Pa. Dep't. of Envtl Prot.,* 103 A.3d 374, 382-383 (Pa. Commw. Ct. 2014) (citing *Office of the Governor v. Scolforo,* 65 A.3d 1095, 1103 (Pa. Commw. Ct. 2013).

Please see attached **Exhibit A**

IV.    **<u>Jurisdiction</u>**

   As the denial of the request is based upon 65 P.S. § 67.708(b)(16), proper jurisdiction of this appeal lies with the Agency's designated appeals officer. Therefore, the Agency submits that jurisdiction over this appeal should be transferred to the Agency's open records appeals officer. *See,* 65 P.S. §1101(a)(2).


                                        Respectfully Submitted,


                                        */s/ Douglas A. Rhoads*
                                        Douglas A. Rhoads
                                        Deputy District Attorney
                                        Agency Open Records Officer


Cc: Charles Gibbone
925 Beatty Road,
Springfield, PA 19063
gibbone@knights.neumann.edu
cagibbone@gmail.com

EXHIBIT A



**OFFICE OF THE DISTRICT ATTORNEY**
DELAWARE COUNTY COURTHOUSE
MEDIA, PENNSYLVANIA 19063
_____
(610) 891-4161

JACK STOLLSTEIMER
DISTRICT ATTORNEY

Douglas A. Rhoads
Deputy District Attorney
Phone: (610) 891-4192
OpenRecordsDA@co.delaware.
pa.us

## ATTESTATION AS REQUIRED BY APPEALS OFFICER

**Name of Respondent:**      Delaware County District Attorney's Office

**Name of Requester:**      Charles Gibbone

**Records Requested:**      Criminal Investigative Agency's Investigative Records per
March 22, 2025 Request

## CHARLES GIBBONE v. DELAWARE COUNTY DISTRICT ATTORNEY'S OFFICE, OOR Dkt. AP 2025-0845

I, Geoff Paine, hereby declare, pursuant to 18 Pa.C.S. § 4904, that the following statements are true and correct based upon my personal knowledge information and belief:

1. I serve as the Open Records Officer for the District Attorney's Office ("Office") and I am responsible for responding to Right to Know Law requests filed with the Office.

2. In my capacity as the Open Records Officer, I am familiar with the records of the Office.

3. The request for any investigative files, including, but not limited to correspondence, documents, et al., is protected information. See 65 P.S. §67.708(b)(16).

4. After receipt of the above-mentioned request, I personally spoke with Deputy District Attorney Douglas Rhoads, of the Delaware County District Attorney's Office.

5. Deputy District Attorney Douglas Rhoads is the head of the Special Investigations Unit to which investigations for fraud and public corruption are directed.

6. Deputy District Attorney Douglas Rhoads confirmed that documents responsive to the March 22, 2025 request of the Charles Gibbone ("Requester") relate to a criminal investigation, i.e. 1) complaints of potential criminal conduct other than a private criminal complaint, 2) investigative materials, notes, correspondence, videos and/or reports, 3) a record that includes the identity of a confidential source or the identity of a suspect who has not been charged with an offense to whom confidentiality has been promised, and Victim information, including any information that would jeopardize the safety of the victim, excepted from Right to Know Law requests by Section 708(b)(16)(i) through (v).

7.  Moreover, Deputy District Attorney Douglas Rhoads confirmed that, if disclosed, the requested information could violate Section 708(b)(16)(vi):
    (A) Reveal the institution, progress or result of a criminal investigation, except the filing of criminal charges;
    (B) Deprive a person of the right to a fair trial or an impartial adjudication;
    (C) Impair the ability to locate a defendant or codefendant;
    (D) Hinder an agency's ability to secure an arrest, prosecution or conviction; and/or
    (E) Endanger the life or physical safety of an individual.

8.  Additionally, the potential corresponding documentation will include information regarding criminal investigations with some of the corresponding documentation protected under both Section 708(b)(16)(ii) 65 P.S. §§ 67.708(b)(10) and (12).

9.  Finally, the extreme breadth of the request coupled with the lack of specificity, and the lengthy time frame would be unduly burdensome the Agency.

Date:  April 11, 2025

Signature:

Geoff Paine,
Deputy District Attorney
Open Records Officer

Subscribed and sworn to before me

this ___11th___ day of ___April___ 2025.

_Kelly M. Wilson_

Commonwealth of Pennsylvania - Notary Seal
KELLY MARIE WILSON - Notary Public
Delaware County
My Commission Expires February 2, 2026
Commission Number 1413612

**Exhibit O-1:** *Student 1:1 Device Loan Agreement* **outlining $250 Chromebook and $50 charger fines.**

Southeast Delco School District 1:1 Device Loan Agreement establishing the district's policy for assessing $250 replacement costs (fines) on parents/guardians for unreturned Chromebooks and $50 for chargers.



# Southeast Delco School District

## 1:1 Device Loan Agreement

**Overview**

As part of the Southeast Delco School District 1:1 Device initiative, your student is being provided with a device and charger to use for educational purposes both at school and at home. **In order for your student to receive his/ her assigned device, both the student and his/her parent/guardian must sign and return a copy of the 1:1 Device Loan Agreement Form**. Students and parents/guardians must carefully read this agreement prior to signing it.

**Device and Accessories**

- The student will receive one device and charger for use at school and at home. This equipment is, and at all times remains, the property of the Southeast Delco School District. It is loaned to the student for educational purposes only during the academic school year.

- The student may not deface or destroy this property in any way. While the device is covered under warranty, **the student can be held liable for a lost device and/or a device that has been damaged due to neglect, abuse or malicious act.**

- All material on the Chromebook is subject to review by school staff. If there is a police request, Southeast Delco Schools will provide access to the device and network accounts associated with the student's use of the laptop.

- If the device is stolen while in the student's possession, a police report must be made by the family and a copy of the incident report provided to Southeast Delco Schools.

- If the device is accidentally lost or damaged while in the student's possession and outside of the school building the student attends, the parent/guardian will submit a signed and witnessed report of the event.

- If the device or charger is accidentally lost or stolen while in the student's possession, **the parent/guardian will still be responsible for the cost of the device and or charger.** Chromebook replacement cost: $250   Charger replacement cost: $50

- Parents/Guardians may choose to opt out of the 1:1 device loan program. It will be the responsibility of the parent/guardian to provide the student(s) a device to complete online assignments at home.

- The device and charger will be returned at any time when requested by Southeast Delco Schools. If the student withdraws from Southeast Delco Schools, the student must turn in the device and charger before his/her last day of school at Southeast Delco. If the student withdraws from Southeast Delco Schools and

does not return the device and charger, the student's parent/guardian will be billed for the replacement cost of the device and charger. Chromebook replacement cost: $250   Charger replacement cost: $50

- Identification labels have been placed on the device. These labels are not to be removed or modified. If they become damaged or missing, the student should contact the Southeast Delco Technology Department for replacements.

- **Additional stickers, labels, tags or markings of any kind are not to be added to the device or the device charger**.

- The student acknowledges and agrees that his or her use of the device is a privilege and that by the student's agreement to the terms hereof, the student acknowledges his or her own responsibility to protect and safeguard the District property and to return the same in good condition upon request by the Southeast Delco School District.

**Software/ Networking**

- The student may not install or use any software other than software owned and approved by the District and made available to the student in accordance with this receipt and agreement.

- The student will not be able to add printers or other accessories to the device.

- The student will not change the default network settings (Wireless password, SSID) on the device.  (This will not prohibit them from connecting to their home Wi-Fi environment).

- The student understands that the Southeast Delco School District will not provide individual technical assistance with home Wi-Fi connections.

- The student will not use the device to connect to the Southeast Delco Schools guest wireless network.

- The Southeast Delco School District school network is provided for the academic use of all students and staff. The student agrees to take no action that would interfere with the efficient, academic use of the network.

**Use**

- The device is to be used only for non-commercial, **educational purposes**, in accordance with district's policies and rules, the Southeast Delco School District Acceptable Use Regulation, as well as local, state, and federal statutes.

- This device has been setup for and is intended to be used by only the student it has been assigned to.  The student agrees to let no other person use this device.  (NOTE:  Parents are permitted to monitor their student's activity on the device and to provide supervision.)

- The student will make sure he/she locks the device when not using it to minimize the chance of any non-authorized individual having access to the student's device or account.

- Inappropriate use of the device may result in the student losing his or her right to use the device.

**Daily Responsibilities**

- The student is responsible for **bringing the fully charged device** and the charger to class every day.

- The student must take their device and charger home every day.  Devices should not be left in lockers or other potentially non-safe areas.

I acknowledge that I received and understand the terms outlined in the Southeast Delco School District 1:1 Device Loan Agreement.

**Parent/Guardian Name (Please Print):** _____

**Parent/Guardian Signature:** _____

**Student Name (Please Print):** _____

**Student Signature:** _____

**Date:** _____

**Exhibit O-2: *Affidavit of Craig Butler* stating no Chromebook fines were collected from 2023–2025.**


Affidavit (O-2) from Craig Butler, Chief Financial Officer and Open Records Officer, states that the District did not collect any Chromebook fines from 2023 through 2025. However, this contradicts the District's own active 1:1 Device Loan Agreement (O-2), which clearly outlines fine amounts of $250 for Chromebook replacement and $50 for lost chargers. Moreover, Plaintiff and other technicians directly issued fines to students during this period, contradicting Butler's sworn statement. These documents together highlight potential misrepresentation in official responses, support the Monell claim regarding policy enforcement failure, and raise questions of credibility under oath.

**COMMONWEALTH OF PENNSYLVANIA**
**OFFICE OF OPEN RECORDS**

| | |
|---|---|
| In the Matter of | : |
| | : |
| CHARLES GIBBONE | : |
| Requester, | :    Docket No.: AP 2025-1425 |
| | : |
| v. | : |
| | : |
| SOUTHEAST DELCO SCHOOL | : |
| DISTRICT, | : |
| Respondent. | : |

**VERIFIED STATEMENT**

1.  I, Craig A. Butler, serve as the Chief Operating and Financial Officer and Open Records Officer ("ORO") for Southeast Delco School District ("School District").

2.  In my role as ORO for the School District, I received the April 9, 2025 Right-to-Know Law ("RTKL") Request that is the subject of this Appeal, and I provided the School District's May 16, 2025 final response letter and records to the Requester.

3.  In light of Requester's appeal claim that he was not provided with any records in response to item (2) of his three-part Request, I am submitting this Verified Statement to confirm that no responsive records exist within the School District's possession, custody or control.

4.  Although Requester is correct that the School District provided him with a copy of its "1:1 Device Loan Agreement," no such costs described in that document have been collected by the School District during the September 1, 2023 to April 9, 2025 time period that is the subject of request item (2).[1]

5.  In response to Requester's request for any records that would be responsive to his request item (2), I checked with our Accounts Receivable Department ("A/R"), as I am aware in my position as CFO/COO that if any such revenue was collected from Chromebook fines, an invoice seeking payment of any such fine would have been sent by A/R to the student's parent or guardian.

---

[1] Although Request item (2) does not expressly indicate a time period, it references "these Chromebook fines," which is the subject of Request item (1) that does provide the time period "from April 1, 2023 to Present." Accordingly, the School District's response to item (2) includes the prefatory statement: "Your request is interpreted as including the same timeframe as set forth in the preceding School District's Response number 1." (See, the School District's May 16, 2025 final response letter submitted with Requester's Appeal.)

6. I was informed by the A/R that no such invoices were sent out during the period September 1, 2023 through April 9, 2025.

7. I, Craig A. Butler, do hereby verify that the above statements set forth above are true and correct to the best of my knowledge and belief, and are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Date:   May 28, 2025          Signature: _____

Craig A. Butler

2

**P-1: October 20-27, 2024 Email Thread - Initial RTK Request for Technology Records and $5,000 Fee Dispute with Craig Butler**

October 20, 2024 email thread from Plaintiff to Yamil Sanchez and rtkrequest@sedelco.org (CC: openrecords@state.pa.us), submitting an RTK request for technology purchases, budgets, expenditures, and employment records (January 1, 2021-October 20, 2024). Butler responds with a $4,800-$5,500 fee estimate (labor-based, prohibited under RTKL), which Plaintiff disputes as unreasonable, narrowing the scope to high-value purchases over $1,000 and emphasizing public interest waiver. This demonstrates District's obstruction through inflated fees, supporting Monell claims of transparency failures and bad faith.

 **Outlook**

## Re: Right to Know Request

**From** Charles A. Gibbone <ca_gibbone@knights.neumann.edu>

**Date** Sun 10/27/2024 6:33 PM

**To**    Craig Butler <cbutler@sedelco.org>; rtkrequest@sedelco.org <rtkrequest@sedelco.org>; Yamil Sanchez <ysanchez@sedelco.org>

📎 1 attachment (221 KB)
NewScope.pdf;

Hello,

Thank you for your prompt response. For clarity and formal tracking, I'll be copying the RTK request email address to ensure our correspondence aligns with district procedures.

The estimated cost of **$4,800-$5,500** to fulfill my original request appears unreasonably high, especially for routine financial documents. **Southeast Delco School District is funded by taxpayer dollars, and records like invoices, purchase orders, and annual budgets should already be accessible through financial management systems**, such as QuickBooks, SAP, or other accounting software.

Based on my understanding, the records I requested should already exist in an organized format for audits and regular financial reviews. As a public institution funded by taxpayers, transparency and accountability are not optional but expected. Providing reasonable access to these records aligns with the district's obligations under public transparency laws. I have also requested electronic copies, which should further reduce the overall cost and labor required to fulfill this request.

**Invoices, Purchase Orders, and Receipts for Technology Purchases:**

These are routine financial documents that typically reside in accounting or procurement systems. While it could take time if the district's records are spread across departments or systems, it should not take 10 full days unless there is severe disorganization.

- My revised request focuses on high-value purchases over $1,000 to reduce the workload.

**Annual Budgets and Reports Comparing Budgeted vs. Actual Expenditures:**

These reports are routinely compiled for board meetings, audits, and internal reviews. They should be easily retrievable given their importance for tracking financial transparency.

Based on these points, the estimated labor cost seems to reflect either an exaggerated workload or disorganization within the district's systems. As such, I am narrowing the scope of my original request to:

- Receipts, invoices, and purchase orders for individual or bulk technology-related purchases over $1,000 from January 1, 2021, to October 20, 2024.
- Annual technology budgets and reports comparing budgeted vs. actual spending (Jan 2021–Oct 2024).

- Any agreements, contracts, or records between Southeast Delco School District and Robert Half that pertain to my employment as an IT contractor between March 2023 and May 2024.

**Internal Communications and Records:**

- Any internal or external emails, memos, or other forms of communication between district employees and Robert Half regarding my employment.
- Any emails or written records from March 2023 to May 2024 where my name (Charles Gibbone) appears, including any correspondence related to my performance or contract termination.

This revised request focuses on key information and should reduce the workload substantially. The narrowed scope now removes any ambiguity and aligns with routine district operations. Given that modern record-keeping is largely digital, providing these documents in electronic format (PDF or Excel) should not require significant labor.

**As these documents relate to public funds and transparency laws, I request that any fees be waived in the public interest**. If the district still insists on fees, please notify me in advance of the cost breakdown. However, if fulfilling this request truly requires ten full days of labor at the quoted rate, this may suggest serious disorganization within the district's accounting and inventory systems—further justifying the public's **right** to transparency.

I appreciate your time and attention to this matter, and I look forward to your response within the timeline outlined by law.

Sincerely,
Charles Gibbone

---

**From:** Craig Butler <cbutler@sedelco.org>
**Sent:** Thursday, October 24, 2024 2:35 PM
**To:** Charles A. Gibbone <ca_gibbone@knights.neumann.edu>; Yamil Sanchez <ysanchez@sedelco.org>
**Cc:** openrecords@state.pa.us <openrecords@state.pa.us>
**Subject:** Re: Right to Know Request

You don't often get email from cbutler@sedelco.org. Learn why this is important

Good afternoon Mr. Gibbone:

This response will confirm receipt of your RTKR submission.

I am also notifying you that the estimated cost to complete this task is estimated to be $4,800-$5,500 ($60/hour times 8 hours/day times 10 days). Please let me know how you would like to proceed.

Thank you,

Craig A. Butler
RTK Officer
***Southeast Delco School District***
1560 Delmar Drive
Folcroft, PA 19032
610-522-4300 Ext. 5393

rtkrequest@sedelco.org

---

**From:** Charles A. Gibbone <ca_gibbone@knights.neumann.edu>
**Sent:** Sunday, October 20, 2024 5:53 PM
**To:** Yamil Sanchez <ysanchez@sedelco.org>; RTK Request <rtkrequest@sedelco.org>
**Cc:** openrecords@state.pa.us <openrecords@state.pa.us>
**Subject:** Re: Right to Know Request

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.
Hello,

My apologies, here is the correct form. As noted, this is a lot of information to process. While I ask for receipt of the email within 5 business days, I understand school activities must take place. I kindly request that these records be provided by **November 20th, 2024**, to allow adequate time for review. Please let me know if there are any anticipated delays or if additional information is needed to fulfill this request within the specified timeframe.

Thanks,
Mr. Gibbone

---

**From:** Charles A. Gibbone
**Sent:** Sunday, October 20, 2024 3:33 PM
**To:** Yamil Sanchez <ysanchez@sedelco.org>; rtkrequest@sedelco.org <rtkrequest@sedelco.org>
**Cc:** openrecords@state.pa.us <openrecords@state.pa.us>
**Subject:** Right to Know Request

Hello,

Pursuant to the Pennsylvania Right-to-Know Law (or the applicable FOIA law for your state), I respectfully request access to and a copy of the following records regarding the school district's technology-related purchases and budget from **January 1, 2020, to October 20, 2024**:

    1. **Technology Purchases:**

- All invoices, purchase orders, and receipts for hardware, software, and related services.
- Any contracts with vendors related to technology acquisition, maintenance, or consulting.
- Documentation of bidding processes, including vendor bids and awarded contracts.

    2. **Technology Budget and Expenditures:**

- Approved budgets for technology purchases, including annual allocations for technology during the requested period.
- Reports detailing actual expenditures vs. budgeted amounts.
- Internal or external audits related to technology purchases and spending.

As these records relate directly to **taxpayer-funded purchases**, I respectfully request that any fees associated with fulfilling this request be **waived** in the public interest. If fees cannot be waived, please notify me in advance of fulfilling the request.

I am requesting these records in **electronic format** (e.g., PDFs or Excel files) if available. If portions of the records are exempt from disclosure, I request that you provide the non-exempt portions along with an explanation for any redactions or withheld materials.

Please confirm receipt of this request within five business days, as provided by law. Thank you for your attention to this matter. If you have any questions or require further clarification, please contact me at this email.

Sincerely,
Mr. Gibbone

**P-2: February 4, 2025 OOR Final Determination - First RTK Appeal Win on Technology Records, Fee Estimate, and Late Response**

February 4, 2025 OOR Final Determination (AP 2024-3173) granting Plaintiff's appeal in part, denying in part, and dismissing as moot in part. OOR finds District's $5,000 fee estimate improper (labor costs), notes late participation by Butler and counsel (one month delay, frustration expressed), orders search for performance/termination records (none provided), and confirms emails produced on appeal. This corroborates District's non-compliance, supporting retaliation pretext, tolling via concealment, and Monell for systemic RTKL violations.



# pennsylvania

OFFICE OF OPEN RECORDS

## FINAL DETERMINATION

IN THE MATTER OF                    :
                                    :
**CHARLES GIBBONE,**                :
**Requester**                       :
                                    :
v.                                  :    **Docket No: AP 2024-2964**
                                    :
**SOUTHEAST DELCO SCHOOL**          :
**DISTRICT,**                       :
**Respondent**                      :

## FACTUAL BACKGROUND

On October 21, 2024,[1] Charles Gibbone ("Requester") submitted a request ("Request") to

the Southeast Delco School District ("District") pursuant to the Right-to-Know Law ("RTKL"),

65 P.S. §§ 67.101 *et seq.*, seeking records relating to District technology purchases, expenditures

and budgeting.  The Requester initially submitted the Request by email dated October 20, 2024, at

3:33 p.m. and sought:

> … [electronic] records regarding the school district's technology-related purchases
> and budget from January 1, 2020, to October 20, 2024:
>
> 1. Technology Purchases: All invoices, purchase orders, and receipts for hardware,
> software, and related services. Any contracts with vendors related to technology
> acquisition, maintenance, or consulting. Documentation of bidding processes,
> including vendor bids and awarded contracts.

---

[1] The Request form and the appeal indicate that the Request was submitted to the District on October 20, 2024.
However, October 20, 2024, was a Sunday and, thus, a non-business day.  Therefore, the Request was considered
received on the next business day, October 21, 2024.

1

2. Technology Budget and Expenditures: Approved budgets for technology purchases, including annual allocations for technology during the requested period. Reports detailing actual expenditures vs. budgeted amounts. Internal or external audits related to technology purchases and spending.

The Requester also requested a fee waiver, but, in the event that fees could not be waived, he requested notification of the fee amount prior to fulfilling the Request. Subsequently, the Requester sent a second email, on the same date, at 5:33 p.m., attaching the standard RTK Request form, in which he sought:

… technology-related hardware, software, services, repairs, and maintenance from January 2020 to October 2024, including invoices, purchase orders, receipts and both individual and bulk orders. Please provide all contracts, agreements, and service-level agreements (SLAs) with vendors for technology purchases, maintenance, or consulting services, along with any amendments, renewals, or early terminations. I also request annual technology budgets, including initial and adjusted budgets, with reports comparing budgeted versus actual expenditures for hardware, software, and services. Additionally, I seek internal and external audits or investigative reports related to technology spending during this period, including findings, recommendations, or follow-up actions, as well as a complete inventory of technology equipment with purchase dates, assignments, and any disposal records for obsolete items. Lastly, I request copies of warranty agreements and service requests or work order for repairs and maintenance of equipment purchased during this time.

On October 24, 2024, the District issued an email, confirming receipt of the Request and notifying the Requester that "the estimated cost to complete this task is estimated to be $4,800 - $5,500 ($60/hour times 8 hours/day times 10 days)." The District informed the Requester to "please let [Craig Butler][2] know how [he] would like to proceed."

On October 27, 2024,[3] the Requester replied to Mr. Butler, asserting his position that the estimated fees are unreasonably high, in light of the fact that the Request seeks electronic records

---

[2] Mr. Butler is the District's Right-to-Know Officer.
[3] The reply email was dated October 27, 2024. However, October 27, 2024, was a Sunday and, thus, a non-business day. Therefore, the was considered received by the District Open Records Officer on the next business day, October 28, 2024.

and "routine financial documents" that should be accessible through the District's financial management or procurement software programs. The Requester stated that his "revised request focuses on high-value purchases over $1,000 to reduce the workload" and that he "is narrowing the scope of [his] original [R]equest to":

**Annual Budgets and Reports Comparing Budgeted vs. Actual Expenditures:**

- Receipts, invoices, and purchase orders for individual or bulk technology-related purchases over $1,000 from January 1, 2021, to October 20, 2024.
- Annual technology budgets and reports comparing budgeted vs. actual spending (Jan 2021– Oct 2024).
- Any agreements, contracts, or records between Southeast Delco School District and Robert Half that pertain to my employment as an IT contractor between March 2023 and May 2024.

**Internal Communications and Records:**

- Any internal or external emails, memos, or other forms of communication between district employees and Robert Half regarding my employment.
- Any emails or written records from March 2023 to May 2024 where my name (Charles Gibbone) appears, including any correspondence related to my performance or contract termination.

The Requester again requested electronic records, a waiver of fees and, in the alternative, notification of the fee amount prior to the fulfillment of the Request.

On October 31, 2024, the District issued correspondence acknowledging receipt of the October 20, 2024 Request, noting that a reply was provided to the Requester on October 24, 2024, and also, acknowledging receipt of the revised Request. In the same letter, the District invoked a thirty-day extension during which to respond pursuant to 65 P.S. § 67.901.

On November 21, 2024, the District granted the revised Request by letter stating, "[p]lease accept this letter as confirmation that you are in receipt of four emails containing documents concerning [the Request]" … and, "[t]he information that you were sent satisfies your [R]equest." The letter was an attachment to one of four emails, which served to transmit the responsive records

3

to the Requester and identified the record files as "Gibbone RTKR Documents," "Robert_Half_Emails_1 (1)," "Vendor Payment Documents 2020-2024," and "Budget Book Documents 2020-2025."

On November 25, 2024, the Requester appealed to the Office of Open Records ("OOR"), challenging the sufficiency of the records provided by the District.[4]  The Requester also challenges the amount of the fee estimate and asserts that many of the records are not responsive to the Request, while other records such as, budget summaries, are not the itemized data documentation sought in the Request.  The Requester asks the OOR to "[c]ompel the [D]istrict to provide the requested itemized expenditures and termination-related documentation" and "[r]eview the [D]istrict's handling of this [R]equest, including the inflated fee estimate and inclusion of irrelevant documents."  The OOR invited both parties to supplement the record and directed the District to notify any third parties of their ability to participate in this appeal.  65 P.S. § 67.1101(c).

As the District had not provided a submission in response to the OOR's Notice of Appeal by the record closing date of December 17, 2024, on December 20, 2024, the OOR issued correspondence inquiring whether the District intended to participate in the appeal.  On December 23, 2024, counsel for the District submitted correspondence, stating that he had not been apprised of the Request or appeal because the "email with notice of the appeal went unnoticed for a time." Counsel requested an extension of time, until January 13, 2025, to provide the District's position statement.[5]  That same day the OOR granted the District's extension request and reopened the

---

[4] The Requester granted the OOR additional time to issue a final determination. *See* 65 P.S. § 67.1101(b)(1) ("Unless the requester agrees otherwise, the appeals officer shall make a final determination which shall be mailed to the requester and the agency within 30 days of receipt of the appeal filed under subsection (a).").

[5] The District's December 23, 2024 letter also states that the notice of appeal and the OOR's correspondence was directed to Vanessa Scott.  On December 20, 2024, the Requester notified the OOR that it was his understanding that Ms. Scott was no longer employed by the District.  However, while the written address shows Ms. Scott as the District's Open Records Officer, the notice of appeal was sent to Mr. Butler's email address at cbutler@scdelco.org and the District website lists Mr. Butler as the Agency Open Records Officer and the individual to whom RTK requests should be submitted. In addition, under the information on the website explaining how to submit a request contains a

4

record.  *See* 65 P.S. § 67.1102(b)(3) (stating that "the appeals officer shall rule on procedural matters on the basis of justice, fairness and the expeditious resolution of the dispute").

On January 13, 2025, the District submitted a position statement verified by District counsel, James Musial, Esq.  The District claims that the October 21, 2024 Request was a first request and that revised request was a second and separate request.  The District argues that Mr. Butler's October 24th letter that confirmed receipt of the Request and notified the Requester of the estimated fees did not constitute a final response and, therefore, the Request was ultimately deemed denied. The District claims that because a final response was not issued for the October 21st Request and because the District did not invoke a thirty-day extension under Section 902 of the RTKL, the Request was deemed denied on October 28, 2024,[6] thereby triggering the 15 business day appeal period.  *See* 65 P.S. § 67.901.  The District asserts that the instant appeal, which was filed on November 23, 2024, is untimely because the 15 business day appeal period expired on November 18, 2024.

The District argues in the alternative, that if the OOR determines that the October 21 and 28 Requests are not separate requests and that the Request was not deemed denied, the District argues that the Requester is attempting to modify the Request on appeal in the statement attached to the appeal form an in the statement of records at issue on appeal.  The District also argues that the Requester's assertion that the District provided more email records than are responsive to the Request does not amount to a denial of access, as the Requester may disregard such emails.  The

---

link to Mr. Butler's email for such purposes, which is rtkrequest@sedelco.org.  *See* https://www.sedelco.org/page/right-to-know (last accessed January 17, 2025).  The OOR's notice of appeal was also sent to rtkrequest@sedelco.org.

[6] In its position statement, the District states that the Request was purportedly deemed denied on October 29, 2024, "the sixth business day following the ORO's receipt of the Request on Monday, October 21, 2024"; however, Section 901 of the RTKL states that "[i]f the agency fails to send the response *within* five business days of receipt of the … request … the … request … shall be deemed denied."  65 P.S. § 67.901.  Therefore, the deemed denial took place at the close of business (11:59:59 p.m.) on October 28, 2024.

District further asserts that, regarding the portion of the revised Request seeking categories of "Internal Communications and Records," the portion of the Request seeking copies of "any records," "any other forms of communication," and "any written records" are denied as overly broad and insufficiently specific. *See* 65 P.S. § 67.703. Related to the claim that a portion of the Request is insufficiently specific, the District seeks an extension of time to identify records and conduct a legal review of records if the OOR determines that the two bullet pointed categories set forth under "Internal Communications and Records," are sufficiently specific, pursuant to *Pa. Office of the Governor v. Brelje*, 312 A.3d 928, 941 (Pa. Commw. Ct. 2024) (citing *Pa. State Sys. of Higher Educ., Office of the Chancellor v. Ass'n of State College & Univ. Faculties*, 142 A.3d 1023 (Pa. Commw. Ct. 2016) ("*PASSHE*").

Also on January 13, 2025, the Requester submitted a supplemental statement in support of the appeal. The Requester reiterates his claims that the records provided do not include documentation "related to discrepancies between actual expenditures and allocated budgets, as well as documentation concerning my termination." The Requester asserts that the "document flooding" of irrelevant records shows a lack of good faith effort on the part of the District and the records provided also lack sufficient detail. Further, the Requester asserts that he put forth a good faith effort to revise the Request in order to facilitate the processing of the Request, to narrow the scope of the search and reduce personnel workload. In addition, the Requester disputes the District's position that the appeal was untimely filed.[7]

---

[7] The Requester's submission includes his expression of several concerns about District actions that he believes show a lack of transparency and a failure to properly serve the tax paying public. The submission also contains an extensive section titled "Key Context," which outlines circumstances surrounding the Requesters separation from District employment. However, a requester's identity, relationship to the records at issue, and/or motivation for making a request is not relevant to determining whether a record is accessible to the public under the RTKL. *Padgett v. Pa. State Police*, 73 A.3d 644, 647 (Pa. Commw. Ct. 2013). Under the RTKL, whether the document is accessible is based only on "whether a document is a public record, and if so, whether it falls within an exemption that allows that it not be disclosed." *Hunsicker v. Pennsylvania State Police*, 93 A.3d 911, 913 (Pa. Commw. Ct. 2014); *see also* 65

The Requester seeks the following rulings from the OOR:

1. A clear statement regarding the existence (or lack thereof) of documentation related to my termination. If no such records exist, the District should explicitly state this fact as required under RTKL.

2. Itemized reports detailing actual expenditures compared to allocated budgets, particularly for expenditures over $1,000. These reports are routinely generated for audits and internal reviews and can be efficiently exported using the district's Fusion accounting software.

3. An evaluation by the Open Records Office to determine whether the district failed to meet its RTKL obligations in an efficient and transparent manner.

On January 17, 2025, the OOR directed the District to provide a submission consisting of its substantive position regarding the specificity issue raised for the first time in the appeal submission.

On January 24, 2025 the District submitted a supplemental position statement and the attestation of Craig Butler, the District's Open Records Officer, that was made subject to the penalties set forth in 18 Pa.C.S. § 4904. In addition, the District provided several hundred pages of additional emails, consisting of those containing the Requester's name and which were not to or from Robert Half.

## LEGAL ANALYSIS

The District is a local agency subject to the RTKL. 65 P.S. § 67.302. Records in the possession of a local agency are presumed to be public, unless exempt under the RTKL or other law or protected by a privilege, judicial order or decree. *See* 65 P.S. § 67.305. As an agency subject to the RTKL, the District is required to demonstrate, "by a preponderance of the evidence," that records are exempt from public access. 65 P.S. § 67.708(a)(1). Preponderance of the evidence

---

P.S. § 67.102; 65 P.S. § 67.305; *Cafoncelli v. Pennsylvania State Police*, 2017 Pa. Commw. Unpub. LEXIS 405 (Pa. Commw. Ct. 2017) (citing *Hunsicker*).

has been defined as "such proof as leads the fact-finder ... to find that the existence of a contested fact is more probable than its nonexistence." *Pa. State Troopers Ass'n v. Scolforo*, 18 A.3d 435, 439 (Pa. Commw. Ct. 2011) (quoting *Pa. Dep't of Transp. v. Agric. Lands Condemnation Approval Bd.*, 5 A.3d 821, 827 (Pa. Commw. Ct. 2010)).

### 1. The appeal was timely filed

The District argues that the appeal was untimely filed under Section 1101(a)(1) of the RTKL, because the appeal was filed beyond fifteen business days of the alleged deemed denial date. The District asserts that the revised Request was a separate second Request and that the Requester is attempting to combine the two Requests and claims that the final response was issued in regard to both of them on November 21, 2024.

Following receipt of the Request, on October 24, 2024, the District issued correspondence containing estimated costs associated with fulfilling the Request. The letter also asked the Requester to inform the District as to how he wished to proceed. Section 1307(h) of the RTKL states that "[p]rior to granting access in accordance with this act, an agency may require a requester to prepay an estimate of the fees authorized under this section if the fees required to fulfill the request are expected to exceed $ 100.00." 65 P.S. § 67.1307(h). We note, however, nothing in the correspondence indicates that the District was seeking prepayment of the estimated fees. Instead, the fee estimate appears to be a cost calculation for the labor fees, which are prohibited under the RTKL. *State Employees Retirement System v. Office of Open Records,* 10 A.3d 358 (Pa. Commw. Ct. 2010). Instead, any costs imposed by an agency fulfilling a request must comply with the OOR's standard fee schedule.[8] *See e.g Peterson v. Easton Police Dep't*, OOR Dkt. 2016-2099, 2017 PA O.O.R.D. LEXIS 58, *6 (concluding that a copying fee of $5.00 for twenty (20)

---

[8] *See* https://www.openrecords.pa.gov/RTKL/FeeStructure.cfm (last accessed January 21, 2025).

copies was in compliance with the OOR's fee schedule of $0.25 per page). In this matter the fee estimate was described as, "($60/hour times 8 hours/day times 10 days)," which a reasonable mind would interpret as labor costs.

Nevertheless, within days, the Requester responded to the District, as indicated in the October 24, 2024 letter, expressing his concerns regarding how high the cost estimates were, suggesting ways in which the Request could be more efficiently fulfilled and providing a revised version of the Request. The revised version of the Request was received by the District on October 28, 2024. The Requester refers to the October 28th email as the "revised request" more than once and specifically states that the Requester is "narrowing the scope of my original request." In addition, the October 28th email states, "[t]his revised request focuses on key information and should reduce the workload substantially. The narrowed scope now removes any ambiguity and aligns with routine district operations. Given that modern record-keeping is largely digital, providing these documents in electronic format (PDF or Excel) should not require significant labor[,]" thereby specifically referencing and addressing the fee estimate previously issued by the District. Furthermore, the District's extension letter states, "I received your revised request on October 27, 2024. I am drawing your attention to the *revised* request." It is clear from the record that, when viewing the exchanges between the Requester and the District in a linear fashion, the revised Request was a narrowed continuation of the Request and, also, was provided in response to the District's inquiry as to how to proceed, in light of the fee estimate notification. To view the circumstances otherwise would result in the District being rewarded for being intentionally vague in the October 24, 2024 email and for attempting to impermissibly charge the Requester for labor costs, as well as attempting to intentionally trigger a deemed denial.

9

In response to the revised, narrowed Request, the District issued a timely thirty-day extension notice pursuant to 65 P.S. § 67.902, on October 31, 2024, and issued a final response within the permitted thirty days, on November 21, 2024. Section 1101(a)(1) states in relevant part, "[i]f a written request for access to a record is denied or deemed denied, the requester may file an appeal with the Office of Open Records or judicial, legislative or other appeals officer designated under section 503(d) within 15 business days of the mailing date of the agency's response or within 15 business days of a deemed denial...." 65 P.S. § 67.1101(a)(1). The instant appeal was filed with the OOR on November 25, 2024, well within the fifteen business day appeal period.

**2. The District provided records on appeal**

Regarding the portion of the Request seeking "[a]ny emails or written records from March 2023 to May 2024 where my name (Charles Gibbone) appears, including any correspondence related to my performance or contract termination," Mr. Butler attests that he realized a request had not been made to "the District's IT Department to conduct a separate search for such emails that were not limited to emails from or to Robert Half." *See* Buter Attestation, ¶ 4. During the course of the appeal, Mr. Butler directed the District's IT Department to conduct such a search and the resulting emails were provided to the Requester with the District's supplemental submission. *Id.*, ¶ 5. The Requester has not disputed receiving the records and, therefore, the appeal is moot as to the emails provided on appeal. *See Chester Water Auth. v. Pa. Dep't of Cmty. & Econ. Dev.*, 249 A.3d 1106, 1114 (Pa. 2021) (finding that a matter was settled by provision of records, and thus, "the controversy has been mooted"); *Kutztown Univ. of Pa. v. Bollinger*, 217 A.3d 931 (Pa. Commw. Ct. 2019) (holding that an appeal is properly dismissed as moot where no controversy remains).

**3. The Request may not be modified on appeal**

The District argues that the Requester is attempting to modify the Request on appeal. More specifically, the District asserts the Requester did not request "itemized expenditures" for the Tech Department or "as [] the actual record of spending that show how the allocated budgets were used," as stated in the appeal form under "Records at Issue in this Appeal" and the statement attached to the appeal form. The District further argues that, while the Requester asserts that he was provided with many irrelevant and unresponsive emails, providing more than what the Requester intended by the Request is not a denial and any emails he believes are not relevant may be disregarded.

Once a request is submitted, a requester is not permitted to expand or modify the request on appeal. *See McKelvey v. Off. of Att'y Gen.*, 172 A.3d 122 (Pa. Commw. Ct. 2017). In this matter, the Requester indicates in his appeal statement that the Request sought: 1. Itemized data comparing expenditures vs. allocated budgets across departments; 2. Documentation related to my termination, including communications or reports explaining the basis for the decision. In addition, in the Requester's supplemental appeal statement he asserts, among other things, that he is seeking "[i]temized reports detailing actual expenditures compared to allocated budgets, particularly for expenditures over $1,000." In response to the October 27, 2024 narrowed Request, the District provided, among other records, vendor payments and budget book documents. Based on a plain reading of the Request – both the initial and narrowed versions – the appeal statements seeking "itemized data" for expenditures that is generated for audits and internal reviews are a modification or an attempt to expand the Request language. As such, the OOR's review is limited to the Request as submitted.

### 4. A portion of the Request is insufficiently specific under Section 703

The District argues that portions of the revised, narrowed Request are insufficiently specific under Section 703 of the RTKL. More specifically, the District challenges the portions of

"Internal Communications and Records" seeking "*other forms of communication* between district employees and Robert Half regarding my employment" and "*[a]ny ... written records*" where the Requester's name appears "including other forms of communication between district employees and Robert Half regarding my employment."

Section 703 of the RTKL states that "[a] written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested." 65 P.S. § 67.703. When determining whether a particular request is sufficiently specific, the OOR uses the multifactor test employed by the Commonwealth Court in *Pa. Dep't of Educ. v. Pittsburgh Post-Gazette*, 119 A.3d 1121 (Pa. Commw. Ct. 2015).

First, "[t]he subject matter of the request must identify the 'transaction or activity' of the agency for which the record is sought." *Id.* at 1125 (quoting 65 P.S. § 67.102). Second, "[t]he scope of the request must identify 'a discrete group of documents, either by type ... or by recipient.'" *Id.* (quoting *Carey v. Pa. Dep't of Corr.*, 61 A.3d 367, 372 (Pa. Commw. Ct. 2013). Finally, "[t]he timeframe of the request should identify a finite period of time for which records are sought." *Id*. at 1126 (citing *Carey, supra*). "The timeframe prong is, however, the most fluid of the three prongs, and whether or not the request's timeframe is narrow enough is generally dependent upon the specificity of the request's subject matter and scope." *Id.*

The above factors are intended "to facilitate an analysis in order to determine whether an agency can ascertain which records are being requested.... The subject matter, scope, and timeframe of a request are flexible, analytical elements, not evidentiary requirements." *Pa. Dep't of Health v. Shepherd*, No. 377 C.D. 2021, 2022 Pa. Commw. Unpub. LEXIS 207 *6-7 (Pa. Commw. Ct. 2022), appeal denied, No. 334 MAL 2022, 2022 Pa. LEXIS 1862 (Pa. 2022). Finally, we must analyze the entirety of a request, as it is possible that portions of a request are

12

insufficiently specific, while other portions provide sufficient guidance. *See Pa. State Police v. Office of Open Records*, 995 A.2d 515, 517 (Pa. Commw. Ct. 2010) (noting "the valid part of the request was included in a laundry list of requested materials").

The District submits the Butler Attestation in support of its argument and, regarding the first portion of the Request seeking internal communications and records, Mr. Butler attests: 3. … I had the District's IT Department run a search for all such emails, and I provided all these emails to the Requester on November 21, 2024. I did not conduct a separates search for 'other forms of communications,' as it was not clear to me what specific records that referred to and what specifically to search for …. In addition, regarding the second portion of the Request seeking internal communications and records, Mr. Butler attests: 6. I did not conduct a separate search for '[a]ny … written records,' as it is not clear to me what specific records that refers to and what specifically to search for. We note that with respect to this second portion of the Request for internal communications and records, as set forth above, the District did not conduct a search until the appeal was filed. However, while the District provided hundreds of pages of additional emails with the supplemental submission, the District continues to assert that "[a]ny … written records" is insufficiently specific.

Both portions of the Request language in dispute contain a defined timeframe. The portion seeking "other forms of communication" has an implied timeframe because it states, "regarding my employment," thereby implying that the timeframe when the Requester was employed by the District. *See Nello Construction v. Greater Latrobe Sch. Dist.*, OOR Dkt. AP 2019-0988, 2019 PA O.O.R.D. LEXIS 984 (finding that a request for records related to a construction project to have an implied timeframe of the duration of the project); *see also Pa. Hous. Fin. Agency v. Ali*, 43 A.3d 532, 536 (Pa. Commw. 2012) (concluding request for proposals and sales agreements

13

relating to two specific projects that did not specify a timeframe was sufficiently specific). Additionally, the portion seeking "[a]ny … written records" states a defined timeframe of March 2023 to May 2024. Furthermore, a subject matter is present, as the Request seeks records related to the Requester's employment with the District, which is clearly a transaction or activity of the agency.

Therefore, we must determine whether the disputed language satisfies the scope prong of the *Dep't of Educ.* specificity analysis. "Other forms of communication" relates to communications between District employees and Robert Half regarding the Requester's employment. This portion of the Request already identifies emails and memos as potential categories of records; however, "other forms of communication" is broad and undefined. Whereas, "written records" relates to records in which the Requester's name appears, including those related to his employment.

The District's actions in responding to the Request and the argument presented on appeal essentially amount to a claim that the Request for internal communications and records are partially specific. In *Pa. State Police v. Office of Open Records*, the Commonwealth Court held that the portion of a request seeking "any and all records, files or communications" related to vehicle stops, searches and seizures was insufficiently specific under Section 703 of the RTKL, and that only the portion of the request seeking a particular type of document—manuals related to vehicle stops, searches, and seizures—was sufficiently specific. 995 A.2d 515, 517 (Pa. Commw. Ct. 2010) ("*PSP*"). Applying *PSP* to this matter, the portion of the Request seeking "other forms of communication" is too vague, as it does not sufficiently define with types of "communications" are being sought other than the emails or memos already identified. "Communications" could consist of oral statements, text messages, or records submitted by fax, among other things, but

14

what categories are sought is unclear and, therefore, lacks a defined universe of records necessary to enable the District to perform a meaningful search. By contrast, the portion of the Request seeking "written records," while broad, has defined parameters. The written records would have been created from March 2023 to May 2024, would contain the Requester's name and would pertain to his job performance with the District or his termination from employment. We note that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage...". 1 Pa.C.S. § 1903(a). It is reasonable to infer that, in the context of the District's role as an employer, it would be capable of determining what categories of "written records" relate to the employment or termination of a named individual, which is the stated subject matter of this portion of the Request. "[A] burden on an agency attendant to gathering responsive records does not pertain to sufficiency of a request or render it non-specific." *Carey*, 61 A.3d at 372. Therefore, the portion of the Request seeking "written records," as they directly relate to the Requester's performance or contract termination, is sufficiently specific.

In sum, the portion of the requested internal communications seeking "other forms of communications" is insufficiently specific, but the portion of the Request seeking "written records" is sufficiently specific, only as to performance and termination records.

Regarding the District's request for additional time to search for and review records relying on *Brelje* and *PASSHE*, in the event we determine that the Request is sufficiently specific, we conclude that it is not warranted in this instance. Firstly, according to the Butler Attestation, the District did not initially perform a search for the portion of the Request we have determined to be sufficiently specific. Butler Attestation, ¶¶ 5-6. As a result, the District did not provide evidence as to the estimated number of documents implicated or the amount of time that may be necessary to retrieve and review the records. In addition, the District did not claim specificity as a grounds

for denial until the appeal was proceeding, at a time when the OOR had to contact the District to inquire whether it even intended to participate in the appeal.[9]  Once the District proffered the argument, the OOR had to seek evidence to support the specificity claim, as it was not initially submitted by the District, and, in the supplemental submission no evidence was presented addressing the basis for its request for additional time to review responsive records.  As the Commonwealth Court stated in *APSCUF*, "just because an agency claims it neither has the time nor resources to conduct a document-by-document review within the time-period required by the RTKL does not make it so. The agency making such a claim has to provide the OOR with a valid estimate of the number of documents being requested, the length of time that people charged with reviewing the request require to conduct this review, and if the request involves documents in electronic format the agency must explain any difficulties it faces when attempting to deliver the documents in that format. Based on the … information, the OOR can then grant any additional time warranted so that the agency can reasonably discern whether any exemptions apply." *APSCUF*, 142 A.3d at 1032; *see also Brelje*, 312 A.3d at 940 (affirmation asserted exemptions, established that certain records related to specifically claimed RTKL exemptions and the agency sought additional time).  Furthermore, our finding that a portion of the Request is sufficiently specific has been limited to a narrow category of records – internal written records related to the Requester's performance and termination.  Accordingly, we find that additional time for the District to retrieve and review responsive records for the provision of them to the Requester is unwarranted in this instance.

---

[9] Under the RTKL, the OOR must make its decisions "in an expedited fashion" (citation omitted). A final determination must issue within 30 days of receipt of an appeal, "[u]nless the requester agrees otherwise." Section 1101(b)(1) of the RTKL, 65 P.S. § 67.1101(b)(1). If the OOR fails to timely issue a final determination, the appeal is deemed denied. 65 P.S. § 67.1101(b)(2). Considering these time constraints, it is incumbent upon an agency, at its earliest opportunity, to notify the OOR that the agency lacks sufficient time or resources to review a request properly. *Pa. Dep't of Health v. Shepherd*, 2022 Pa. Commw. Unpub. LEXIS 207, *11 (footnote omitted).

**5. The OOR declines to make a finding of bad faith**

The Requester seeks an "evaluation" of the District's actions "to determine whether [it] failed to meet its RTKL obligations in an efficient and transparent manner." The Requester asserts that the District acted in an obstructive manner by providing an inflated fee estimate and engaging in "document flooding," by providing may emails that were irrelevant to the Request and, also by providing invoice documents that lack the detail necessary to assess the District's financial transparency.

While the OOR may make findings of bad faith, only the courts have the authority to impose sanctions on agencies. *See generally* 65 P.S. § 67.1304(a). Under the RTKL, a finding of bad faith is appropriate where an agency refuses to comply with its statutory duties under the RTKL. *Uniontown Newspapers, Inc. v. Pa. Dep't of Corr.*, 243 A.3d 19, 28-29 (Pa. 2020); *California Univ. of Pa. v. Bradshaw*, 210 A.3d 1134 (Pa. Commw. Unpub. 2021) *appeal denied* 2019 PA LEXIS (Pa. 2019); *Office of the Dist. Atty. of Phila. v. Bagwell*, 155 A.3d 1119 (Pa. Commw. Ct. 2017). As stated above, the fee estimated provided by the District appears to be a calculation of labor charges. The OOR's fee schedule does not permit an agency to impose any fees for the time and labor spent reviewing records or making redactions, and agency labor fees are prohibited under the RTKL. 65 P.S. § 67.1307(g); *see also SERS*, 10 A.3d at 363. However, there is no evidence before us with respect to any malicious intent on behalf of the District, and in the absence of such evidence, we decline to make a finding of bad faith.[10]

Regarding the Requester's other grounds for a finding of bad faith, the provision of too many records or records the Requester interprets as non-responsive or not helpful with respect to the reasons for which they were sought, are not evidence of an abnegation of the District's

---

[10] However, the Requester is not prohibited from asserting their claims to a reviewing court, who may conduct a *de novo* review of the matter.

obligations under the RTKL. Rather, the reasons asserted are claims to be made regarding the sufficiency of records provide in an appeal to the OOR, which has occurred here. A finding of bad faith is typically reserved only for an egregious or blatant violation of the RTKL such as, where an agency failed to provide evidence that it conducted a good faith search and repeatedly ignored deadlines set by the OOR and the RTKL and declined to address the OOR's requests for clarification. *See Towne v. Pittsburgh Water and Sewer Auth.*, OOR Dkt. AP 2021-0292, 2021 PA O.O.R.D. LEXIS 307. Accordingly, the OOR declines to make a finding of bad faith for any of reasons proffered because it the record does not establish bad faith conduct on the part of the District.

## CONCLUSION

For the foregoing reasons, the appeal is **granted in part**, **denied in part**, and **dismissed as moot in part**, and within thirty days, the District is required to perform a good faith search for written records sought in the second portion of the request for internal communications and records – written records related to the Requester's employment performance and termination, and provide said records. If the District determines that no records exist it shall provide an affidavit or verified statement to the Requester describing the search and stating that no records exist within its possession, custody or control. This Final Determination is binding on all parties. Within thirty days of the mailing date of this Final Determination, any party may appeal to the Delaware County Court of Common Pleas. 65 P.S. § 67.1302(a). All parties must be served with notice of the appeal. The OOR also shall be served notice and have an opportunity to respond according to court rules as per 65 P.S. § 67.1303, but as the quasi-judicial tribunal adjudicating this matter, the OOR is not a proper party to any appeal and should not be named as a party.[11] All documents or

---

[11] *Padgett v. Pa. State Police*, 73 A.3d 644, 648 n.5 (Pa. Commw. Ct. 2013).

communications following the issuance of this Final Determination shall be sent to oor-postfd@pa.gov. This Final Determination shall be placed on the OOR website at: http://openrecords.pa.gov.

**FINAL DETERMINATION ISSUED AND MAILED:  February 4, 2025**

*/s/ Kelly C. Isenberg*
_____
KELLY C. ISENBERG, ESQ.
DEPUTY CHIEF COUNSEL

Sent *via* E-File Portal to:      Charles Gibbone; James Musial, Esq.; Craig Butler, AORO

19

**P-3: February 6, 2025 Craig Butler Affidavit - Denying Records of Performance, Termination, and Robert Half Payments**

February 6, 2025 verified statement from Craig Butler, Chief Operating and Financial Officer and Open Records Officer, denying existence of written records related to Plaintiff's employment performance, termination, or payments to Robert Half (March 2023-May 2024). Butler claims Plaintiff was a "temporary worker" not subject to District termination, with no knowledge of such records after inquiries. Sworn under 18 Pa.C.S. §4904, this contradicts Plaintiff's full-time role and District's $127k allocation, supporting claims of pretext, recordkeeping failures, and Monell liability for transparency deficits.

## COMMONWEALTH OF PENNSYLVANIA
## OFFICE OF OPEN RECORDS

In the Matter of                            :
                                            :
CHARLES GIBBONE                             :
Requester,                                  :        Docket No.: AP 2024-2964
                                            :
v.                                          :
                                            :
SOUTHEAST DELCO SCHOOL                      :
DISTRICT,                                   :
Respondent.

### VERIFIED STATEMENT

1. I, Craig A. Butler, serve as the Chief Operating and Financial Officer and Open Records Officer ("ORO") for Southeast Delco School District ("School District").

2. In my role as ORO for the School District, I have reviewed the February 4, 2025 Final Determination issued by the Pennsylvania Office of Open Records (OOR) in this matter, which requires further action by the School District in regard to a portion of the subject Right-to-Know Law Request.

3. The OOR's Conclusion provides that:

   [W]ithin thirty days, the District is required to perform a good faith search for written records sought in the second portion of the request for internal communications and records – written records [from March 2023 to May 2024] related to the Requester's employment performance and termination, and provide said records. If the District determines that no records exist it shall provide an affidavit or verified statement to the Requester describing the search and stating that no records exist within its possession, custody or control.

4. Pursuant to the OOR's directive, I am submitting this Verified Statement to describe the good faith search that was done for the subject "written records,"[1] and to state that no records as described exist within the School District's possession, custody or control.

5. With respect to the School District's good faith search, I contacted School District personnel who might conceivably have knowledge of any "written records related to the Requester's employment performance and termination."

---

[1] Such "written records" do not include emails, as the OOR determined that the School District provided such records on appeal and Requester's OOR appeal was moot as to these emails. See, OOR Final Determination at page 10.

6. The Requester was not a School District employee and therefore was not subject to termination by the School District; he was a temporary worker in the School District's Information Technology Department supplied by the Robert Half staffing agency.

7. In my good faith search for any written records as described, I inquired of the School District's Director of Technology, Network Administrator and Technical Support Personnel in the Information Technology Department. All responded to me that they possessed no such written records and had no knowledge of the whereabouts of any such records.

8. Since Requester was a temporary worker supplied by the Robert Half staffing agency, I inquired of the relevant Business Department personnel who would have made payment to Robert Half for the hours worked by Requester. All responded to me that they possessed no such written records and had no knowledge of the whereabouts of any such records.

9. I personally possess no such records and have no knowledge of the whereabouts of any such records.

10. I, Craig A. Butler, do hereby verify that the above statements set forth above are true and correct to the best of my knowledge and belief, and are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Date: February , 2025          Signature: _____
                                                    Craig A. Butler

2

**Exhibit Q-1: Office of Open Records Final Determination: Successful Appeal Compelling Southeast Delco School District to Conduct Good Faith Search (OOR Dkt. AP 2025-0281)**

This sub-exhibit is the Office of Open Records' final determination granting Plaintiff's RTK appeal in part, dismissing it as moot in part due to partial production during the appeal, and ordering the District to perform a good faith search for additional responsive records related to the vendor agreement with Robert Half. It highlights the District's initial untimely response (deemed denial) and failure to prove non-existence of records, as well as delays in the appeal process (e.g., late submission by the District's lawyer on March 11, 2025, after the February 14 deadline). While declining a bad faith finding, it notes patterns of noncompliance raised by Plaintiff, supporting claims of systemic obstruction, concealment of evidence, and retaliation by hindering access to documents that could reveal inconsistencies in Plaintiff's termination. This ties to broader allegations of bad faith under the Pennsylvania Whistleblower Law and First Amendment retaliation by demonstrating ongoing efforts to withhold public records pertinent to financial and employment practices.



# pennsylvania
## OFFICE OF OPEN RECORDS
### FINAL DETERMINATION

IN THE MATTER OF                    :
                                    :
CHARLES GIBBONE,                    :
**Requester**                       :
                                    :
v.                                  :    **Docket No: AP 2025-0281**
                                    :
SOUTHEAST DELCO SCHOOL              :
DISTRICT,                           :
**Respondent**                      :

## FACTUAL BACKGROUND

On January 27, 2025, Charles Gibbone ("Requester") submitted a request ("Request") to the Southeast Delco School District ("District") pursuant to the Right-to-Know Law ("RTKL"), 65 P.S. §§ 67.101 *et seq*., seeking "[a] copy of my contract with Robert Half that outlines the terms and conditions of my employment as a contractor for Southeast Delco School District" and various specific email communication threads.

The District did not respond by February 3, 2025, and the Request was deemed denied on that date. On February 4, 2025, the District issued an untimely response, partially denying the Request. The District provided responsive email communication threads for each part of the Request that sought email records but denied the part of the Request for a copy of the Requester's employment contract, stating that responsive records do not exist in the District's possession, custody or control.

On February 4, 2025, the Requester appealed to the Office of Open Records ("OOR"),

1

challenging the District's response and stating grounds for disclosure.[1]  The Requester stated that the District's response was untimely, and it is unlikely the District does not possess the responsive contract.  The OOR invited both parties to supplement the record and directed the District to notify any third parties of their ability to participate in this appeal.  65 P.S. § 67.1101(c).

The submission record in this appeal closed on February 14, 2025.  On February 28, 2025, the OOR confirmed that the District had not submitted any evidence or argument in the appeal and asked the District if it intended to participate.  On March 6, 2025, the District requested a two-week extension of the submission deadline.

On March 6, 2025, the Requester submitted correspondence stating that the District has failed to timely respond in other appeals and requesting that he also be granted additional time to review and respond to the District's submissions.

On March 11, 2025, the District submitted a verified position statement with supporting documentation and stated that the District does not possess a responsive contract but did identify and produce a letter with basic terms of the Requester's contractual assignment with the District and general documents outlining the conditions and terms of an employment relationship between the employment agency and the District.  The District reiterated that it does not possess a copy of the contract between the Requester and the employment agency.  Lastly, the District argued that the Requester received the District's response letter "on the day of the 'deemed denial.'"  The District submitted the responsive letter; a document entitled "General Conditions of Assignment," which sets forth the relationship between the District and the employment agency; a document entitled "Terms of Payment," which outlines the terms of payment between the District and the

---

[1] The Requester granted the OOR a 30-day extension to issue a final determination.  *See* 65 P.S. § 67.1101(b)(1) ("Unless the requester agrees otherwise, the appeals officer shall make a final determination which shall be mailed to the requester and the agency within 30 days of receipt of the appeal filed under subsection (a).").  The Requester also granted the OOR an additional extension of time on March 7, 2025.

employment agency for the Requester; and a letter regarding background investigations.

On March 13, 2025, the Requester submitted a responsive position statement, arguing the records the District produced on appeal were responsive to his Request, and the District should have produced them in its original response. The Requester also argues that additional records may exist.

## LEGAL ANALYSIS

The District is a local agency subject to the RTKL. 65 P.S. § 67.302. Records in the possession of a local agency are presumed to be public, unless exempt under the RTKL or other law or protected by a privilege, judicial order or decree. *See* 65 P.S. § 67.305. As an agency subject to the RTKL, the District is required to demonstrate, "by a preponderance of the evidence," that records are exempt from public access. 65 P.S. § 67.708(a)(1). The preponderance of the evidence standard has been defined as "such proof as leads the fact-finder … to find that the existence of a contested fact is more probable than its nonexistence." *Pa. State Troopers Ass'n v. Scolforo*, 18 A.3d 435, 439 (Pa. Commw. Ct. 2011) (quoting *Pa. Dep't of Transp. v. Agric. Lands Condemnation Approval Bd.*, 5 A.3d 821, 827 (Pa. Commw. Ct. 2010)). Likewise, "[t]he burden of proving a record does not exist...is placed on the agency responding to the right-to-know request." *Hodges v. Pa. Dep't of Health*, 29 A.3d 1190, 1192 (Pa. Commw. Ct. 2011).

### 1. The appeal is moot in part

During the appeal, the District provided records responsive to the Request, including two letters and two documents outlining conditions of employment between the District and the employment agency. As such, the appeal as it relates to the responsive records provided on appeal is dismissed as moot. *See Kutztown Univ. of Pa. v. Bollinger*, 217 A.3d 931 (Pa. Commw. Ct. 2019) (holding that an appeal is properly dismissed as moot where no controversy remains).

3

## 2. The District did not prove that additional records do not exist

In response to a request for records, "an agency shall make a good faith effort to determine if … the agency has possession, custody or control of the record[.]" 65 P.S. § 67.901. While the RTKL does not define the term "good faith effort," in *Uniontown Newspapers, Inc. v. Pa. Dep't of Corr.*, the Commonwealth Court concluded that:

> As part of a good faith search, the open records officer has a duty to advise all custodians of potentially responsive records about the request, and to obtain all potentially responsive records from those in possession…. When records are not in an agency's physical possession, an open records officer has a duty to contact agents within its control, including third-party contractors…. After obtaining potentially responsive records, an agency has the duty to review the record and assess their public nature under … the RTKL.

185 A3d 1161, 1171-72 (Pa. Commw. Ct. 2018), *aff'd*, 243 A.3d 19 (Pa. 2020). Additionally, the Commonwealth Court has held that an open records officer's inquiry of agency members may constitute a "good faith effort" to locate records, stating that open records officers have:

> A duty to inquire of [agency personnel] as to whether he or she was in the possession, custody or control of any of the … requested emails that could be deemed public and, if so, whether the emails were, in fact, public and subject to disclosure or exemption from access by [r]equest[e]r.

*Mollick v. Twp. of Worcester*, 32 A.3d 859, 875 (Pa. Commw. Ct. 2011); *see also In re Silberstein*, 11 A.3d 629, 634 (Pa. Commw. Ct. 2011) (holding that it is "the open-records officer's duty and responsibility" to both send an inquiry to agency personnel concerning a request and to determine whether to deny access).

In the case at hand, the District did not provide a detailed description of the search that was conducted for responsive records, nor did it provide a sworn or unsworn statement that additional responsive records do not exist. Therefore, the District did not meet its burden of proof under the RTKL. 65 P.S. § 67.305. Accordingly, the District is required to conduct a good faith search for records responsive to the Request and provide the Requester with any additional responsive

4

records.  If no records are located as a result of its search, the District shall provide an attestation or sworn affidavit to the Requester confirming the nonexistence of additional records.

### 3.  The OOR declines to make a finding of bad faith

Although the Requester does not specifically request that the OOR make a finding of bad faith, the Requester does assert that the District has exhibited patterns of noncompliance and routinely fails to respond to RTKL requests in a timely and complete manner.   While the OOR may make findings of bad faith, only the courts have the authority to impose sanctions on agencies. *See generally* 65 P.S. § 67.1304(a).  Under the RTKL, a finding of bad faith is appropriate where an agency refuses to comply with its statutory duties under the RTKL.  *Uniontown Newspapers, Inc. v. Pa. Dep't of Corr.*, 243 A.3d 19, 28-29 (Pa. 2020); *California Univ. of Pa. v. Bradshaw*, 210 A.3d 1134 (Pa. Commw. Unpub. 2021), *appeal denied* 2019 PA LEXIS (Pa. 2019); *Office of the Dist. Atty. of Phila. v. Bagwell*, 155 A.3d 1119 (Pa. Commw. Ct. 2017).

In the instant matter, we decline to make a finding of bad faith.  The District has fully participated on appeal and provided the Requester with records responsive to the Request.  Thus, noting that a finding of bad faith is typically reserved only for an egregious or blatant violation of the RTKL, the OOR declines to make a finding of bad faith.

### CONCLUSION

For the foregoing reasons, the appeal is **granted in part** and **dismissed as moot in part**, and the District is required to perform a good faith search for responsive records and provide all additional responsive records to the Requester within thirty days.  If the District determines that no additional records exist it shall provide an affidavit or verified statement to the Requester describing the search and stating that no additional records exist in its possession, custody or control.  This Final Determination is binding on all parties. Within thirty days of the mailing date

of this Final Determination, any party may appeal to the Delaware County Court of Common Pleas. 65 P.S. § 67.1302(a). All parties must be served with notice of the appeal. The OOR also shall be served notice and have an opportunity to respond as per Section 1303 of the RTKL. 65 P.S. § 67.1303. However, as the quasi-judicial tribunal adjudicating this matter, the OOR is not a proper party to any appeal and should not be named as a party.[2] All documents or communications following the issuance of this Final Determination shall be sent to oor-postfd@pa.gov. This Final Determination shall be placed on the website at: http://openrecords.pa.gov.

**FINAL DETERMINATION ISSUED AND MAILED:  April 16, 2025**

*/s/ Daneen L. Miller-Smith*

Daneen L. Miller-Smith, Esq.
Appeals Officer

Sent via OOR portal to:
     Charles Gibbone
     Craig Butler, AORO
     James Musial, Esq.

---

[2] *Padgett v. Pa. State Police*, 73 A.3d 644, 648 n.5 (Pa. Commw. Ct. 2013).

6

**Exhibit Q-2: Affidavit of Craig A. Butler Attesting to Non-Existence of Additional Records Related to Robert Half Vendor Agreement (Dated May 13, 2025)**

This sub-exhibit is the sworn affidavit from Craig A. Butler, Chief Operating Officer and Right-to-Know Officer for Southeast Delco School District, submitted in response to the Office of Open Records' final determination. It verifies under penalty of perjury that Butler personally possesses no additional records responsive to Plaintiff's RTK request for the vendor agreement with Robert Half and has no knowledge of the whereabouts of any such records. Produced following the District's partial disclosure during the appeal (which included the primary agreement), this affidavit confirms the completeness of the compelled production while underscoring the District's initial failure to conduct a thorough search or provide timely responses.

**COMMONWEALTH OF PENNSYLVANIA**
**OFFICE OF OPEN RECORDS**

| | |
|---|---|
| In the Matter of | : |
| | : |
| CHARLES GIBBONE | : |
| Requester, | :     Docket No.: AP 2025-0281 |
| | : |
| v . | : |
| | : |
| SOUTHEAST DELCO SCHOOL | : |
| DISTRICT, | : |
| Respondent. | |

**VERIFIED STATEMENT**

1. I, Craig A. Butler, serve as the Chief Operating and Financial Officer and Open Records Officer ("ORO") for Southeast Delco School District ("School District").

2. In my role as ORO for the School District, I have reviewed the April 16, 2025 Final Determination issued by the Pennsylvania Office of Open Records (OOR) in this matter, which requires further action by the School District in regard to a portion of the subject Right-to-Know Law Request.

3. The OOR's Conclusion provides that:

   > the District is required to perform a good faith search for responsive records and provide all additional responsive records to the Requester within thirty days. If the District determines that no additional records exist it shall provide an affidavit or verified statement to the Requester describing the search and stating that no additional records exist in its possession, custody or control.

4. Pursuant to the OOR's directive, I am submitting this Verified Statement to describe the good faith search that was done to confirm that the District does not possess additional responsive records, and to state that no additional records as described exist within the School District's possession, custody or control.

5. With respect to the School District's good faith search, I contacted School District personnel in the Business Department who might conceivably have knowledge of any records responsive to Requester's request for "A copy of my contract with Robert Half that outlines the terms and conditions of my employment as a contractor for the Southeast Delco School District."

6. Since Requester was a temporary worker supplied by the Robert Half® staffing agency, I contacted Robert Half®, whose Branch Director of Technology provided me with copies of its March 1, 2023 letter with enclosed "General Conditions of Assignment and Terms of Payment," as well as its May 13, 2022 letter regarding background investigations – all of which records were provided by me to the Requester.

7. I personally possess no such additional records and have no knowledge of the whereabouts of any such records.

8. I, Craig A. Butler, do hereby verify that the above statements set forth above are true and correct to the best of my knowledge and belief, and are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Date: 5/13, 2025          Signature: _____
                                              Craig A. Butler

2

**Exhibit Q-3: Produced Vendor Agreement Between Southeast Delco School District and Robert Half for Placement of Plaintiff as PC Technician (Dated March 1, 2023; Produced on Appeal)**

This sub-exhibit is the vendor agreement compelled via Plaintiff's successful RTK appeal, detailing the terms for Plaintiff's placement as a contracted PC Technician with Southeast Delco School District through Robert Half, starting March 1, 2023. It includes general conditions (e.g., scope of assignment, client's responsibilities for oversight and safety, limitations on liability), terms of payment (e.g., weekly invoicing, guarantee period), and a background investigation amendment. Critically, it requests a minimum 30 days' notice prior to ending any assignment, which was not provided in Plaintiff's abrupt April 30, 2024 termination—demonstrating this was not a routine at-will contract end but rather suggestive of retaliatory action following Plaintiff's protected speech on April 29, 2024. This contradicts the District's claims (e.g., in prior affidavits) that Plaintiff was not an "employee" subject to their termination processes and supports allegations of pretextual firing, bad faith, and violations of whistleblower protections by highlighting inconsistencies in how the District handled Plaintiff's contract amid reports of financial mismanagement and infrastructure neglect. The document was produced only during the appeal, further evidence of withholding public records.

 Robert Half®

March 1, 2023

**Personal & Confidential**
**CHARLES BAXTER**
**SOUTHEAST DELCO SCHOOL DISTRICT**
**1560 DELMAR DR**
**FOLCROFT, PA  19032-2102**

Job Order Number: 03720-0012599507

Dear Charles,

Thank you for selecting Robert Half to meet your talent solutions needs.  Charles Gibbone is scheduled to start with Southeast Delco School District as a PC Technician on 03-01-2023. As agreed, we will invoice your firm at the rate of $40.00 per hour.  Overtime will be billed at 1.50 times such rate.  Please find the enclosed General Conditions of Assignment and Terms of Payment for your review.

Our professional will submit a time report for verification and approval at the end of each week. Your approval thereby will indicate you have read and agree to the enclosed General Conditions of Assignment and Terms of Payment.

Please do not hesitate to contact us if you have any questions or we can be of additional service.  We look forward to working with you.

Sincerely,

Robert Half
1735 Market St
25th Floor
Philadelphia, PA  19103
(800) 793-5533

© Robert Half International Inc. 2022. All rights reserved.                                                    An Equal Opportunity Employer M/F/Disability/Veterans.

# GENERAL CONDITIONS OF ASSIGNMENT

Thank you for your confidence in *Robert Half*. The following General Conditions of Assignment and the enclosed Terms of Payment apply to this assignment.

| | |
|---|---|
| **Scope of Assignment** | Our professional is only authorized to perform work within the scope of the assignment. It is your responsibility to provide appropriate direction, guidance or oversight to our professional for satisfactory performance on your assignment. Unless otherwise agreed to in writing by *Robert Half*, you will not permit our professional to use computers or other electronic devices, software, services, tools, e-mail accounts or network equipment owned or licensed by our professional.<br><br>It is expressly understood that our professionals are not authorized to sign contracts, statements, or binding agreements on your behalf or on behalf of *Robert Half*. |
| **Client's Responsibility** | **You shall not permit or require our professional to make any final decisions on your behalf with regard to system design, software development, or acquisition of hardware or software, nor permit or require our professional to make any management decisions.**<br><br>**It is understood that you are responsible for implementing and maintaining usual, customary and appropriate internal accounting procedures and controls, internal controls and other appropriate procedures and controls (including information technology, proprietary information, creative designs and trade secret safeguards) for your company and we shall not be responsible for any losses, liabilities or claims arising from the lack of such controls or procedures. Please notify us immediately if you require *Robert Half* to perform background checks or other placement screenings of our professional. We will conduct such checks or screenings for you only if they are described in a signed, written amendment to these General Conditions of Assignment.**<br><br>*Cash Handling and Other Financial Transactions and Activities:* If you permit or allow our professional to sign, endorse, wire, transport or otherwise convey cash, securities, checks, or any negotiable instruments or valuables, or conduct financial transactions or other related activities, you accept sole responsibility for all claims, demands and liability that may arise from permitting these activities. You represent and warrant that to the extent you permit or allow our professional to engage in the activities described in this paragraph, you will not permit or allow our professional to handle more than (i) $1,000 per day if you are a non-profit entity, or (ii) $25,000 per day if you are a for-profit entity.<br><br>*Workplace Safety:* It is understood that you have full responsibility for: (i) providing safe working conditions as required by law, including compliance with all public health and occupational safety regulations and guidelines applicable to your business, and (ii) ensuring that safety plans exist for, and safety related training is provided to, our professional working on your premises. To ensure the safety of potentially vulnerable individuals on your premises, you agree not to permit our professional to have unsupervised or unmonitored contact with (1) minors and (2) adults who are under your care, custody or supervision because of mental health impairments.<br><br>*Government Contracts:* If this assignment is for work to be performed under a government contract or subcontract, you will notify us immediately (1) of any obligations in the government contract or subcontract relating to wages, and (2) if we are legally required to initiate E-Verify verification procedures for our professional.<br><br>*Operation of Vehicles and Equipment:* It is understood that we will not authorize our professional to operate machinery (other than office machines) or vehicles. If you wish to permit our professional to drive for business purposes, you accept sole responsibility for all liability, damages, injuries or other claims that may arise or be incurred as a result of driving. If you require our professional to drive a vehicle owned by you or an employee of your company, you agree to maintain such vehicle in good working condition and maintain all necessary and appropriate insurance for the operation of such vehicle. Under no circumstances will you permit our professional to: make bank deposits; carry cash in excess of $100, negotiable instruments or other valuables while driving; or have passengers in the vehicle. It is agreed that you accept full responsibility for, and that we do not maintain insurance to cover any injury, damage, or loss that may result from your failure to comply with the foregoing.<br><br>*Claims:* It is understood that you are responsible for reporting any claim to us in writing during or within ninety (90) days after the assignment. Under no circumstance will *Robert Half* be responsible for any claim related to the assignment, including but not limited to work performed by our professional, unless you have reported such claim in writing to us within ninety (90) days after termination of the assignment. |
| **Remote Work** | You may request that our professional provide services to you remotely (i.e., from a location other than your or your customer's premises) using a laptop and/or other computer or telecommunications equipment provided by you or *Robert Half* (collectively, the "Equipment"). In such case, you acknowledge and agree that *Robert Half* shall have no control over, and you shall be solely responsible for, (i) the logical and physical performance, reliability and security of the Equipment or related devices, network accessibility and availability, software, services, tools and e-mail accounts (collectively, "Computer Systems") used by our professional, and (ii) the security, integrity and backing up, of the data and other information stored therein or transmitted thereby. Moreover, you must not permit our professional to save or store any of your files or other data on the Computer Systems provided by us (including, but not limited to, any virtual desktop infrastructure solution). You agree that we shall not be liable for any loss, damage, expense, harm, business interruption or inconvenience resulting from the use of such Computer Systems. |

- CONTINUED ON REVERSE -
1735 Market St, 25th Floor, Philadelphia, PA 19103

| Confidentiality | Our professional will agree to execute any confidentiality agreement you may require. You are responsible for obtaining our professional's signature. |
|---|---|
| | You agree to hold in confidence the social security number and other legally protected personal information of our professional and to implement and maintain reasonable security procedures and practices to protect such information from unauthorized access, use, modification or disclosure. |
| Limitation on Liability | We make no express or implied warranty, including, but not limited to, any warranty of quality, performance, merchantability or fitness for any purpose with respect to any services performed or any goods provided, including, but not limited to, financial or accounting services performed, or software developed, for you. Under no circumstances are we liable for any special, incidental, exemplary, indirect damages, lost profits or consequential damages (including, but not limited to, lost business, revenue, goodwill, or anticipated savings), even if informed of the possibility. Our liability, if any, will (in the aggregate for all claims, causes of action or damages) be limited to any actual direct damages up to an amount equal to the fees actually paid by you to us for the services that are the subject of the claim, regardless of the basis on which you are entitled to claim damages from us (including, but not limited to, fundamental breach, negligence, misrepresentation, or other contract or tort claim). |
| Insurance | In addition to workers' compensation insurance for our professional, we also maintain commercial liability insurance. |
| No Contrary Agreements | These General Conditions of Assignment contain the complete and final agreement on the topics they address, and they supersede any prior agreements or understandings on these topics. Our professionals do not have authority either to verbally modify these General Conditions of Assignment or to assume additional responsibilities other than those set forth in these General Conditions of Assignment. |

Job Order:  03720-0012599507                      Date:  03-01-2023

1735 Market St, 25th Floor, Philadelphia, PA  19103

# TERMS OF PAYMENT

Thank you for your confidence in *Robert Half*. Our professional for this assignment of PC Technician is Charles Gibbone. The assignment will start on 03-01-2023. As agreed or otherwise communicated, we will invoice your firm at the rate of $40.00 per hour.  Should you wish to use our professional for other assignments, please let us know. The hourly billing rate may then change to reflect the experience necessary for the assignment. Call *Robert Half* for any changes in the assignment. We request a minimum thirty (30) days' notice prior to ending any assignment.

The following Terms of Payment apply to this assignment:

| | |
|---|---|
| **Guarantee** | *Robert Half* guarantees your satisfaction with our professional's services by extending to you a 40 hours guarantee period.  If, for any reason, you are dissatisfied with our professional, *Robert Half* will not charge for the first 40 hours of work by the professional, provided that *Robert Half* is allowed to replace the professional.  Unless you contact us before the end of the first 40 hours guarantee period, you agree that our professional is satisfactory. |
| **Time Report** | Our professional will submit a time report for verification and approval at the end of each week. Your approval thereby indicates your acknowledgement of the General Conditions of Assignment and these Terms of Payment. Our compensation to our professional is on a weekly basis, and you will be billed weekly for the total hours of work by the professional, including time spent completing, revising, and/or resubmitting a time report during business hours, and we ask that you respect those guidelines. Because *Robert Half* invoices reflect payroll we have already paid, our invoices are due upon receipt.  Applicable sales and service taxes shall be added to these invoices.  In the event that you fail to pay the invoice when due, you agree to pay all of our costs of collection, including reasonable attorneys' fees, whether or not legal action is initiated.  Additionally, we may, at our option, charge interest on any overdue amounts at a rate of the lesser of 1 1/2% per month or the highest rate allowed by applicable law from the date the amount first became due. |
| **Overtime** | Overtime will be billed at 1.50 times the normal billing rate.  Overtime applies when hours of work by the professional exceed 40 hours per week (and in California exceed more than 8 hours in a day and as other state laws may require). If state law requires double time pay, the double time hours will be billed at 2.00 times the normal billing rate. |
| **Hiring the Person Referred to You** | After you evaluate the performance and potential of our professional, you may wish to employ this person directly.  Our professionals represent our pool of skilled professionals and in the event you wish them converted to your employ or another employer to whom you refer them, you agree to pay a conversion fee.  The conversion fee is payable if you hire our professional, regardless of the employment classification, on either a full-time, temporary (including temporary assignments through another agency) or consulting basis within twelve months after the last day of the assignment.  You also agree to pay a conversion fee if our professional is hired by (i) a subsidiary or other related company or business as a result of your referral of our professional to that company or (ii) one of your customers as a result of our professional providing services to that customer.<br><br>The conversion fee will equal 35% of the professional's aggregate annual compensation, including bonuses.<br><br>The conversion fee will be owed and invoiced upon your hiring of our professional, and payment is due upon receipt of this invoice.  The same calculation will be used if you convert our professional on a part-time basis using the full-time equivalent salary. |
| **Employment Taxes and Withholdings** | *Robert Half* will handle, to the extent applicable, any workers' compensation insurance, federal, state and local withholding taxes and unemployment taxes, as well as social security, state disability insurance or other payroll charges. |
| **General Conditions** | *Robert Half* may charge you a technology fee for the provision of equipment or technology, if you request that our professional use equipment or technology provided by us. *Robert Half* may also increase our rates provided under the Terms of Payment to reflect increases in our own costs of doing business, including costs associated with higher wages for workers and/or related tax, benefit and other costs. We will provide written or verbal notice of the technology fees and/or increase in our rates. Any increase in our rates will be prospective, starting as of the effective date *Robert Half* specifies.<br><br>A copy of the General Conditions of  Assignment has been provided to you.  We reserve the right to replace our professional. |

Job Order:  03720-0012599507                    Date:  03-01-2023

DocuSign Envelope ID: DDAF9085-228D-4BBA-9508-FDE5FD5D8C32

# **rh** Robert Half®

May 13, 2022

Subject: Background Investigation

Dear Brian:

Thank you for the opportunity to meet your contract talent needs. Our professionals will be assigned to you under our General Conditions of Assignment and Terms of Payment ("T&Cs"). These documents will be mailed to you separately.

This letter confirms that Southeast Delco School District ("Client") has requested that Robert Half International Inc., through its technology and marketing & creative practice groups ("Robert Half"), conduct background screenings on each professional we assign to Client. Client and Robert Half agree that the General Conditions of Assignment for our professionals are amended by adding the following language:

"To the extent permitted by applicable law, we will have a third party vendor: (a) conduct a Pennsylvania Access to Criminal History ("PATCH") check; and (b) conduct a Pennsylvania Department of Public Welfare Child Abuse History Clearance check. We do not engage in any verification process other than the checks in this paragraph (the "checks"). If you request a copy of the results of any of the checks conducted on our professionals, you agree to keep such results strictly confidential and to use such results in accordance with applicable laws and solely for employment purposes." In addition to the foregoing background screening and clearance information, and to the extent permitted by law, we will have each our professional register on-line with IdentoGo for the purpose of the fingerprint screening. You represent that such registration should be through the department number PA fingerprint Dept #1KG6XN. Once the on-line registration is completed, you will be provided with the Professional's registration number allowing you to verify that the registration is completed. You represent and warrant that any fingerprint screening will be requested, conducted and used by you in accordance with applicable law. We shall not be required to take possession of any completed fingerprint cards nor be liable for any third party claims resulting from the processing or reporting of such fingerprint screening, including, but not limited to, those claims arising from any errors in the reported screening results. The results will be sent directly to the Professional who will provide such results to you for review. Upon your receipt of the fingerprint screening results, you will notify us of the Professional's eligibility for placement."

This letter amendment, including the T&Cs, constitutes the entire agreement of the parties relating to the subject matter hereof. In the event of a conflict between the terms of this letter amendment and the T&Cs, this letter amendment will control. Please indicate Client's agreement with and acceptance of the T&Cs as modified herein by signing a copy of this letter amendment and returning it to my attention. In addition, Client's signature on our professional's timesheet indicates Client's acceptance of the T&Cs as modified herein.

This letter amendment shall be effective as of the date of Client's approval, for a period of one (1) year. This amendment is only applicable to, and the only Robert Half International Inc. branch or practice groups obligated under this amendment, are the technology and marketing & creative practice groups of the branch located in Philadelphia, PA.

DocuSign Envelope ID: DDAF9085-228D-4BBA-9508-FDE5FD5D8C32

We appreciate your business.

Respectfully,

Robert Half International Inc.


AGREED AND ACCEPTED:
Southeast Delco School District

DocuSigned by:

*Brian Wilson*

099FBB6724EA45C...

**EXHIBIT R-1: Plaintiff's July 29, 2024 Reapplication for Desktop Support Technician**

Plaintiff submitted a formal application on July 29, 2024, through the Southeast Delco School District's TalentEd PowerSchool portal for the Desktop Support Technician position. This sub-exhibit contains two screenshots: one verifying submission of the application, and another confirming that 12 professional references were entered into the system. Despite this complete and timely reapplication, the District later claimed that no internal documentation or communications related to the application existed.

← Submitted Applications                    **Desktop Support Technician**

Job Application    Job Description

# IT Tech Support

**Southeast Delco School District**
Southeast Delco School District - Folcroft, Pennsylvania   Open in Google Maps

Applied On : 07/29/2024 | Application Received

## Job Details

**Job ID:**  4515492
**Application Deadline:**  Posted until filled
**Re-Posted:**  Aug 27, 2024
**Starting Date:**  Immediately

ⓘ  This job posting is closed

| Name ⬍ | Email | Relationship | Reference Letter | Returned | |
|---|---|---|---|---|---|
| ☐ Chris Berardi | cberardi@kaplaw.com | Colleague | Charles Reccomendation - CJB.pdf | Yes | Edit |
| ☐ Gianna Bruzzese | gbruzzese@sedelco.org | Colleague | | Yes | Edit |
| ☐ Mohammed Diakite | mdk612005@gmail.com | Colleague | | Yes | Edit |
| ☐ Laura Kluza | lkluza@sedelco.org | Colleague | | Yes | Edit |
| ☐ Marissa Phillips | mphillips@sedelco.org | Colleague | | Yes | Edit |
| ☐ Ted Roth | troth@sedelco.org | Colleague | | Yes | Edit |
| ☐ Daniel Ruane | druane@sedelco.org | Colleague | Charles Gibbone Letter of Recommendation.doc | Yes | Edit |
| ☐ Robert Rust | rrust@sedelco.org | Colleague | | Yes | Edit |
| ☐ Samantha Striar | sstriar@sedelco.org | Colleague | | Yes | Edit |
| ☐ Preston Tarr | prestontarr11@gmail.com | Colleague | | Yes | Edit |
| ☐ David Tatum | dtatum@dciu.org | Colleague | | Yes | Edit |
| ☐ Michael Williams | mwilliams@sedelco.org | Colleague | | Yes | Edit |

**EXHIBIT R-2: March 24, 2025 RTK Request and Email Thread with Mr. Butler**

Plaintiff submitted a Right-to-Know request on March 24, 2025, requesting internal notes, evaluation records, and email communications related to the review of his July 2024 reapplication. The District invoked a 30-day extension under the RTKL but ultimately failed to respond. In the email thread, Mr. Butler falsely claimed Plaintiff failed to attach the request form, despite it being present in the original submission.

Mail - Charles A. Gibbone - Outlook

 Outlook

## Re: RTK Request 3.24.2025 HR Docs

**From** Craig Butler <cbutler@sedelco.org>
**Date** Tue 4/1/2025 4:56 PM
**To**   Charles A. Gibbone <ca_gibbone@knights.neumann.edu>; RTK Request <rtkrequest@sedelco.org>

Hello Mr. Gibbone:

Confirming receipt of your below stated email.

I will restate, that on my end, your email date March 24, 2025 at 7:16 PM did not populate in rtkrequest@sedelco.org that shows on my desktop.

Thank you.

---

**From:** Charles A. Gibbone <ca_gibbone@knights.neumann.edu>
**Sent:** Tuesday, April 1, 2025 1:43 PM
**To:** Craig Butler <cbutler@sedelco.org>; RTK Request <rtkrequest@sedelco.org>
**Subject:** Re: RTK Request 3.24.2025 HR Docs

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Dear Mr. Butler,

I am following up regarding your recent statement that my March 24, 2025 Right-to-Know request was not received and/or did not contain the required form. After reviewing the communication trail, I'd like to clarify several key points for accuracy and documentation purposes:

1. **Timestamped Email Delivery:**
   On **March 24, 2025 at 7:16 PM**, I submitted my Right-to-Know request via email to both:

   ○ rtkrequest@sedelco.org

   ○ cbutler@sedelco.org
   The message subject was: **"RTK Request 3.24.2025 HR Docs"**. The original `.eml` file confirms this delivery with full headers, recipients, and timestamp.

The message included an attachment titled **RTKRequestForm3.24.2025.pdf**, which is the official RTK request form. This document was reviewed and verified as complete, specifying the exact records requested. In your April 1, 2025 response, you directly **quoted the March 24 email,** including my specific request language (e.g., "I am submitting this Right-to-Know request regarding the job application I submitted to Southeast Delco on July 29, 2024..."). This confirms not only that the message was received, but that its **full content** was visible and reviewed. If it wasn't viewable on your end, then the quoted message would have only captured my recent message; not the original email I had sent on March 24th. Additionally, the top of this email chain shows all attachments thar are involved in this

thread- with the correct Right-To-Know Law form present. I have attached two visible screenshots of the email thread which corroborate the fact that there were no technical issues, especially since I sent my other 2 right to know requests just minutes before this one.

The email and attachments have not been altered, and I have preserved the original message and file in .eml format for verification. The attached form is identical to the file currently in district records.

Given the above, I ask that you formally acknowledge the March 24 submission as valid and begin processing it under the statutory timelines required by the Right-to-Know Law. If there are any further concerns regarding format or content, please advise with specificity. As mentioned, the district still has until the end of the day to use the 30 day extension on this request.

Sincerely,

Charles

---

**From:** Craig Butler <cbutler@sedelco.org>
**Sent:** Tuesday, April 1, 2025 1:19 PM
**To:** Charles A. Gibbone <ca_gibbone@knights.neumann.edu>; RTK Request <rtkrequest@sedelco.org>
**Subject:** Re: RTK Request 3.24.2025 HR Docs

Hello Mr. Gibbone:

The below stated email was not received, on March 24, 2025, via the RTKR email address—> **rtkrequest@sedelco.org**. It was also not received, on March 24, 2025, via my regular work email address --> **cbutler@sedelco.org**.

I attached two emails that you sent to email address rtkrequest@sedelco.org today at 11:55 and 11:59 AM.

In addition, it appears that the below stated email, that you have stated was sent on March 24, 2025, did not include the Standard Right-to-Know Law Request Form.

Thank you,

Craig A. Butler
RTK Officer
*Southeast Delco School District*
1560 Delmar Drive
Folcroft, PA 19032
610-522-4300 Ext. 5393
rtkrequest@sedelco.org

---

**From:** Charles A. Gibbone <ca_gibbone@knights.neumann.edu>
**Sent:** Tuesday, April 1, 2025 11:55 AM
**To:** RTK Request <rtkrequest@sedelco.org>; Craig Butler <cbutler@sedelco.org>
**Subject:** Re: RTK Request 3.24.2025 HR Docs

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.
Good morning:

Here is the third Right-To-Know Request submitted on March 24th, 2024. Please confirm receipt of this request, as it was sent to the correct right-to-know email address listed on the website. The district still has until the end of the day to reply to the request, so please use the 30-day extension if required.

Thank you,
Charles

---

**From:** Charles A. Gibbone
**Sent:** Monday, March 24, 2025 7:16 PM
**To:** rtkrequest@sedelco.org <rtkrequest@sedelco.org>; Craig Butler <cbutler@sedelco.org>
**Subject:** RTK Request 3.24.2025 HR Docs

Hello,

Pursuant to the Pennsylvania Right-to-Know Law, I request access to records directly related to my July 29, 2024, reapplication for the Desktop Support Technician position submitted through the TalentEd PowerSchool portal. Specifically, I request:

- Internal notes, evaluations, or comments entered into the TalentEd PowerSchool system regarding my application to the Desktop Support Technician on July 29th, 2024.

- HR documentation or memoranda discussing how my application or references were reviewed, scored, or considered.

- Email communications or internal memos that reference my name ("Charles," "Gibbone," or "Charles Gibbone") and relate to the review or consideration of this application, dated between July 20, 2024, and September 1, 2024.

- Internal email discussions specifically regarding the Charles Gibbone July 29th Desktop Support application between HR personnel, hiring committee members, or administrators, including (but not limited to) messages sent or received by:

  - ysanchez@sedelco.org

  - jryan@sedelco.org

  - cbutler@sedelco.org

  - mmiller@sedelco.org

  - sjennings@sedelco.org

  - mgiunta@sedelco.org

  - swoolley@sedelco.org

Mail - Charles A. Gibbone - Outlook

- Records related to the reference contacts listed in my application. This includes any formal reference letters submitted, as well as internal comments or evaluations made by reviewers in lieu of formal letters.

Please provide these documents in their native electronic format (e.g., PDF, DOCX, CSV). If any record is withheld or redacted, kindly cite the specific exemption under Section 708 of the RTKL. I am also willing to grant a 30-day extension if needed under §67.902.

Thank you,
Charles Gibbone



Pennsylvania
**Office of Open Records**

# Standard Right-to-Know Law Request Form

*Please read carefully. Complete this form and retain a copy of **both** pages; this copy may be required if an appeal is filed. You have 15 business days to appeal after a request is denied or deemed denied. More information about the RTKL is available at https://www.openrecords.pa.gov. In most cases, a completed RTKL request form is a public record.*

**SUBMITTED TO AGENCY NAME:** Southeast Delco School District (Craig Butler)          (Attn: AORO)

Date Request Submitted: 3/24/25          Submitted via: ■ Email □ U.S. Mail □ Fax □ In Person

**PERSON MAKING REQUEST:**

Full Name: Charles Gibbone

Company (if applicable):

Please send response via: ■ Email □ U.S. Mail

*If you wish to obtain records that only exist in hard copy, or must be provided on an electronic storage device, you may be required to provide a mailing address to the agency. See Section 703.*

Email: ca_gibbone@knights.neumann.edu

Mailing Address: 925 Beatty Road

City: Springfield          State: PA    Zip: 19064    Telephone: 484-745-5025

How do you prefer to be contacted if the agency has questions? □ Telephone ■ Email □ U.S. Mail

■ **By checking this box, I affirm that my full name and contact information is true and correct, and that I am a legal resident of the United States.** *I understand that failure to check this box may result in the denial of my request and the dismissal of any appeal filed with the Office of Open Records.*

**RECORDS REQUESTED:** *Provide as much detail as possible, including subject matter, time frame, and type of record sought. RTKL requests must seek records, not ask questions. Use additional pages if necessary.*
Internal notes, evaluations, or comments entered into the TalentEd PowerSchool system regarding my application to the Desktop Support Technician on July 29th, 2024.
HR documentation or memoranda discussing how my application or references were reviewed, scored, or considered.
Email communications or internal memos that reference my name ( "Charles," " Gibbone," or "Charles Gibbone" ) and relate to the review or consideration of this application, dated between July 20, 2024, and September 1, 2024.

*Form continues on page 2. Retain a copy of **both** pages.*

**RECORDS REQUESTED (continued):**
Internal email discussions specifically regarding the Charles Gibbone July 29th Desktop Support application between HR personnel, hiring committee members, or administrators, including (but not limited to) messages sent or received by:
ysanchez@sedelco.org
jryan@sedelco.org
cbutler@sedelco.org
mmiller@sedelco.org
sjennings@sedelco.org
mgiunta@sedelco.org
swoolley@sedelco.org
Records related to the reference contacts listed in my application. This includes any formal reference letters submitted, as well as internal comments or evaluations made by reviewers in lieu of formal letters.

**DO YOU WANT COPIES?**    ☐ Yes, printed  ■ Yes, electronic  ☐ No, in-person inspection

*Records shall be provided in the medium requested if they exist in that medium; otherwise, they shall be provided in the medium in which they exist. See Section 701. Your request may require payment or prepayment of fees. View the Official RTKL Fee Schedule for more details.*

**I understand that my request may incur fees. Notify me before further processing if fees will be more than ☐ $100 (or) ■ $0_____.**

Do you want certified copies? ☐ Yes (*may be subject to additional costs*) ■ No

<hr>

**ITEMS BELOW THIS LINE FOR AGENCY USE ONLY**

Tracking: _____  Date Received: _____  Response Due (5 bus. days): _____

30-Day Ext.? ☐ Yes ☐ No (If Yes, Final Due Date: _____) Actual Response Date:_____

Request was:  ☐ Granted    ☐ Partially Granted & Denied    ☐ Denied    Cost to Requester: $_____

☐ Appropriate third parties notified and given an opportunity to object to the release of requested records.

*Retain a copy of **both** pages of this Form.*

## EXHIBIT R-3: Final Determination – OOR Dkt. AP 2025-1242

The Office of Open Records issued a Final Determination on May 13, 2025, granting Plaintiff's appeal in full. The District failed to file a response or participate in the appeal. As a result, the OOR ordered the District to provide all responsive records or a sworn affidavit in accordance with the RTKL.



**pennsylvania**
OFFICE OF OPEN RECORDS

## FINAL DETERMINATION

DATE ISSUED AND MAILED: May 20, 2025

IN RE: *Charles Gibbone v. Southeast Delco Sch. Dist.,* OOR Dkt. AP 2025-1242

On April 2, 2025, Charles Gibbone ("Requester") submitted a request ("Request") to the Southeast Delco School District ("District") pursuant to the Right-to-Know Law ("RTKL"), 65 P.S. §§ 67.101 *et seq.* The District responded to the Request on May 1, 2025, after invoking an extension of time to respond, 67.902(b)(2), partially denying the Request and providing certain records. On May 5, 2025, the Requester filed an appeal with the Office of Open Records ("OOR"), challenging the partial denial.

Local agencies have the burden of proving that records are exempt from access. 65 P.S. § 67.708(a)(1). The deadline for providing submissions on appeal was May 14, 2025; however, to date the District has not filed a submission in this matter. Here, the District did not comply with the RTKL by submitting legal argument or evidence in support of withholding records. Accordingly, the District did not meet its burden of proof under the RTKL. 65 P.S. § 67.305.

For this reason, the appeal is **granted**, the District is required to provide the requested records to the Requester within thirty days, or, in the alternative, a sworn affidavit or a statement made under the penalty of perjury demonstrating that the records do not exist. Within thirty days of the mailing date of this Final Determination, either party may appeal or petition for review with the Delaware County Court of Common Pleas. 65 P.S. § 67.1302(a). All parties must be served with notice of the appeal. The OOR also shall be served notice and have an opportunity to respond according to court rules as per 65 P.S. § 67.1303. However, as the quasi-judicial tribunal adjudicating this matter, the OOR is not a proper party to any appeal and should not be named as a party.[1]

Issued by:

*/s/ Kelly C. Isenberg*

_____

KELLY C. ISENBERG, ESQ.
DEPUTY CHIEF COUNSEL

Sent via OOR E-File Portal to: Charles Gibbone; Craig Butler, AORO

_____

[1] *Padgett v. Pa. State Police*, 73 A.3d 644, 648 n.5 (Pa. Commw. Ct. 2013).

**EXHIBIT R-4: Reference Comments Submitted on Plaintiff's Behalf**

This sub-exhibit contains reference comments submitted by twelve individuals through the PowerSchool portal, including administrators, educators, and professional colleagues who attested to Plaintiff's technical expertise, dependability, and value to the District. The District originally withheld these responses by claiming they were exempt as predecisional records under the Right-to-Know Law, but they were produced only after Plaintiff prevailed in his appeal. The uniformly positive nature of these references, some of which described Plaintiff as the best technician the District ever employed, undermines the District's later claim that Plaintiff was unqualified and supports the theory that his application was ignored for retaliatory reasons. This strengthens Plaintiff's First Amendment retaliation claim and supports Monell liability by illustrating a pattern of institutional disregard for objective hiring metrics following protected speech.



# Southeast Delco School District

SHARON HILL SCHOOL

701 Coates Street Sharon Hill, Pa. 19079

To Whom It May Concern,

It is with distinct pleasure that I recommend Charles Gibbone for an Information Technology (IT) Position with your company. I have had the opportunity to supervise Charles over the past year and can identify several characteristics that would make him an excellent addition to our staff.

Charles is dedicated to the profession. Charles' knowledge of technology, and his technological skills are excellent. He is able to troubleshoot any problem that comes his way and he never hesitates to answer the call when someone is in need of technological support. Charles is always willing to go out of his way to assist any staff or student who has an issue. If he does not have the immediate answer, he will find it.

Charles brings the utmost empathy to his daily interactions with the students and the staff. He offers a caring, understanding, and empowering environment for all of the students and staff he supports. Charles has excellent interpersonal communication. He has developed a positive and respectful rapport with all students, staff, administrators, and school families.

It is with complete confidence and without hesitation that I recommend Charles Gibbone for an Information Technology (IT) Position with your company. With his abilities, flexibility, and dedication, Charles will be a welcomed addition to your staff. Feel free to contact me with any questions.

Sincerely,

Daniel Ruane

Assistant Principal
Sharon Hill School
610-733-3003

# Reference Check

**Nathan Robinson**

The form has not been completed.

View Reference Check

*Complete this reference check form on behalf of a reference who does not have online access to the form.*

**Alternate Online Access Method**: *Go to the Internet Address below and enter the Reference Code below when prompted.*

Internet Address: https://sedelco.tedk12.com/hire/reference.aspx

Reference Code: **0622569d**



Christopher J Berardi
Help Desk Support
Direct Dial: (610) 941-2534
Direct Fax: (610) 684 -2115
cberardi@kaplaw.com
www.kaplaw.com

August 8, 2024

Dear Hiring Management:

   I have known Charles Gibbone since our time together as classmates in Delaware County Technical School, we had attended the Computer Networking & Digital Forensics program during our junior and senior year. We both had worked diligently for high marks in class as well as performing in the higher percentage for our NOCTI exams, this is the state testing for career and technical education. He served as a notable example in the class due to his ability to help others with course material and networking concepts, as well as his ability to perform well in groups.

   We had gone to different colleges; however, we were still in communication due to both of us being on the Official Action Committee for the Computer Networking program. This program consists of industry professionals as well as former students and educators. This opportunity allows us to provide input as to any material that should change within the course, this helps prepare students for an entry level technical position to jumpstart their career early. Just recently, Charles had brought two students from the school district, Preston and Mohammed to the meeting to be inducted as members of the board. We also helped initiate another OAC for the Software Development and Management course.

   Charles has experience as a break-fix technician as well as serving as help desk. Knowing his experience and traits, I would highly recommend him for a position at Southeast Delco School District as his skills are beneficial and will be an asset to your I.T Department. If you have any questions, please feel free to contact me.

Sincerely,

*Christopher Berardi*

Christopher J Berardi
Help Desk Support

Kaplin Stewart Meloff Reiter & Stein, P.C.
Union Meeting Corporate Center
910 Harvest Drive, P.O. Box 3037
Blue Bell, PA 19422-0765
610-260-6000 tel

*Offices in*
Pennsylvania
New Jersey

# Reference Check

**Robert Rust**

| | |
|---|---|
| Relationship to candidate | Worked closely with Charles with regard to a variety of technology needs in my classes |
| Organization | Academy Park High School |
| Comment | In my experience with Charles, he not only demonstrated a vast and comprehensive knowledge of technology but also a vision of how to use technology to help students achieve higher levels of learning in their classes. In this regard, he was deeply invested in the school, the staff, and the students. He was always a pleasure to work with and responded rapidly to all requests. |
| Initials | RR |
| Date | 08/09/2024 |

# Reference Check

**Samantha Striar**

| | |
|---|---|
| Relationship to candidate | Co-worker |
| Organization | Sedelco |
| Comment | Great in his field. Understands how to speak with people who struggle with technology lingo. Genuinely friendly and caring. |
| Initials | S.S. |
| Date | 08/05/2024 |

# Reference Check

**Marissa Phillips**

| | |
|---|---|
| Relationship to candidate | former colleague |
| Organization | SE Delco School District |
| Comment | Charles Gibbone is an excellent candidate for a support technician at SE Delco. He is so knowledgeable/skilled, so professional, and a fantastic role model for students.

I highly recommend him for this or any tech position at SE Delco SD. |
| Initials | MP |
| Date | 08/08/2024 |

# Reference Check

**Mohammed Diakite**

| | |
|---|---|
| Relationship to candidate | Peer |
| Organization | N/A |
| Comment | Charles has an impressive ability to grasp complex technical concepts quickly, which allows him to excel in solving problems and implementing solutions efficiently. His proficiency spans across various domains, including network management, software development, and cybersecurity, making him a well-rounded IT specialist. Whether it's troubleshooting a critical issue under tight deadlines or developing innovative tools to streamline processes, Charles handles every task with precision and professionalism. What sets Charles apart is not just his technical skills, but also his commitment to continuous learning and improvement. He actively seeks out new knowledge, stays updated with the latest industry trends, and is always eager to share his insights with the team. His proactive attitude and willingness to go the extra mile have inspired those around him and contributed significantly to our collective success. |
| Initials | MKD |
| Date | 08/09/2024 |

# Reference Check

**David Tatum**

| | |
|---|---|
| Relationship to candidate | Teacher |
| Organization | Delaware County Technical High Schools - Aston |
| Comment | I taught Charles for two years in our Computer Networking program here at the Delaware County Technical High Schools. Charles had kept in regular contact with me and our program and serves on our Occupational Advisory Committee. I have known Charles since 2016. During his time at our school in our networking program Charles demonstrated leadership, team work, self-reliance, and problem solving skills. As an advisory member, Charles has made valuable contributions to our program in the form of his insight and technical background, education, and experience in IT and cybersecurity. I believe that Charles will make an excellent addition to any organization that he is a part of. Feel free to contact me if you would like further information - 484-798-5293 |
| Initials | djt |
| Date | 09/03/2024 |

# Reference Check

**Preston Tarr**

| | |
|---|---|
| Relationship to candidate | Supervisor |
| Organization | Southeast Delco School District |
| Comment | Charles is excellent role model. He is reliable and efficient in his work. He always helps those in need when needed no matter how difficult it can be. |
| Initials | PTJ |
| Date | 08/08/2024 |

# Reference Check

**Daniel Ruane**

| | |
|---|---|
| Relationship to candidate | Supervisor (When he was at Sharon Hill) |
| Organization | Sharon Hill School |
| Comment | Charles is dedicated to the profession. Charles' knowledge of technology and his technological skills are excellent. He can troubleshoot any problem that comes his way and he never hesitates to answer the call when someone needs technological support. Charles is always willing to go out of his way to assist any staff or student who has an issue. If he does not have an immediate answer, he will find it. |
| Initials | DTR |
| Date | 07/30/2024 |

# Reference Check

**Chris Berardi**

| | |
|---|---|
| Relationship to candidate | Peer |
| Organization | Kaplin Stewart |
| Comment | Chuck has been great to work with over the years I knew him. I highly recommend him for a position with the school district. |
| Initials | CJB |
| Date | 08/08/2024 |

# Reference Check

**Laura Kluza**

| | |
|---|---|
| Relationship to candidate | Colleague |
| Organization | Southeast Delco School District - APHS |
| Comment | I highly recommend Charles Gibbone for the Desktop Support Technician position. As a former employee in this role, Charles was excellent. He was knowledgable, efficient, helpful, and friendly. I was sad to see him leave and would be happy to see him return. Please let me know if you would like to elaborate on my recommendation. |
| Initials | LK |
| Date | 08/06/2024 |

# Reference Check

**Gianna Bruzzese**

| | |
|---|---|
| Relationship to candidate | Co Worker |
| Organization | Academy Park High School |
| Comment | Charles always responded to my tech issues in a timely manner. He seemed to have a good rapport with the students at AP. He put a printer in my room so it was easier for the other teachers in my end of the hallway to have a place to print that wasn't too far away from their rooms. There was a very quick turnaround time when students had ChromeBook issues, which was really appreciated from a teaching perspective. |
| Initials | GB |
| Date | 08/09/2024 |

# Reference Check

**Ted Roth**

| | |
|---|---|
| Relationship to candidate | Co-worker |
| Organization | Sedelco |
| Comment | Charles will do an excellent job at this position. He has incredible technology skills and knowledge. Charles is an effective communicator who clearly explains what he is doing. He provides the best customer service I have ever experienced. He responds amazingly quick to Help Desk problems and solves the problem. |

Prior to becoming a teacher I was a Data Security Administrator and Banking Officer for a bank with over 1,000 employees and a member of the bank's Help Desk team. Charles talent, customer service skills and work ethic exceeds anyone I have ever worked with. Additionally, he is an extremely nice person. Charles would be an asset to any organization and receives my highest recommendation.

Please contact me if you require any additional information.

Sincerely,

Ted Roth (610) 316-7744

| | |
|---|---|
| Initials | TR |
| Date | 08/09/2024 |

# Reference Check

**Michael Williams**

| | |
|---|---|
| Relationship to candidate | Former co-worker |
| Organization | Southeast Delco. School District |
| Comment | Mr. Gibbone has always conducted himself as a professional. Whenever I needed him to assist me with a technology issue he always responded in a timely manner and rectified the problem as efficiently as possible. I have no doubt as to Mr. Gibbone's qualifications for the job he is seeking. |
| Initials | MW |
| Date | 08/12/2024 |

**EXHIBIT R-5: June 18, 2025 Affidavit of Craig Butler**


This affidavit, submitted after the District failed to respond to the RTK request and defaulted in the appeal, states that the District possesses no internal communications, evaluations, or deliberative records regarding Plaintiff's July 29, 2024 reapplication, despite his formal submission and inclusion of twelve references. Mr. Butler's sworn admission that no such records exist suggests that the application was never substantively reviewed, which supports Plaintiff's First Amendment retaliation claim by evidencing adverse treatment following protected activity. The absence of standard documentation further supports Monell liability by pointing to systemic disregard for lawful and transparent hiring practices.

**COMMONWEALTH OF PENNSYLVANIA**
**OFFICE OF OPEN RECORDS**

In the Matter of                              :
                                              :
CHARLES GIBBONE                               :
Requester,                                    :        Docket No.: AP 2025-1242
                                              :
v.                                            :
                                              :
SOUTHEAST DELCO SCHOOL                        :
DISTRICT,                                     :
Respondent.                                   :

## ATTESTATION OF CRAIG A. BUTLER

1. I, Craig A. Butler, serve as the Chief Operating and Financial Officer ("COO/CFO") and
   Open Records Officer ("ORO") for Southeast Delco School District ("School District").

2. This attestation is being submitted in response to the Office of Open Records May 20, 2025
   Final Determination directing the School District to submit a sworn affidavit or a statement
   made under penalty of perjury demonstrating that certain records do not exist.

3. Before sending the School District's May 1, 2025 Response to the subject Right-to-Know
   Law request ("Request"), I conducted a good-faith search for records by communicating
   with those individuals at the School District who would have the relevant knowledge as to
   whether any records existed with respect to each of the request items included in the subject
   Request. This included appropriate personnel in the School District's Human Resources
   Department and Department of Technology.

4. As a result of my searching inquiries, I have found that no records exist that would be
   responsive to Requester's request items 1, 2, and 4. The same is correct in regard to the
   portion of request item 3 seeking "internal memos."

5. In addition, as to these same records, I personally do not possess such records and have no
   firsthand knowledge of the whereabouts of any such records.

6.     I, Craig A. Butler, do hereby swear that the above factual statements are true and correct to the best of my knowledge and belief. I make these statements knowing that they are subject to penalty for perjury under the laws of the United States of America.

Date: June 18, 2025                    Signature: _____

                                                            Craig A. Butler

2

## EXHIBIT S: Termination and April Interview Records

This exhibit series relates to Plaintiff's Right-to-Know request for records regarding his formal April 2024 interview for a permanent Desktop Support Technician role and the circumstances surrounding his sudden termination on April 30, 2024. Plaintiff sought internal notes, communications, and security-related documentation. The District ultimately produced no security camera footage, incident reports, or interview documentation, despite key events suggesting that Plaintiff's termination was handled as a security event and followed a formal interview process. The appeal also uncovered that following Plaintiff's termination, Craig Butler was removed from overseeing the Technology Department. These facts directly support Plaintiff's First Amendment Retaliation and Monell claims, showing that despite the formal process and evidence of protected speech, the District maintains no documentation—implying an intent to suppress or erase accountability.

# EXHIBIT S-1: Final Determination – OOR Dkt. AP 2025-1449

This sub-exhibit contains the Final Determination issued by the Office of Open Records in Docket AP 2025-1449, granting Plaintiff partial relief. The request sought internal records regarding Plaintiff's formal April 2024 interview with District staff (including Megan Giunta, Sunni Jennings, and Matt Miller), communications related to the April 30, 2024 termination, and incident reports or footage relating to the deactivation of Plaintiff's credentials. The Final Determination summarizes the scope of the request, clarifies the requested records, and affirms that the District failed to produce sufficient responsive records or justifications for withholding critical information. This supports Plaintiff's claims that the District obscured key decision-making documents in the aftermath of protected speech.



# pennsylvania

### OFFICE OF OPEN RECORDS

<u>**FINAL DETERMINATION**</u>

IN THE MATTER OF                          :
                                          :
**CHARLES GIBBONE,**                      :
**Requester**                             :
                                          :
v.                                        :   **Docket No: AP 2025-1341**
                                          :
**SOUTHEAST DELCO SCHOOL**                :
**DISTRICT,**                             :
**Respondent**                            :

## FACTUAL BACKGROUND

On March 28, 2025, Charles Gibbone ("Requester") submitted a request ("Request") to the

Southeast Delco School District ("District") pursuant to the Right-to-Know Law ("RTKL"), 65

P.S. §§ 67.101 *et seq*., stating:

April 2024 Reapplication for Desktop Support Technician:

[1] Any and all documentation, internal assessments, notes, scoring rubrics, or evaluations used in reviewing my April 2024 application for the Desktop Support Technician position.

[2][1]    Any internal email communications or memos exchanged between HR personnel, IT department members, or administrators regarding my application, interview performance, or final hiring decision. This includes, but is not limited to communications involving: Stephanie Woolley, Megan Giunta, Sunni Jennings, Matt Miller, Craig Butler)[.]

[3] Any communications or documentation confirming Craig Butler's removal or reassignment from overseeing the Technology Department.

---

[1] Items 1 and 2 are combined in the original Request, but for clarity, the OOR adopted the District's numbering of the Request.

1

[4] Any incident response forms, memos, or statements written by David Jackson, Racquel Irons, or Latarasha Threadgill regarding my termination.

[5] Any security camera footage showing my termination and escort between 9:30 AM and 12:00 PM on April 30, 2024. I also request the [D]istrict[']s policies regarding security camera retention and deletion.

[6] Any emails, memos, or directives exchanged between Craig Butler and other [D]istrict administrators between April 28 and May 1, 2024, discussing:
    The decision to terminate my contract on the morning of April 30, 2024.
    The deactivation of my [D]istrict keycard and email.
    Security or administrative arrangements for the termination event.

On April 7, 2025, the District sent a letter to invoke a thirty-day extension during which to respond, 65 P.S. § 67.902(b).[2] However, the District did not provide a final response to the Requester and on May 7, 2025, the Request was deemed denied. 65 P.S. § 67.901.

On May 12, 2024, the Requester appealed to the Office of Open Records ("OOR"), challenging the deemed denial and stating grounds for disclosure. The OOR invited both parties to supplement the record and directed the District to notify any third parties of their ability to participate in this appeal. 65 P.S. § 67.1101(c).

The deadline for submissions in this appeal closed on May 22, 2025. On that date, the District submitted a position statement, arguing that it was unaware of the Requester's appeal until May 22, 2025, when it received an email from the Requester. Therefore, the District set forth arguments in support of exemption and requested additional time to submit a comprehensive response regarding the District's position on appeal and to confirm that additional records do not exist in the District's possession, custody or control. The District asserted that parts of the Request

---

[2] On April 7, 2025, the Requester filed an appeal (2025-0886) of the March 28, 2025, Request, alleging that the District did not send a timely 30-day extension letter. The appeal was dismissed because it was filed prematurely after the District showed that it was closed on March 31, 2025, and the District's 30-day letter was, therefore, timely. The Requester appealed the March 28, 2025 Request again in the present appeal, but the District alleged that it did not become aware of the appeal until May 22, 2025.

are insufficiently specific; parts of the Request seek records which are exempt as employment records pursuant to Section 708(b)(7); and parts of the Request seek records which are exempt as predecisional deliberations pursuant to Section 708(b)(10). 65 P.S. §§ 67.708(b)(7), (b)(10). The District also submitted an attestation authored by its Chief Operating and Financial Officer and Open Records Officer, Craig Butler ("Butler Attestation"), who stated that he only became aware of the appeal the day submissions were due, and he has not had sufficient time to confirm that responsive records do not exist in the District's possession, custody or control.

On May 24, 2025, the Requester requested an extension of the submission deadline to allow the District additional time to verify the existence of responsive records and to provide the Requester with additional time to prepare a responsive position statement. On May 27, 2025, after clarifying the time frames for the extensions, the Requester agreed to extensions of the submission and Final Determination deadlines, and the OOR extended the deadlines on the same day.

On May 28, 2025, the District submitted the supplemental attestation of Craig Butler ("Butler Supplemental Attestation"), stating that Mr. Butler conducted a thorough search, which consisted of inquiring with multiple relevant personnel and searching the District's records, and, except for those parts of the Request that are alleged to be insufficiently specific by the District, the District does not have possession, custody or control of additional responsive records. Specifically, the Butler Supplemental Attestation asserts that the District does not possess records responsive to all or part of Items 1, 2, 4, 5 and 6 of the Request.

On May 29, 2025, the Requester submitted a responsive position statement, arguing he has evidence that responsive records do exist. The Requester submitted emails and text messages that the Requester argues are responsive to the Request but were not produced by the District. Lastly, the Requester attached an attestation he authored ("Gibbone Attestation"), reciting a factual history

3

of his employment and separation from employment with the District through an employment agency.

## LEGAL ANALYSIS

The District is a local agency subject to the RTKL. 65 P.S. § 67.302. Records in the possession of a local agency are presumed to be public, unless exempt under the RTKL or other law or protected by a privilege, judicial order or decree. See 65 P.S. § 67.305. As an agency subject to the RTKL, the District is required to demonstrate, "by a preponderance of the evidence," that records are exempt from public access. 65 P.S. § 67.708(a)(1). The preponderance of the evidence standard has been defined as "such proof as leads the fact-finder … to find that the existence of a contested fact is more probable than its nonexistence." *Pa. State Troopers Ass'n v. Scolforo*, 18 A.3d 435, 439 (Pa. Commw. Ct. 2011) (quoting *Pa. Dep't of Transp. v. Agric. Lands Condemnation Approval Bd.*, 5 A.3d 821, 827 (Pa. Commw. Ct. 2010)). Likewise, "[t]he burden of proving a record does not exist...is placed on the agency responding to the right-to-know request." *Hodges v. Pa. Dep't of Health*, 29 A.3d 1190, 1192 (Pa. Commw. Ct. 2011).

### 1. The District did not prove that parts of the Request are insufficiently specific

The District argues that parts of the Request are insufficiently specific under Section 703 of the RTKL because they contains no scope. Section 703 of the RTKL states that "[a] written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested." 65 P.S. § 67.703. When determining whether a particular request is sufficiently specific, the OOR uses the multifactor test employed by the Commonwealth Court in *Pa. Dep't of Educ. v. Pittsburgh Post-Gazette*, 119 A.3d 1121 (Pa. Commw. Ct. 2015).

4

First, "[t]he subject matter of the request must identify the 'transaction or activity' of the agency for which the record is sought." *Id.* at 1125 (quoting 65 P.S. § 67.102). Second, "[t]he scope of the request must identify 'a discrete group of documents, either by type … or by recipient.'" *Id.* (quoting *Carey v. Pa. Dep't of Corr.*, 61 A.3d 367, 372 (Pa. Commw. Ct. 2013)). Finally, "[t]he timeframe of the request should identify a finite period of time for which records are sought." *Id.* at 1126 (citing *Carey, supra*). "The timeframe prong is, however, the most fluid of the three prongs, and whether or not the request's timeframe is narrow enough is generally dependent upon the specificity of the request's subject matter and scope." *Id.*

The above factors are intended "to facilitate an analysis in order to determine whether an agency can ascertain which records are being requested…. The subject matter, scope, and timeframe of a request are flexible, analytical elements, not evidentiary requirements." *Pa. Dep't of Health v. Shepherd*, No. 377 C.D. 2021, 2022 Pa. Commw. Unpub. LEXIS 207 *6-7 (Pa. Commw. Ct. 2022), *appeal denied*, No. 334 MAL 2022, 2022 Pa. LEXIS 1862 (Pa. 2022). Finally, we must analyze the entirety of a request, as it is possible that portions of a request are insufficiently specific, while other portions provide sufficient guidance. *See Pa. State Police v. Office of Open Records*, 995 A.2d 515, 517 (Pa. Commw. Ct. 2010) (noting "the valid part of the request was included in a laundry list of requested materials").

The District alleges that parts of the Request are insufficiently specific because they fail to identify a scope, or type, of record and require the District to make judgments about the documents that are responsive to the Request. As a preliminary matter, the subject matter and time frame of the Request do not seem to be at issue. The subject matter of the requested records is the Requester's "April 2024 Reapplication for Desktop Support Technician." Additionally, in some parts of the Request, the Requester identifies the very specific time frames of April 28, 2024, to

5

May 1, 2024, and a 2-hour window on April 30, 2024. Although the Requester did not identify a precise time frame for the requested records in some parts of the Request, a limited and specific time frame can reasonably be inferred for the entirety of the Request based on the specific subject matter (the April 2024 Reapplication) and timing of the events that are the subject of the Request. Therefore, unless otherwise indicated, the time frame for all responsive records can reasonably be inferred to be from the beginning of April, 2024 until the beginning of May, 2024, and are, therefore, sufficiently specific.

  a)  *Item 1*

Item 1 seeks "[a]ny and all documentation, internal assessments, notes, scoring rubrics, or evaluations" used in reviewing the Requester's application for employment. The District contends that the part of Item 1 seeking "any and all documentation" and "internal assessments" is insufficiently specific because it fails to identify a scope, or type, of record and requires the District to make judgments about the documents that are responsive to the Request. Although the scope for "any and all documents" is somewhat broad, the rest of Item 1 further limits the scope to documents that were used to review the Requester's application for employment, including documents such as scoring rubrics and evaluations. The narrow subject matter also serves to assist the District in narrowing its search, by defining a relatively small set of potential documents which must be searched. Additionally, the Request includes a finite timeframe of less than two months that also narrowly limits the search for responsive records. Therefore, when evaluated in the context of the entirety of the Request, Item 1 is sufficiently specific.

  b)  *Item 3*

Item 3 seeks "[a]ny communications or documentation confirming Craig Butler's removal or reassignment from overseeing the Technology Department." The District contends the part of

the Request seeking "[a]ny communications or documentation" is insufficiently specific because it fails to identify a scope, or type, of record and requires the District to make judgments about the documents that are responsive to the Request. Again, as above, the subject matter of Item 3 is narrow, in that it requests records regarding a single employee's removal from a specific supervisory position. Additionally, although it is not clear when Mr. Butler left the position in question, a finite time frame can reasonably be implied based on the timing of the departure. Therefore, when evaluated in the context of the entirety of the Request, Item 3 is sufficiently specific.

    c) *Item 4*

Item 4 seeks "[a]ny incident response forms, memos, or statements written by David Jackson, Racquel Irons, or Latarasha Threadgill regarding my termination." The District contends the term "incident response forms" is insufficiently specific because it fails to identify a particular type of responsive record and requires the District to make judgments about the documents that are responsive to the Request. However, the scope of the Request clearly identifies the authors of the requested documents, and although the District may not possess a document titled "incident response form" it is suggestive of a very limited type of document, and the subject matter and the implied time frame are also narrow. Therefore, Item 4 is sufficiently specific.

    d) *Item 6*

Item 6 seeks "[a]ny emails, memos, or directives exchanged between Craig Butler and other [D]istrict administrators between April 28 and May 1, 2024, discussing ….[three subjects related to the Requester's termination]." The District contends the term "[a]ny … directives" is insufficiently specific because it fails to identify a scope, or type, of record and requires the District to make judgments about the documents that are responsive to the Request. The scope of the

7

Request clearly identifies one participant by name and others by category – "other [D]istrict administrators" – and when considered in the context of the Request, it is clear the Requester is asking for communication, memos and other documentation exchanged between Mr. Butler and other District administrators that relate to the decision to terminate the Requester's employment and the logistics of the termination. Additionally, the subject matter and the stated time frame are narrow, making Item 6 of the Request sufficiently specific to enable the District to conduct a search for responsive records.

Therefore, all parts of the Request are sufficiently specific.

## 2. The District proved that some responsive records do not exist in the District's possession, custody or control

In response to a request for records, "an agency shall make a good faith effort to determine if ... the agency has possession, custody or control of the record[.]" 65 P.S. § 67.901. While the RTKL does not define the term "good faith effort," in *Uniontown Newspapers, Inc. v. Pa. Dep't of Corr.*, the Commonwealth Court stated:

> As part of a good faith search, the open records officer has a duty to advise all custodians of potentially responsive records about the request, and to obtain all potentially responsive records from those in possession ... When records are not in an agency's physical possession, an open records officer has a duty to contact agents within its control, including third-party contractors ... After obtaining potentially responsive records, an agency has the duty to review the records and assess their public nature under ... the RTKL.

185 A.3d 1161, 1171-72 (Pa. Commw. Ct. 2018) (citations omitted), *aff'd*, 243 A.3d 19 (Pa. 2020). An agency must show, through detailed evidence submitted in good faith from individuals with knowledge of the agency's records, that it has conducted a search reasonably calculated to uncover all relevant documents. *See Burr v. Pa. Dep't of Health*, OOR Dkt. AP 2021-0747, 2021 PA O.O.R.D. LEXIS 750; *see also Mollick v. Twp. of Worcester*, 32 A.3d 859, 875 (Pa. Commw. Ct. 2011).

On May 28, 2025, the District submitted the Butler Supplemental Attestation, which explained the District's delayed awareness of this RTKL appeal and its requested extension to prepare a comprehensive response. The Butler Supplemental Attestation further stated, in relevant part, as follows:

> 11. In the interim, I have spoken with the various individuals at the School District who would have the relevant knowledge as to whether any records existed with respect to each of the request items included in the subject Request. This included the School District's Assistant Superintendent, the Director of Technology, the Supervisor of Technology Specialists and the Human Resources Specialist.

> 12. As a result of my searching inquiries, I have found that, with respect to any of the [R]equests for which the School District did not deny as insufficiently specific, no records exist that would be responsive to Requester's [R]equest items 1, 2, 4, and 5. The same is correct in regard to the portion of [R]equest item 6 as to any email or memos " ... discussing: The decision to terminate my contract on the morning of April 30, 2024" and "Security or administrative arrangements for the termination event."

> 13. In addition, as to these same records, I personally do not possess such records and have no firsthand knowledge of the whereabouts of any such records.

Under the RTKL, a sworn affidavit or statement made under the penalty of perjury may serve as sufficient evidentiary support. *See Sherry v. Radnor Twp. Sch. Dist.*, 20 A.3d 515, 520-21 (Pa. Commw. Ct. 2011); *Moore v. Office of Open Records*, 992 A.2d 907, 909 (Pa. Commw. Ct. 2010). In the absence of any evidence that the District has acted in bad faith or that the requested records exist, "the averments in [the (attestation) should be accepted as true." *McGowan v. Pa. Dep't of Envtl. Prot.*, 103 A.3d 374, 382-83 (Pa. Commw. Ct. 2014) (citing *Office of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Commw. Ct. 2013)).

The District's attestation demonstrates that a search was conducted, and that the most likely custodians of responsive records were contacted, and each affirmed that no additional responsive records exist. Based on the evidence provided, the District has met its burden of proof that

responsive records do not exist in its possession, custody, or control. *See Hodges v. Pa. Dep't of Health,* 29 A.3d 1190, 1192 (Pa. Commw. Ct. 2011) ("[t]he burden of proving a record does not exist ... is placed on the agency responding to the right-to-know request"); *Pa. Dep't of Health v. Mahon*, 283 A.3d 929 (Pa. Commw. Ct. 2022) (holding that, when there is evidence that a record does not exist, "[i]t is questionable to what degree additional detail and explanation are necessary...."); *Campbell v. Pa. Interscholastic Athletic Ass'n*, 268 A.3d 502 (Pa. Commw. Ct. 2021) (noting that an agency need only prove the nonexistence of records by a preponderance of the evidence, the lowest evidentiary standard, and is tantamount to a "more likely than not" inquiry).[3]

Specifically, the District proved that the following records do not exist: Item 1, notes, scoring rubrics and evaluations used in reviewing the Requester's April 2024 application for employment; Item 2, all responsive records; Item 4, memos and statements written by three specific people regarding the Requester's termination; Item 5, all responsive records; and Item 6, emails and memos exchanged between Craig Butler and District administrators between April 28, 2024, and May 1, 2024 discussing three specific topics related to the Requester's termination.

### 3.  The District did not prove some records are exempt pursuant to Section 708(b)(7)

The District argues that records responsive to Items 4 and 6 are exempt employment records pursuant to Section 708(b)(7).[4]  65 P.S. § 67.708(b)(7).  Since the District has proven that some records responsive to Items 4 and 6 do not exist, the only remaining records the District claims are exempt pursuant to Section 708(b)(7) are "incident response forms [...] written by [three

---

[3] The OOR makes no determinations as to whether records *should* exist, as our inquiry is limited to only whether or not records are "in existence and in possession of the ... agency at the time of the right-to-know request." *Moore*, 992 A.2d at 909; *see also* 65 P.S. § 67.705.

[4] The District originally argued that records responsive to Item 5 for security camera footage of the Requester's termination and escort are exempt pursuant to Section 708(b)(7).  However, the Butler Supplemental Attestation states that the District does not possess records responsive to this part of the Request.  Therefore, Item 5 is not addressed in this section.

named employees] regarding my termination" responsive to Item 4 and "directives" exchanged between District administrators discussing the decision to terminate the Requester's employment and the logistics of implementing the termination over a 4-day period responsive to Item 6.

However, although the District made general assertions in its position statement that records responsive to Items 4 and 6 are exempt employment records, the District did not provide detailed evidence to support this exemption or substantiate factual assertions with a statement that can be used by the OOR as evidence in this appeal.

Section 708(b)(7) of the RTKL exempts from disclosure certain records relating to an agency employee, including "[a] performance rating or review," "[w]ritten criticisms of an employee," "[g]rievance material, including documents related to discrimination or sexual harassment," and "[i]nformation regarding discipline, demotion or discharge contained in a personnel file." 65 P.S. §§ 67.708(b)(7)(ii), (vi)-(viii).  However, it does not exempt from disclosure the entirety of a personnel file, and thus the exemption is limited to the categories of records specifically referenced.

Here, the District did not provide an attestation or other evidence in support of any Section 708(b)(7) exemptions.  In fact, other than the general recitation in the District's unsworn position statement that Section 708(b)(7) applies to this matter, the District has not provided any additional evidence to support the application of this exemption. While, on its face, the Request seeks records regarding the termination, there is no evidence that any of these records are contained in a personnel file, which is a required element in the exemption. See 65 P.S. § 67.708(b)(7)(viii). Therefore, the District has failed to sufficiently justify the application of any subsection of Section 708(b)(7) to prevent disclosure of the responsive records.  Thus, the District has failed to meet its burden of proof that Section 708(b)(7) of the RTKL applies to the remaining parts of Items 4 and

6, and, therefore, the District must disclose incident response forms (or similar documents) that are responsive to Item 4 and directives responsive to Item 6.

### 4. The District did not prove that some records are exempt pursuant to Section 708(b)(10)(i)(A)

The District argues that records responsive to Items 1 and 4 are exempt internal, predecisional deliberative records pursuant to Section 708(b)(10).[5] 65 P.S. § 67.708(b)(10). Since the District has proven that some records responsive to Items 1 and 4 do not exist, the only remaining records the District claims are exempt pursuant to Section 708(b)(10) are "[a]ny and all documentation [and] internal assessments" used in reviewing the Requester's April 2024 application for employment responsive to Item 1 and "incident response forms" regarding the Requester's termination responsive to Item 4.

Section 708(b)(10)(i)(A) of the RTKL exempts from disclosure records reflecting:

> [t]he internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations.

65 P.S. § 67.708(b)(10)(i)(A). To withhold a record under Section 708(b)(10)(i)(A), an agency must show: 1) the deliberations reflected are internal to the agency, including representatives; 2) the deliberations reflected are predecisional, i.e., before a decision on an action; and 3) the contents are deliberative in character, i.e., pertaining to a proposed action. *See Kaplin v. Lower Merion Twp.*, 19 A.3d 1209, 1214 (Pa. Commw. Ct. 2011).

---

[5] The District originally argued that records responsive to Item 2 for internal email communications and memos regarding the Requester's application, interview performance and final hiring decision are exempt pursuant to Section 708(b)(10). However, the Butler Supplemental Attestation states that the District does not possess records responsive to this part of the Request. Therefore, Item 2 is not addressed in this section.

To establish that records are deliberative, an agency must show that the information relates to the deliberation of a particular decision. *McGowan v. Pa. Dep't of Envtl. Prot.*, 103 A.3d 374, 378-88 (Pa. Commw. Ct. 2014) (citing *Office of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Commw. Ct. 2013)). The term "deliberation" is generally defined as "[t]he act of carefully considering issues and options before making a decision or taking some action...." BLACK'S LAW DICTIONARY 492 (9th ed. 2009); *see also Heintzelman v. Pa. Dep't of Cmty. & Econ. Dev.*, OOR Dkt. AP 2014-0061, 2014 PA O.O.R.D. LEXIS 254, *aff'd* No. 512 C.D. 2014, 2014 Pa. Commw. Unpub. LEXIS 644 (Pa. Commw. Ct. 2014). Factual material contained in otherwise deliberative documents is required to be disclosed if it is severable from its context. *McGowan*, 103 A.3d at 385-86.

The District asserts a general legal argument that the responsive records are exempt as internal, predecisional deliberations, but the District did not provide evidence to support this contention. In fact, other than the general recitation in the District's unsworn position statement that Section 708(b)(10) applies to this matter, the District has not provided any additional evidence to support the application of this exemption. Thus, the District has failed to meet its burden of proof that Section 708(b)(10) of the RTKL applies to parts of Items 1 and 4, and the District must disclose any and all documentation and internal assessments used in reviewing the Requester's April 2024 application for the Desktop Support Technician position responsive to Item 1 and all incident response forms (or similar documents) that are responsive to Item 4.

As a result, the District is required to disclose the following responsive records to the Requester: Item 1, any and all documentation and internal assessments used in reviewing the Requester's April 2024 application for employment; Item 3, any communication or documentation confirming Craig Butler's removal or reassignment from overseeing the

13

Technology Department; Item 4, incident response forms (or similar documents) written by three specific employees regarding the Requester's termination; and Item 6, directives exchanged between Craig Butler and other District administrators between April 28, 2024, and May 1, 2024, discussing the decision to terminate the Requester's contract on the morning of April 30, 2024; the deactivation of the Requester's District keycard and email; and security or administrative arrangements for the termination event.

## CONCLUSION

For the foregoing reasons, the appeal is **granted in part** and **denied in part**, and the District shall provide records responsive to Items 1, 3, 4 and 6, as stated above, to the Requester within thirty days. This Final Determination is binding on all parties. Within thirty days of the mailing date of this Final Determination, any party may appeal to the Delaware County Court of Common Pleas. 65 P.S. § 67.1302(a). All parties must be served with notice of the appeal. The OOR also shall be served notice and have an opportunity to respond as per Section 1303 of the RTKL. 65 P.S. § 67.1303. However, as the quasi-judicial tribunal adjudicating this matter, the OOR is not a proper party to any appeal and should not be named as a party.[6] All documents or communications following the issuance of this Final Determination shall be sent to oor-postfd@pa.gov. This Final Determination shall be placed on the website at: http://openrecords.pa.gov.

**FINAL DETERMINATION ISSUED AND MAILED:  June 24, 2025**

*/s/ Daneen L. Miller-Smith*

_____
Daneen L. Miller-Smith, Esq.
Appeals Officer

_____
[6] *Padgett v. Pa. State Police*, 73 A.3d 644, 648 n.5 (Pa. Commw. Ct. 2013).

**EXHIBIT S-2: June 18, 2025 Attestation of Craig A. Butler – OOR
Dkt. AP 2025-1449**

This affidavit was submitted in response to the above appeal. In it, Craig
Butler affirms that the District holds no documentation relating to
Plaintiff's April 2024 interview—even though it was conducted in
person by multiple senior officials, who took visible notes. Mr. Butler
also confirms there are no internal emails or memos discussing
Plaintiff's termination, no incident response documentation, and no
security footage, despite Plaintiff's building access being revoked prior
to his arrival and administrators treating his termination as a security
event. Crucially, Mr. Butler discloses that as of June 2024, he is no
longer responsible for oversight of the Technology Department material
shift following the incident. This sub-exhibit demonstrates a breakdown
in internal procedures and transparency, supporting Plaintiff's Monell
claim by showing a pattern of non-documentation and retaliatory control
over hiring decisions.

**COMMONWEALTH OF PENNSYLVANIA**
**OFFICE OF OPEN RECORDS**

In the Matter of                     :

                                    :

CHARLES GIBBONE             :

Requester,                   :     Docket No.: AP 2025-1341

                                      :

v.                                  :

                                      :

SOUTHEAST DELCO SCHOOL    :

DISTRICT,                   :

Respondent.

**ATTESTATION OF CRAIG A. BUTLER**

1.     I, Craig A. Butler, serve as the Chief Operating and Financial Officer ("COO/CFO") and Open Records Officer ("ORO") for Southeast Delco School District ("School District").

2.     This attestation is being submitted in response to the Office of Open Records' June 24, 2025 Final Determination directing the School District to provide "records responsive to Items 1, 3, 4 and 6 [of the March 28, 2025 RTKL request], as stated above, to the Requester within thirty days."

3.     The OOR specified these items as follows: "Item 1, any and all documentation and internal assessments used in reviewing the Requester's April 2024 application for employment; Item 3, any communication or documentation confirming Craig Butler's removal or reassignment from overseeing the Technology Department; Item 4, incident response forms (or similar documents) written by three specific employees [David Jackson, Racquel Irons or Latarsha Threadgill] regarding the Requester's termination; and Item 6, directives exchanged between Craig Butler and other District administrators between April 28, 2024, and May 1, 2024, discussing the decision to terminate the Requester's contract on the morning of April 30, 2024; the deactivation of the Requester's District keycard and email; and security or administrative arrangements for the termination event."

4.    I conducted a good-faith search for records responsive to Items 1, 3, 4 and 6, as specified by the OOR, and respond to each of the foregoing Items as follows.

5.    Item 1: Mr. Gibbone's application was viewed, but not selected for consideration. I have found that no documentation or internal assessments as specified by the OOR exists.

6.    Item 3: My reassignment from overseeing the Technology Department was part of a realignment of positions that included shifting this responsibility to the Assistant Superintendent for Curriculum and Instruction and transferring the responsibility of overseeing the Security Department to me, as explained by Superintendent Yamil Sanchez at the June 27, 2024 Business Meeting of the Southeast Delco Board of School Directors. Dr. Sanchez' statements and a display of the updated Organizational Chart for the School District can be reviewed at https://www.youtube.com/watch?v=FP-aT6kAMx8&t=723s -- appearing between minutes 11:40 and 13:00 of the School Board meeting video replay. I have found no other communication or documentation confirming my reassignment as specified by the OOR.

7.    Item 4: No incident response forms (or similar documents) as specified by the OOR exist.

8.    Item 6: No records of directives exchanged between myself and other district administrators as specified by the OOR exist. For information, there is an April 30, 2024 email confirming the collection of Requester's "keys bag and laptop [and] all his access to district software has been disabled." A copy is attached hereto.

9.    I personally do not possess any other records and have no firsthand knowledge of the whereabouts of any such other records as specified by the OOR.

10.   I, Craig A. Butler, do hereby swear that the above factual statements are true and correct to the best of my knowledge and belief. I make these statements knowing that they are

2

subject to penalty for perjury under the laws of the United States of America.

Date: July 23, 2025          Signature: _____
                                              Craig A. Butler

3

7/21/25, 2:54 PM                                   Mail - Craig Butler - Outlook

 Outlook

Re: Charles Gibbone contract services terminated

**From** Craig Butler <cbutler@sedelco.org>
**Date** Tue 4/30/2024 11:11 AM
**To**      Sunni Jennings <sjennings@sedelco.org>; Dominic Vozzelli <dvozzelli@sedelco.org>; Evan Nurse
         <enurse@sedelco.org>; Matt Miller <mmiller@sedelco.org>; Stephanie Woolley <swoolley@sedelco.org>;
         Richard Sherin <rsherin@sedelco.org>; Latarsha Threadgill <lthreadgill@sedelco.org>; Jeremiah Rusnov
         <jrusnov@sedelco.org>
**Cc**     Yamil Sanchez <ysanchez@sedelco.org>; Jeffrey Ryan <jryan@sedelco.org>; Guy Lowery
         <glowery@sedelco.org>; Stephanie Woolley <swoolley@sedelco.org>

Good morning Mr. Jennings:

Thank you to you and Mr. Miller for your help and assistance concerning this matter. Thank you to the
followings team members for being present, at APHS, this morning:

            Mrs. Latarsha Threadgill
            Mr. David Jackson
            Mr. Sunni Jennings

Best,

Craig

**From:** Sunni Jennings <sjennings@sedelco.org>
**Sent:** Tuesday, April 30, 2024 10:53 AM
**To:** Dominic Vozzelli <dvozzelli@sedelco.org>; Evan Nurse <enurse@sedelco.org>; Matt Miller
<mmiller@sedelco.org>; Craig Butler <cbutler@sedelco.org>; Stephanie Woolley <swoolley@sedelco.org>;
Richard Sherin <rsherin@sedelco.org>; Latarsha Threadgill <lthreadgill@sedelco.org>; Jeremiah Rusnov
<jrusnov@sedelco.org>
**Subject:** Charles Gibbone contract services terminated

Good Morning Charles Gibbone service contract have been terminated effective immediately. I have
collected his keys bag and laptop all his access to district software has been disabled

Thank you.

Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

**EXHIBIT T-1: Final Determination – OOR Dkt. AP 2022-2415
(DiPaulo v. Southeast Delco School District)**

This sub-exhibit contains the Final Determination from the Office of Open Records in Dkt. AP 2022-2415, in which the district initially denied access to records on the basis that the requester had used an incorrect email address for Open Records Officer Craig Butler. Upon appeal, the requester demonstrated that the request had been sent to the correct address listed on the District's RTKL portal. In his sworn affidavit, Mr. Butler confirmed that the request was filtered into his spam folder, effectively conceding receipt. This incident evidences the district's failure to ensure reliable intake and handling of lawful record requests, supporting Plaintiff's Monell claim by highlighting systemic flaws in RTKL compliance under Butler's leadership and contributing to the pattern of procedural opacity encountered by Plaintiff. This appeal was dismissed as premature.



# pennsylvania

## OFFICE OF OPEN RECORDS

### <u>FINAL DETERMINATION</u>

IN THE MATTER OF                           :
                                           :
SHARON DIPAOLO AND SIEGEL                  :
JENNINGS CO., LPA,                         :
Requester                                  :
                                           :
v.                                         :    **Docket No.: AP 2022-2415**
                                           :
SOUTHEAST DELCO SCHOOL                     :
DISTRICT,                                  :
Respondent                                 :

The Office of Open Records ("OOR") received the above-captioned appeal under the Right-to-Know Law ("RTKL"), 65 P.S. §§ 67.101 *et seq.* Upon review of the file, the appeal is **dismissed** for the following reason:

On September 22, 2022, Sharon DiPaolo, Esq. and Seigel Jennings Co., LPA (collectively "Requester") emailed a RTKL request ("Request") to the Southeast Delco School District ("District"), seeking records related to the District's tax assessment appeals.

On October 19, 2022, the Requester filed an appeal with the OOR, asserting that the Request had been deemed denied. *See* 65 P.S. § 67.901. The OOR invited both parties to supplement the record and directed the District to notify any third parties of their ability to participate in the appeal. *See* 65 P.S. § 67.1101(c).

On October 26, 2022, the Requester submitted a position statement, reiterating that the requested records are publicly available. On November 1, 2022, noting that the record had closed

1

without a submission from the District, the OOR extended the record; when no submission was received by November 7, 2022, an OOR administrative officer contacted the District. On November 21, 2022, the District submitted a position statement, arguing that the District had not received the Request because it was sent to an incorrect email address. On November 28, 2022, in response to the OOR's request for evidence, the District submitted a statement made under the penalty of unsworn falsification to authorities by Craig Butler, the District's Open Records Officer, who attests to the foregoing. However, on the same day, the Requester submitted a copy of the email transmitting the Request, which reflects that the Request was actually emailed to the correct address. On December 5, 2022, in response to the OOR's request for clarification, the District submitted a supplemental attestation, affirming that the District did not receive the Request.

The supplemental Butler attestation affirms that the District believed that the reason it did not receive the Request was that it was sent to an incorrect email address. Butler Attestation at ¶ 3. However, upon the Requester's submission of the transmitting email, which was sent to the correct address, the District performed an additional search and discovered for the first time that the Request was diverted to the District's Spam/Junk Folder.[1] *Id.* at ¶¶ 4-5. The District affirms that it never actually received the Request and only became aware of it upon receiving notification from the OOR. *Id.* at ¶ 6.

Under the RTKL, an affidavit or statement made under the penalty of perjury may serve as sufficient evidentiary support. *See Sherry v. Radnor Twp. Sch. Dist.*, 20 A.3d 515, 520-21 (Pa. Commw. Ct. 2011); *Moore v. Off. of Open Records*, 992 A.2d 907, 909 (Pa. Commw. Ct. 2010). In the absence of any evidence that the District has acted in bad faith, "the averments in the

---

[1] The confusion stems from the fact that the OOR sent the Notice of Appeal to rtk/request@sedelco.org, when the correct address is actually rtkrequest@sedelco.org.

[attestation] should be accepted as true." *McGowan v. Pa. Dep't of Env't Prot.*, 103 A.3d 374, 382-83 (Pa. Commw. Ct. 2014) (citing *Off. of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Commw. Ct. 2013)).

Section 901 of the RTKL provides that: "[t]he time for response shall not exceed five business days from the date the written request is received by the open-records officer for an agency." 65 P.S. § 67.901. Meanwhile, Section 1101(a)(1) states that an appeal may be filed "within 15 business days of the mailing date of the agency's response or within 15 business days of a deemed denial." *See* 65 P.S. § 67.1101(a).

Here, the District's Open Records Officer did not actually receive the Request prior to the filing of the appeal. Accordingly, the appeal is **dismissed as premature**. However, nothing in this Final Determination prevents the Requester from re-filing the Request and appealing any resulting denial pursuant to the requirements of 65 P.S. § 67.1101(a)(1).

For the foregoing reasons, the District is not required to take any further action. This Final Determination is binding on all parties. Within thirty days of the mailing date of this Final Determination, any party may appeal to the Delaware County Court of Common Pleas. 65 P.S. § 67.1302(a). All parties must be served with notice of the appeal. The OOR also shall be served notice and have an opportunity to respond according to Section 1303 of the RTKL. However, as the quasi-judicial tribunal adjudicating this matter, the OOR is not a proper party to any appeal and should not be named as a party.[2] This Final Determination shall be placed on the website at: http://openrecords.pa.gov.

---

[2] *See Padgett v. Pa. State Police*, 73 A.3d 644, 648 n.5 (Pa. Commw. Ct. 2013).

**FINAL DETERMINATION ISSUED AND MAILED:  December 8, 2022**

*/s/ Blake Eilers*
Blake Eilers, Esq.
Appeals Officer

Sent via email to:  Sharon DiPaulo, Esq., Ryan Kammerer, Esq., Autumn Payton, Robert George,
Esq. and Craig Butler

4

**EXHIBIT T-2: Final Determination – OOR Dkt. AP 2023-0220
(DiPaulo v. Southeast Delco School District)**

This sub-exhibit contains the follow-up Final Determination in Dkt. AP
2023-0220, in which the same requester resubmitted their request after
the original was "missed." Although the request was properly filed, the
District again failed to participate in the appeal in a timely manner.
Butler or his legal counsel replied approximately one month after the
appeal deadline, consistent with the same delay tactics the Plaintiff
experienced. This substantiates Plaintiff's claim that the District engaged
in systemic delay and evasion patterns under Butler's leadership,
directly tying into Plaintiff's broader Monell theory of institutional
retaliation and due process violations.



# pennsylvania

### OFFICE OF OPEN RECORDS

## FINAL DETERMINATION

IN THE MATTER OF      :
              :
**SHARON DIPAULO AND SIEGEL** :
**JENNINGS CO., LPA,**     :
**Requester**        :
              :
**v.**           : **Docket No: AP 2023-0220**
              :
**SOUTHEAST DELCO SCHOOL**  :
**DISTRICT,**        :
**Respondent**       :

## FACTUAL BACKGROUND

On January 2, 2023, Sharon DiPaulo, Esq. and Siegel Jennings Co., LPA (collectively "Requester") filed a request ("Request") with the Southeast Delco School District ("District") pursuant to the Right-to-Know Law ("RTKL"), 65 P.S. §§ 67.101 *et seq.*, seeking:

1. A copy of [the District's] Policy for selecting properties for tax assessment appeals for tax year 2023.

2. Any and all documents related to [the] District's Policy for selecting assessment appeals.

3. Any and all documents related to [the] District's methodology for selecting properties on which [the] District filed tax assessment appeals for tax year 2023.

4. Identification by address and parcel of all properties on which [the] District filed tax assessment appeals to the Board of Assessment for tax year 2023.

5. The name of any appraiser or consultant who provided any information to the [the] District regarding the values of properties within the District for tax year 2023.

6. Any and all documents obtained or possessed by [the] District containing information pertaining to Delaware County tax parcel 15-00-02049-00.

When the District failed to respond to the Request by January 9, 2023, it was deemed denied on that date. *See* 65 P.S. § 67.901.

On January 30, 2023, the Requester filed an appeal with the Office of Open Records ("OOR"), stating grounds for disclosure.[1] The Requester notes that this is the second time the Request has been deemed denied and argues that responsive records should be publicly available.[2] The OOR invited both parties to supplement the record and directed the District to notify any third parties of their ability to participate in this appeal. *See* 65 P.S. § 67.1101(c).[3]

On February 9, 2023, the Requester submitted a position statement, reiterating its previously asserted arguments. However, the District failed to make a timely submission, so the OOR reopened the record. On February 23, 2023, the District's attorney noted that he had not been informed of the appeal and requested an extension of time to respond, which the OOR granted. On February 28, 2023, the District submitted a position statement, noting that the District will provide records responsive to Items 1 and 3-6, except for those "which may be exempt from disclosure pursuant to Section 708 of the [RTKL], or that which is otherwise deemed to be confidential and/or privileged communications." However, the District provided no evidence in

---

[1] The Requester provided the OOR with additional time to issue a final determination in this matter. *See* 65 P.S. § 67.1101(b)(1).

[2] The Request was a re-filing of a request filed on September 22, 2022. In OOR Dkt. AP 2022-2415, the OOR dismissed the appeal of this earlier request as premature. Though the District averred that it had not received the request because it was directed to the incorrect email address, upon the Requester's observation that the request had actually been sent to the correct address, the District's Open Records Officer attested that the request had been diverted to his junk email folder.

[3] While the heading of Sections 3 and 6 of the District's position statement reads "the District Objects to [the Items] as overly broad," the bodies of those Sections state that the District does *not* object and will provide responsive records "within the appropriate and applicable time-frame." It is not clear what timeframe the District believes to be appropriate, as it has failed to respond to the Request, make a timely submission on appeal or produce any evidence.

support of any exemptions or privileges. Finally, the District argues that Item 2 is insufficiently specific, 65 P.S. § 67.703.

## LEGAL ANALYSIS

The District is a local agency subject to the RTKL. 65 P.S. § 67.302. Records in the possession of a local agency are presumed to be public, unless exempt under the RTKL or other law or protected by a privilege, judicial order or decree. *See* 65 P.S. § 67.305. As an agency subject to the RTKL, the District is required to demonstrate, "by a preponderance of the evidence," that records are exempt from public access. 65 P.S. § 67.708(a)(1). Preponderance of the evidence has been defined as "such proof as leads the fact-finder ... to find that the existence of a contested fact is more probable than its nonexistence." *Pa. State Troopers Ass'n v. Scolforo*, 18 A.3d 435, 439 (Pa. Commw. Ct. 2011) (*quoting Pa. Dep't of Transp. v. Agric. Lands Condemnation Approval Bd.*, 5 A.3d 821, 827 (Pa. Commw. Ct. 2010)).

### 1. Item 2 is insufficiently specific

The District argues that Item 2 is not sufficiently specific to enable it to identify responsive records. *See* 65 P.S. § 67.703. In determining whether a particular request under the RTKL is sufficiently specific, the OOR applies a three-part balancing test set forth by the Commonwealth Court in *Pennsylvania Department of Education v. Pittsburgh Post-Gazette*, 119 A.3d 1121 (Pa. Commw. Ct. 2015), and *Carey v. Pennsylvania Department* of Corrections, 61 A.3d 367, 372 (Pa. Commw. Ct. 2013). The OOR examines to what extent the request identifies (1) the subject matter of the request; (2) the scope of documents sought; and (3) the timeframe for which records are sought. *Dep't of Educ.*, 119 A.3d at 1125.

First, "[t]he subject matter of the request must identify the 'transaction or activity' of the agency for which the record is sought." *Id.* The subject matter should provide a context to narrow

the search. *Id.* (citing *Montgomery Cnty. v. Iverson*, 50 A.3d 281, 284 (Pa. Commw. Ct. 2012) (*en banc*)). Second, the scope of the request must identify a discrete group of documents (e.g., type or recipient). *Id.*

Finally, "[t]he timeframe of the request should identify a finite period of time for which records are sought." *Id.* at 1126. "The timeframe prong is ... the most fluid of the three prongs, and whether or not the request's timeframe is narrow enough is generally dependent upon the specificity of the request's subject matter and scope." *Id.* Failure to identify a finite timeframe will not render an otherwise sufficiently specific request overbroad. *See Pa. Hous. Fin. Agency v. Ali*, 43 A.3d 532, 536 (Pa. Commw. 2012) (concluding that request for proposals and sales agreements relating to two specific projects that did not specify a timeframe was sufficiently specific). Similarly, an extremely short timeframe will not rescue an otherwise overbroad request. *Cf. Easton Area Sch. Dist. v. Baxter*, 35 A.3d 1259, 1265 (Pa. Commw. 2011) (finding request for all emails sent or received by any school board member in thirty-day period to be sufficiently specific because of short timeframe), *appeal denied*, 54 A.3d 350 (Pa. 2012). None of these factors are dispositive; instead, the Commonwealth Court has emphasized the importance of a "flexible, case by case, contextual application of the test." *Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1145 (Pa. Commw. Ct. 2017).

Here, Item 2 contains a broad scope, seeking "any and all" documents. A request for a broad category of documents, such as all records, may be sufficiently specific if confined to a particular recipient or recipients. *Dep't of Educ.*, 119 A.3d at 1125. In *Carey*, the Commonwealth Court found that request essentially seeking all records related to an inmate transfer was sufficiently specific despite its broad scope because it related to a subject well-known to the agency and contained a limited timeframe. 61 A.3d at 372; *see also Pa. Dep't of Conservation and Natural*

4

*Res. v. Vitali*, No. 1013 C.D. 2014, 2015 Pa. Commw. Unpub. LEXIS 479 (Pa. Commw. Ct. 2015) (finding that a request seeking "all [agency] records from October 2010 until [March 5, 2014] that related to [the Governor's] budget proposal to raise $75 million through non-surface impact drilling on Commonwealth-owned land" was sufficiently specific because it contained a finite timeframe and a very specific subject matter).

While Item 2 does identify the District's policy as the subject matter, it seeks all records "related to" that policy. Thus, the Request does not identify a particular District transaction or activity. Identifying whether a given record is "related" to the District's policy would require the District to make judgment calls as to whether a given record is actually responsive. *See Dep't of Envtl. Prot. v. Legere*, 50 A.3d 260, 264-265 (Pa. Commw. Ct. 2012) (finding that a request that would require an agency to review all potentially responsive files and "make judgments as to the relation of the documents to the specific request" would be insufficiently specific). The OOR has repeatedly acknowledged that requests for all documents related to a policy are insufficiently specific where the request identifies no senders or recipients. *See, e.g., Ackert v. Phila. Sch. Dist.*, OOR Dkt. AP 2022-0046, 2022 PA O.O.R.D. LEXIS 1194 (finding that a request for all agency records related to a policy was insufficiently specific); *Behar v. Lwr. Merion Sch. Dist.*, OOR Dkt. AP 2021-2268, 2021 PA O.O.R.D. LEXIS 2645 (same).

Finally, Item 2 lists no timeframe. The OOR notes that four of the five other Items of the Request specify that they pertain to tax year 2023. *See Montgomery Cnty. v. Iverson*, 50 A.3d 281, 284 (Pa. Commw. Ct. 2012) ("the specificity of a request must be construed in the request's context, rather than envisioning everything the request might conceivably encompass."). Although both Items reference a capitalized Policy, the District's position statement suggests that the District has concluded that Item 2 is not limited to the timeframe contained in Item 1. An agency

5

may interpret the meaning of a request for records, but that interpretation must be reasonable. *See Bradley v. Lehighton Area Sch. Dist.*, OOR Dkt. AP 2021-0333, 2021 PA O.O.R.D. LEXIS 715; *Ramaswamy v. Lwr. Merion Sch. Dist.*, OOR Dkt. AP 2019-1089, 2020 PA O.O.R.D. LEXIS 2095. The OOR must determine whether or not the agency's actual interpretation of a request is reasonable. *Ramaswamy*, 2020 PA O.O.R.D. LEXIS 2095. The OOR determines this from the text and context of the request alone, as neither the OOR nor the requester is permitted to alter a request on appeal. *See McKelvey v. Off. of the Att'y Gen.*, 172 A.3d 122, 127 (Pa. Commw. Ct. 2016); *Smith Butz, LLC v. Dep't of Envtl. Prot.*, 142 A.3d 941, 945 (Pa. Commw. Ct. 2016). As it is not evident whether the omission of a timeframe from this Item was intentional, the OOR concludes that the District's interpretation is reasonable. However, even assuming for the sake of argument that Item 2 was limited to tax year 2023, the fact remains that it does not identify a particular transaction or activity of the District.

In light of its broad scope and failure to identify a subject matter, its omission of an express timeframe means that Item 2 does not provide adequate context to enable the District to conduct a meaningful search for responsive records. As such, it is insufficiently specific. *See* 65 P.S. § 67.703. However, nothing in this Final Determination prevents the Requester from filing a new request, clarifying the records she seeks.

## 2. The District may not withhold records responsive to Items 1 and 3-6

The District argues that certain records may be exempt or privileged, but it fails to provide any evidence. Unsworn statements or statements of counsel, such as the District's position statement, are not competent evidence under the RTKL. *See Off. of the Governor v. Davis*, 122 A.3d 1185, 1193-94 (Pa. Commw. 2015) (*en banc*) (holding that an "unsworn position statement does not constitute evidence. Position statements are akin to briefs or proposed findings of fact,

6

which, while part of the record, are distinguishable from the *evidentiary* record.") (emphasis in original) (citation omitted); *Housing Auth. of the City of Pittsburgh v. Van Osdol*, No. 795 C.D. 2011, 2012 Pa. Commw. LEXIS 87 (Pa. Commw. Ct. 2012).

While evidence may not be required when the exemption is clear from the face of the record, this is not the case in the present matter. *See Off. of the Governor v. Davis*, 122 A.3d 1185, 1192 (Pa. Commw. Ct. 2015) (*en banc*); *Pa. Game Comm'n v. Fennell*, 149 A.3d 101 (Pa. Commw. Ct. 2016) (holding that the OOR must consider uncontradicted statements in the appeal filing when construing exemptions). As the Requester argues, the requested records pertain to "official actions," which the Sunshine Act requires to be taken at public meetings. *See* 65 Pa.C.S. § 703 (defining "official action").

Furthermore, the District's position statement does not even describe what responsive records may exist, let alone why they may be exempt or privileged. Indeed, there is no evidence that the District has even attempted to locate responsive records.[4] As such, the District has failed to meet its burden of proving that any responsive records are privileged or otherwise exempt from disclosure. *See* 65 P.S. § 67.305.

---

[4] The OOR cautions the District that a reviewing court may find that its actions rise to the level of bad faith. *See* 65 P.S. § 67.1304(a) (stating that a court "may award reasonable attorney fees and costs of litigation … if the court finds … the agency receiving the … request willfully or with wanton disregard deprived the requester of access to a public record … or otherwise acted in bad faith."; 65 P.S. § 67.1305 (authorizing a court to "impose a civil penalty of not more than $1,500 if an agency denied access to a public record in bad faith."; *Off. of the Dist. Atty. of Phila. v. Bagwell*, 155 A.3d 1119, 1140-41 (Pa. Commw. Ct. 2017) ("An example of bad faith is a local agency's failure to comply with the mandate of Section 901 of the RTKL, which requires that a local agency make a good faith search for information responsive to a request and determination of whether that information is public.").

7

## CONCLUSION

For the foregoing reasons, the Requester's appeal is **granted in part** and **denied in part**, and the District is required conduct a good faith search and provide all records responsive to Items 1 and 3-6 within thirty days. This Final Determination is binding on all parties. Within thirty days of the mailing date of this Final Determination, any party may appeal to the Delaware County Court of Common Pleas. 65 P.S. § 67.1302(a). All parties must be served with notice of the appeal. The OOR also shall be served notice and have an opportunity to respond as per Section 1303 of the RTKL. However, as the quasi-judicial tribunal adjudicating this matter, the OOR is not a proper party to any appeal and should not be named as a party.[5] This Final Determination shall be placed on the OOR website at: http://openrecords.pa.gov.

**FINAL DETERMINATION ISSUED AND MAILED: March 29, 2023**

*/s/ Blake Eilers*
Blake Eilers, Esq.
Appeals Officer

Sent via email to: Sharon DiPaulo, Esq., Robert George, Esq., Craig Butler and Autumn
                       Payton

---

[5] *See Padgett v. Pa. State Police*, 73 A.3d 644, 648 n.5 (Pa. Commw. Ct. 2013).

**EXHIBIT U-1: August 2023 Budgetary Purchase Order Allocating $87,000 to Robert Half for Technology Staffing**

This budgetary purchase order, dated August 3, 2023, shows that Southeast Delco School District allocated **$87,000** for services rendered by Robert Half, the contractor providing the Plaintiff's on-site IT support. At a vendor rate of $40/hour and a 35-hour workweek, this funding would have covered over **14 months** of full-time services — extending well past the Plaintiff's **April 30, 2024** termination. The Plaintiff was the only Robert Half technician assigned to the district's technology team. This document directly undercuts any assertion that Plaintiff's termination was due to the expiration of the contract or lack of budgetary capacity, reinforcing that the decision to terminate was not financially compelled, but retaliatory.

**************P U R C H A S E   O R D E R**************

```
SHIP TO: ESC                         PURCHASE ORDER NUMBER    2100635
         1560 DELMAR DRIVE
         FOLCROFT, PA. 19032         VENDOR FAX -    -    -
                                                            08/14/23
                                     BILL TO: Southeast Delco School Distric
                                              1560 Delmar Drive
         598534                               Folcroft PA 19032
         Robert Half                          610-522-4300
         12400 Collections Center Dr                53977
         Chicago IL 60693
```

```
                              BUYER:  TLUCAS
                              SHIP BY:    ASAP
```

--------------------------------------------------------------------
| Description | UOM | Quanity | Unit Price | Amount |
--------------------------------------------------------------------

```
    IT                     EA      1     87000.00    87000.00
   Blanket

    ACCOUNT                          AMOUNT
    10-2832-610-000-00-00-00         87,000.00

  ↘ Gold copy
```

MAR , 8 REC'D

```
   ***LESS TOTAL DISCOUNTS***              0.00

   ***TOTAL PURCHASE ORDER***           87000.00
```

Approval _____

## EXHIBIT U-2: Final Determination, OOR Dkt. AP 2025-1598 – Lack of Supporting Records for Budgetary Allocation

The Plaintiff had requested documentation such as staffing sheets, projected hours, internal rate logs, or correspondence justifying the BPO amounts. The District admitted no such records existed. This absence of basic planning documentation for staffing expenditures — especially concerning the Plaintiff, who was the sole Robert Half technician during the funding period — illustrates reckless administrative oversight and supports the claim that Plaintiff's termination was not based on operational or fiscal necessity, but was instead arbitrary and retaliatory.



# pennsylvania
## OFFICE OF OPEN RECORDS
### FINAL DETERMINATION

IN THE MATTER OF              :
                                   :

**CHARLES GIBBONE,**
**Requester**                        :

                                   :

**v.**                             :  **Docket No: AP 2025-1598**

                                   :

**SOUTHEAST DELAWARE COUNTY**    :
**SCHOOL DISTRICT,**                 :
**Respondent**                      :

## FACTUAL BACKGROUND

On May 1, 2025, Charles Gibbone ("Requester") submitted a request ("Request") to the

Southeast Delaware County School District ("District") pursuant to the Right-to-Know Law

("RTKL"), 65 P.S. §§ 67.101 *et seq.*, seeking:

> [1] Please provide records created or maintained by the District between July 1, 2023, and September 30, 2023, specifically relating to the budgeting, internal planning, and approval process that resulted in the allocation of $127,000 to Robert Half for IT contractor services in August under the following purchase orders:
>
> $40,000 Blanket Purchase Order (PO# 2102339, dated 08/07/23)
> $87,000 Blanket Purchase Order (PO# 2100635, dated 08/14/23)
>
> [2] All internal documents, including but not limited to budget drafts, staffing projections, cost analyses, or financial approvals, specifically justifying the $40,000 BPO (PO# 2102339) for Robert Half IT contractor services.
>
> [3] All internal documents, including but not limited to budget drafts, staffing projections, cost

1

analyses, or financial approvals, specifically justifying the $87,000 BPO (PO# 2100635) for Robert Half IT contractor services.

[4] All school board meeting agendas, minutes, resolutions, presentations, or attachments that specifically discuss, approve, or reference either of the above BPOs or the combined $127,000 allocation for Robert Half IT contractor services.

[5] All internal emails, memos, or handwritten notes involving the Technology Department, Business Office (including but not limited to Tamika Lucas or Craig Butler), Sunni Jennings, or the Superintendent, that reference or discuss the need, scope, or funding approval of the $127,000 allocation to Robert Half for IT contractors- Specifically in August of 2023.

[6] All staffing requests, internal rate sheets, cost estimates, or projected hour breakdowns used to determine or justify specifically putting aside $127,000 for Robert Half IT services.

On June 9, 2025, following a thirty-day extension, 65 P.S. § 67.902(b), the District denied the Request, arguing that Items 1-3 and 6 are insufficiently specific under Section 703 of the RTKL, 65 P.S. § 67.703, that Items 4-5 seek records that do not exist, and additionally that any records responsive to Item 6 would be exempt as internal, predecisional deliberations. 65 P.S. § 67.708(b)(10)(i)(A).

The same day, the Requester appealed to the Office of Open Records ("OOR"), challenging the denial and stating grounds for disclosure. The OOR invited both parties to supplement the record and directed the District to notify any third parties of their ability to participate in this appeal. 65 P.S. § 67.1101(c).

On June 20, 2025, the District submitted a position statement reiterating its arguments. In support of its denial of Items 4-5, the District submitted the attestation of its Open Records Officer, Craig Butler, who attests that he conducted a search and that no responsive records exist.

## LEGAL ANALYSIS

The District is a local agency subject to the RTKL. 65 P.S. § 67.302. Records in the possession of a local agency are presumed to be public, unless exempt under the RTKL or other

2

law or protected by a privilege, judicial order or decree. *See* 65 P.S. § 67.305. As an agency subject to the RTKL, the District is required to demonstrate, "by a preponderance of the evidence," that records are exempt from public access. 65 P.S. § 67.708(a)(1). Preponderance of the evidence has been defined as "such proof as leads the fact-finder … to find that the existence of a contested fact is more probable than its nonexistence." *Pa. State Troopers Ass'n v. Scolforo*, 18 A.3d 435, 439 (Pa. Commw. Ct. 2011) (quoting *Pa. Dep't of Transp. v. Agric. Lands Condemnation Approval Bd.*, 5 A.3d 821, 827 (Pa. Commw. Ct. 2010)). Likewise, "[t]he burden of proving a record does not exist...is placed on the agency responding to the right-to-know request." Hodges v. Pa. Dep't of Health, 29 A.3d 1190, 1192 (Pa. Commw. Ct. 2011).

### 1. The Request is sufficiently specific in part

The District argues that Items 1-3 and 6 are insufficiently specific because they have an unclear scope and subject matter. Section 703 of the RTKL provides, in part, that "[a] written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested …." 65 P.S. § 67.703. When determining whether a particular request is sufficiently specific, the OOR uses the nonexclusive, multifactor test employed by the Commonwealth Court in *Pa. Dep't of Educ. v. Pittsburgh Post-Gazette*, 119 A.3d 1121 (Pa. Commw. Ct. 2015). *See Pa. Office of the Governor v. Brelje*, 312 A.3d 928 (Pa. Commw. Ct. 2024).

First, "[t]he subject matter of the request must identify the 'transaction or activity' of the agency for which the record is sought[,]" and "should provide a context to narrow the search." *Pittsburgh Post-Gazette*, 119 A.3d at 1125 (quoting 65 P.S. § 67.102; *Montgomery Cnty. v. Iverson*, 50 A.3d 281, 284 (Pa. Commw. Ct. 2012)). Second, "[t]he scope of the request must identify 'a discrete group of documents, either by type … or by recipient.'" *Id.* (quoting *Carey v.*

*Pa. Dep't of Corr.*, 61 A.3d 367, 372 (Pa. Commw. Ct. 2013). Finally, "[t]he timeframe of the request should identify a finite period of time for which records are sought." *Id.* at 1126 (citing *Carey*, 61 A.3d at 372). "The timeframe prong is, however, the most fluid of the three prongs, and whether or not the request's timeframe is narrow enough is generally dependent upon the specificity of the request's subject matter and scope." *Id.*

The above factors are intended "to facilitate an analysis in order to determine whether an agency can ascertain which records are being requested.... The subject matter, scope, and timeframe of a request are flexible, analytical elements, not evidentiary requirements." *Pa. Dep't of Health v. Shepherd*, No. 377 C.D. 2021, 2022 Pa. Commw. Unpub. LEXIS 207, *6-7 (Pa. Commw. Ct. May 13, 2022), *appeal denied*, No. 334 MAL 2022, 2022 Pa. LEXIS 1862 (Pa. 2022) (citations omitted). Furthermore, each factor must be considered according to a case-specific analysis, rather than simply comparing cases broadly. *See Brelje*, 312 A.3d at 937-38. Finally, we must analyze the entirety of a request, as it is possible that portions of a request are insufficiently specific, while other portions provide sufficient guidance. *See Pa. State*, 995 A.2d at 517 (noting "the valid part of the request was included in a laundry list of requested materials ....").

Items 1-3 of the Request seek (1) records "relating to the budgeting, internal planning, and approval process which resulted in the allocation of $127,000 to Robert Half for IT contractor services [...][,]" (2) "all internal documents, including but not limited to budget drafts, staffing projections, cost analyses or financial approvals specifically justifying the $40,000 BPO[1] [...] for Robert Half's IT contractor services[,]" and (3) "all internal documents [...] specifically justifying the $87,000 BPO [...] for Robert Half's IT contractor services[.]" Item 6 of the Request seeks

---

[1] An acronym for "Business Process Outsourcing," the practice of hiring a contractor to perform some duty rather than doing so in-house.

"[a]ll staffing requests, internal rate sheets, cost estimates, or projected hour breakdowns used to determine or justify specifically putting aside $127,000 for Robert Half IT services." The District argues that these Items do not specify a sufficient scope or subject matter to permit the District to identify responsive records.

For Items 1-3, the Request possesses no explicit timeframe, but one may be inferred from the contracts referenced. As the District notes, each Item also has a broad scope, seeking "all internal documents" concerning each subject matter; although each Item provides a list of types of records which would be responsive, they are clear that these are meant to be examples of responsive records and not limitations on the scope of the Request. Item 6 has a more defined scope, seeking only four types of documents. In either case, while the scope of the Request is broad, it is not undefined, and so the OOR must turn to whether the Request's subject matter provides sufficient specificity.

The subject matter of each Item of the Request is one of several contracts with Robert Half for IT services, in each case requesting records used to "justify" the figures in the contract. Plainly, the intent of the Request is to obtain financial and administrative records which show the conditions or costs on which the final contractual amounts were based. The District objects to this as a subject matter, arguing that it requires the District to review its records and make independent judgments regarding whether any particular record supported the ultimate figure.

For Items 1-3 of the Request, the OOR agrees that the subject matter and scope are too broad to support a finding of specificity. These Items of the Request have no real limitation on scope and would require the District to review an unspecified universe of internal documents and decide whether each one supports or justifies the identified contract for IT services. Item 6, however, limits the scope to four particular types of documents: staffing requests, internal rate

5

sheets, cost estimates and projected hour breakdowns. To the extent that the District maintains each type of document, they are almost certainly stored in a central administrative office, limiting the universe of records which the District must search. Although Item 6 does use the word "justify", it also asks for records which were consulted to "determine" the figure- and this allows the District to ask the employee or employees involved in the contract to simply identify which of the specified types of records they reviewed when setting the number. As a result, Item 6 of the Request is sufficiently specific insofar as it seeks four particular types of records which were consulted during the process of paying Robert Half $127,000 for IT services.

### 2. The District has not demonstrated that Section 708(b)(10)(i)(a) applies

The District argues that records responsive to Item 6 of the Request are likely to be exempt under Section 708(b)(10)(i)(a) of the RTKL. For 708(b)(10)(i)(A) of the RTKL to apply, three elements must be satisfied: 1) "[t]he records must...be 'internal' to a governmental agency"; 2) the deliberations reflected must be predecisional, i.e., before a decision on an action; and 3) the contents must be deliberative in character, i.e., pertaining to proposed action. *See Kaplin v. Lower Merion Twp.*, 19 A.3d 1209, 1214 (Pa. Commw. Ct. 2011). Additionally, to prove that a record is exempt under this section, an agency must explain how the information withheld reflects or shows the deliberative process in which an agency engages during its decision-making. *See Twp. of Worcester v. Off. of Open Records*, 129 A.3d 44, 61 (Pa. Commw. Ct. 2016).

Item 6 of the Request seeks "[a]ll staffing requests, internal rate sheets, cost estimates, or projected hour breakdowns used to determine or justify specifically putting aside $127,000 for Robert Half IT services." Such records are likely to be internal to the agency—although if such records were created by a contractor, they are not—but they are very unlikely to reflect any deliberative material. These documents are not, generally, deliberative statements of an employee

6

or official's opinion or suggestion, but purely factual materials on which later deliberation may be based. Because Section 708(b)(10)(i)(a) is based on the deliberative process privilege, the courts have generally found that such factual material must be provided, so long as it is severable from whatever deliberations are present in the document. *McGowan v. Pa. Dep't of Envtl. Prot.*, 103 A.3d 374, 385-386.

Here, the District has provided no evidence that any of the factors of Section 708(b)(10)(i)(A) are met, and the Request facially seeks only purely factual documents. 65 P.S. § 67.708(a)(1). Therefore, the District has not established that any records responsive to Item 6 of the Request are likely to be exempt as predecisional deliberations.

### 3. The District has demonstrated that certain records do not exist

The District argues that that no records responsive to Items 4 and 5 of the Request exist within the possession, custody, or control of the District. In response to a request for records, "an agency shall make a good faith effort to determine if…the agency has possession, custody or control of the record[.]" 65 P.S. § 67.901. While the RTKL does not define the term "good faith effort," in *Uniontown Newspapers, Inc. v. Pa. Dep't of Corr.*, the Commonwealth Court stated:

> As part of a good faith search, the open records officer has a duty to advise all custodians of potentially responsive records about the request, and to obtain all potentially responsive records from those in possession… When records are not in an agency's physical possession, an open records officer has a duty to contact agents within its control, including third-party contractors... After obtaining potentially responsive records, an agency has the duty to review the records and assess their public nature under…the RTKL.

185 A.3d 1161, 1171-72 (Pa. Commw. Ct. 2018) (citations omitted), *aff'd*, 243 A.3d 19 (Pa. 2020). An agency must show, through detailed evidence submitted in good faith from individuals with knowledge of the agency's records, that it has conducted a search reasonably calculated to uncover all relevant documents. *See Burr v. Pa. Dep't of Health*, OOR Dkt. AP 2021-0747, 2021 PA

O.O.R.D. LEXIS 750; *see also Mollick v. Twp. of Worcester*, 32 A.3d 859, 875 (Pa. Commw. Ct. 2011).

> In support of the District's position, the Butler Attestation states:
>
> 2. In my role as ORO for the School District, I received the May 1, 2025 Right-to-Know Law Request ("Request") that is the subject of this Appeal, and I provided the School District's June 9, 2025 Response letter ("Response") via email to Requester.
>
> 3. Before sending the School District's June 9, 2025 Response, I conducted a good-faith search for records potentially responsive to item 5 of the Request by requesting the Department of Technology to search for any emails to or from employees of these two departments and the Superintendent for the month of August 2023, and no emails were found.
>
> 4. In addition, in my capacity as CFO/COO and as Purchasing Agent for the School District, I am aware that the subject Blanket Purchase Orders (BPO's) were prepared by me as estimates for budgeting purposes and not presented to the School Board. I did not prepare memos or handwritten notes.
>
> 5. Also, in regard to both items 4 and 5 of the Request, in my capacity as CFO/COO and as Purchasing Agent, I am aware that my preparation of the BPO's was determined based on the anticipated/estimated annual costs for services and the frequency of payments. If it is determined that a vendor will need to be paid on a monthly basis, a BPO is prepared for the payment efficiency of not having to prepare a PO each time. For its part, the School Board votes to approve the payment of the bills from vendors such as Robert Half, not BPO's.
>
> 6. As a result of my search, and based upon my personal knowledge, I have found that no records exist that would be responsive to Requester's request items 4 and 5.
>
> 7. In addition, as to these same records, I personally do not possess such records and have no firsthand knowledge of the whereabouts of any such records.

Butler Attestation, ¶¶ 2-7. The Butler Attestation is written by the District's Open Records Officer, who is also the CFO/COO of the District and the putative author of any responsive documents. *Id.* at ¶ 4. Additionally, Mr. Butler explains the process by which the BPOs were estimated and prepared and explains why the responsive records do not exist. *Id.* at ¶ 5. As a result, the Attestation establishes that a search was conducted and no responsive records were located. *Id.* at

¶¶ 5-7. Finally, no evidence or argument has been presented to counter the statements in the Butler Attestation.

Accordingly, based on the evidence presented, the District has demonstrated that no records responsive to Item 4 or Item 5 of the Request exist within its possession, custody or control. *See Hodges*, 29 A.3d at 1192 (Pa. Commw. Ct. 2011); *see also Pa. Dep't of Health v. Mahon*, 283 A.3d 929 (Pa. Commw. Ct. 2022) (concluding that, in the absence of countervailing evidence, an agency may satisfy its burden of proving a record does not exist by submitting "either an unsworn attestation by the person who searched for the record or a sworn affidavit of nonexistence of the record").

## CONCLUSION

For the foregoing reasons, the appeal is **granted in part** and **denied in part**, and the District is required to provide all records responsive to Item 6 of the Request within 30 days. This Final Determination is binding on all parties. Within thirty days of the mailing date of this Final Determination, any party may appeal to the Delaware County Court of Common Pleas. 65 P.S. § 67.1302(a). All parties must be served with notice of the appeal. The OOR also shall be served notice and have an opportunity to respond according to court rules as per 65 P.S. § 67.1303, but as the quasi-judicial tribunal adjudicating this matter, the OOR is not a proper party to any appeal and should not be named as a party.[2] All documents or communications following the issuance of this Final Determination shall be sent to oor-postfd@pa.gov. This Final Determination shall be placed on the OOR website at: http://openrecords.pa.gov.

---

[2] *Padgett v. Pa. State Police*, 73 A.3d 644, 648 n.5 (Pa. Commw. Ct. 2013).

**FINAL DETERMINATION ISSUED AND MAILED:   July 7, 2025**

*/s/ Jordan Davis*
_____

JORDAN C. DAVIS
SENIOR APPEALS OFFICER


Sent to:
      Charles Gibbone (via e-file portal)
      Craig Butler, AORO (via e-file portal)
      James Musial, Esq. (via e-file portal)

10

**EXHIBIT U-3: Attestation of Craig A. Butler (Dated July 7, 2025) –
No Supporting Documentation or Knowledge of Staffing Need**

In this sworn affidavit submitted in response to the Plaintiff's Right-to-
Know appeal (AP 2025-1598), Craig A. Butler, the District's Chief
Financial Officer and head of technology operations, admits that no
internal documentation, communications, or staffing needs assessments
were used to support the creation of the $87,000 BPO for Robert Half.
Despite overseeing the department that employed the Plaintiff, Butler
confirms that no records exist explaining the allocation. Notably, Butler
never met or interacted with the Plaintiff during his entire 13-month
tenure. This sworn statement demonstrates that the Plaintiff's role was
not meaningfully evaluated, further supporting the allegation that the
District acted without administrative due process, and that Plaintiff's
termination was detached from any legitimate operational review — thus
bolstering both the First Amendment retaliation and Monell claims.

**COMMONWEALTH OF PENNSYLVANIA**
**OFFICE OF OPEN RECORDS**

In the Matter of             :

CHARLES GIBBONE     :
Requester,              :     Docket No.: AP 2025-1598

                      :
v.                    :

                      :
SOUTHEAST DELCO SCHOOL    :
DISTRICT,              :
Respondent.

## ATTESTATION OF CRAIG A. BUTLER

1.    I, Craig A. Butler, serve as the Chief Operating and Financial Officer ("COO/CFO") and Open Records Officer ("ORO") for Southeast Delco School District ("School District").

2.    This attestation is being submitted in response to the Office of Open Records' July 7, 2025 Final Determination directing the School District to provide "all records responsive to Item 6 of the [RTKL] Request within thirty days."

3.    The OOR specified these records, to the extent that the District maintains each type of record, as "four particular types of documents: staffing requests, internal rate sheets, cost estimates and projected hour breakdowns [which were consulted to determine the amounts of the BPO's totaling $127,000]."

4.    In my capacity as CFO/COO and as Purchasing Agent for the School District, I am aware that the amounts of the BPO's prepared by me were determined based on the anticipated/estimated annual costs for services and the frequency of the payments.

5.    As a result of my good-faith search, and based upon my personal knowledge, I have found that no types of records specified by the OOR as "staffing requests, internal rate sheets, cost estimates [or] projected hour breakdowns" were consulted to determine the amounts of the BPO's totaling $127,000.

6.    I personally do not possess such records as specified by the OOR and have no firsthand knowledge of the whereabouts of any such records as specified by the OOR.

7.    I, Craig A. Butler, do hereby swear that the above factual statements are true and correct to the best of my knowledge and belief. I make these statements knowing that they are subject to penalty for perjury under the laws of the United States of America.

Date: _August 6_, 2025        Signature: _____

                                             Craig A. Butler

2

## EXHIBIT V: Academy Park Administration Praise and Acknowledgment

This is an email thread in which multiple Academy Park administrators—including Assistant Principal Latarsha Threadgill and Principal Richard Sherin—publicly thank Plaintiff for his professionalism, expertise, and work ethic. The email was sent in celebration of National IT Professional Day and highlights Plaintiff's key role in supporting Academy Park's daily IT operations. This is especially relevant because Plaintiff's physical office was located inside Academy Park, and he worked directly under its administrative team. These statements of support underscore the disconnect between positive feedback from immediate supervisors and the eventual retaliatory termination orchestrated by CFO Craig Butler, further supporting Plaintiff's First Amendment retaliation and Monell claims.

**From:** Charles Gibbone <cgibbone@sedelco.org>
**Sent:** Tuesday, September 19, 2023 10:35 AM
**To:** Latarsha Threadgill
**Cc:** Richard Sherin; Charles Baxter; Lamar Alexander; Donna Scott-Brown
**Subject:** RE: Thank you-National IT Professional Day

Good morning,

Thank you for your email, and big thanks to administration for giving me an environment where I can take ownership of issues with trust and respect. I appreciate your kind words and am happy to help!

PS- I had no idea there was even a such thing as a Happy National IT Professional Day, so I guess you really do learn something new every day.

Sincerely,
Charles

**From:** Latarsha Threadgill <lthreadgill@sedelco.org>
**Sent:** Tuesday, September 19, 2023 7:58 AM
**To:** Charles Gibbone <cgibbone@sedelco.org>
**Cc:** Richard Sherin <rsherin@sedelco.org>; Charles Baxter <cbaxter@sedelco.org>; Lamar Alexander <lalexander@sedelco.org>; Donna Scott-Brown <dscottbrown@sedelco.org>
**Subject:** Thank you-National IT Professional Day

Good Morning Mr. Gibbone

We wanted to take a moment to express our gratitude for the exceptional IT support you provide to Academy Park.  Your expertise and dedication plays a pivotal role in resolving technical challenges we face on a daily basis.  We are thankful for your hard work and professionalism.

Happy National IT Professional Day.

Academy Park Admin Team

*Mrs. Latarsha Threadgill, M.Ed, MBA*
*Assistant Principal*
*Academy Park High School*
*Lthreadgill@sedelco.org, lthreadgill@sedstudent.org*
*610-522 4330 ext 6237*

1

## EXHIBIT W-1: January 29, 2024 Text from Robert Half Recruiter Abby Fox

This sub-exhibit contains a January 29, 2024 text message from Abby Fox, Plaintiff's recruiter at Robert Half. Fox confirms that both Sunni Jennings (Technology Director) and Matt Miller (Technology Supervisor) had "all great things to say" about Plaintiff and that the District was planning to open a full-time position for which Plaintiff would be eligible to apply. She also notes that the board held a meeting to discuss adding more IT staff, signaling forward-looking institutional planning. This supports Plaintiff's claim that a transition to permanent employment was reasonably expected — and that his abrupt termination following protected speech deviated from the expected hiring trajectory. This is relevant to both the First Amendment retaliation claim and the Monell pattern of pretextual decision-making.

11:12

abby fox >

Jan 29, 2024 at 9:40 AM

Hii! So sorry. Have been dealing with a few personal things last week. But I did connect with Sunni and Matt as well- they had all great things to say! I believe they are opening a full time position to which you would be able to apply and go through the process of potential full time. In addition, they mentioned there have been a lot of changes but they had a meeting with the board to discuss additional help at the schools for some upcoming needs.

I have a follow up in a couple of weeks again!

On another note/ things are still pretty slow in terms of hiring on my end- I don't have much at all but of course will let you know if something comes up!

iMessage

**EXHIBIT W-2: March 14, 2023 Email from Robert Half to IT Director Dan Kitchen Re: Potential Conversion of Plaintiff to Full-Time Employment**

This sub-exhibit includes an email chain between May Youngworth of Robert Half and Southeast Delco IT Director Dan Kitchen, in which Ms. Youngworth states: *"Really glad you like Charles enough to potentially convert them!"* and provides the conversion fee scale for hiring Plaintiff as a full-time employee. Kitchen responds on June 29, 2023, informing her to forward approvals to Judy Orner going forward, as he was departing the District. This email supports the claim that District officials were already considering converting Plaintiff to a permanent employee due to his performance and value to the department. This intent never materialized, and instead, Plaintiff was formally interviewed nearly a year later—only to be rejected shortly after engaging in protected speech. This demonstrates inconsistent treatment and raises questions about retaliatory motive, central to Plaintiff's First Amendment retaliation and Monell claims.

**From:** Dan Kitchen <dkitchen@sedelco.org>
**Sent:** Thursday, June 29, 2023 2:10 PM
**To:** Youngworth, May (03720)
**Subject:** RE: RHT Conversion Scale

Hello,

I am taking a position at another school district.
Please start sending the approvals for Charles Gibbone to Judy Orner jorner@sedelco.org

Thank you,

Daniel Kitchen
Director of Technology
Southeast Delco School District
1560 Delmar Drive
Folcroft, PA 19032
Phone 610-522-4300 Ext. 5310

**From:** Youngworth, May (03720) <May.Youngworth@roberthalf.com>
**Sent:** Tuesday, March 14, 2023 2:50 PM
**To:** Dan Kitchen <dkitchen@sedelco.org>
**Subject:** RHT Conversion Scale

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hi Dan,

Really glad you like Charles enough to potentially convert them!

We do have a Conversion fee and depending on how long you utilize him will depend on how much the fee is. It is important to note that this is based on hours the candidate has work for your company.

Our conversion scale if you were to hire them is:
**Conversion fee (% first year salary)**
**0-320 hours: 25%**
**321-640 hours: 20%**
**641-960 hours: 15%**
**961-1280 hours: 10%**
**1281+ hours: 3k flat fee**

If you have any questions or concerns, please feel free to reach out!

Thanks!

**May Youngworth**
Client Solutions Manager
**Technology**
267.996.3747 x67037 Cell: 201.317.5127
Connect with us: LinkedIn | Facebook | Twitter | Instagram | YouTube
**Robert Half** | 1735 Market Street | Suite 2500 | Philadelphia | PA 19103  | roberthalf.com



**EXHIBIT X:  February 17, 2023 Email from Robert Half Recruiter Abby Fox Offering Temporary IT Support Role at Southeast Delco School District**

This exhibit is an email from Robert Half recruiter Abby Fox, dated February 17, 2023, offering the Plaintiff a short-term IT Support Technician role at Southeast Delco School District. The job description outlined a basic technical support position lasting 1–2 months on-site in Folcroft, Pennsylvania, with standard hours (Monday through Friday, 8:00 AM to 4:00 PM). The role emphasized tasks such as break/fix support on laptops and desktops, Windows and Google Cloud environments, Microsoft Office, hardware/software deployment, and imaging with Clonezilla and Kangaroo. Light A/V work and strong customer service skills were also listed as requirements. The email confirms that the position was temporary and suggests the possibility of long-term extension contingent upon performance, which did in fact occur. This foundational exhibit helps establish the nature and scope of the Plaintiff's job duties at the outset of his tenure, confirming that whistleblowing on financial mismanagement, infrastructure failures, and systemic policy issues fell well outside his core responsibilities—thus qualifying his speech as protected under Garcetti v. Ceballos. It also supports claims that the later justifications given for his termination (e.g., alleged unprofessionalism) were pretextual. By framing the Plaintiff's employment as contingent and performance-based, this document helps underscore that his firing only occurred after engaging in protected activity, thereby reinforcing claims of First Amendment retaliation (42 U.S.C. § 1983), Monell liability, and Pennsylvania Whistleblower Law violations.

| | |
|---|---|
| **From:** | Fox, Abigail (03720) <Abigail.Fox@roberthalf.com> |
| **Sent:** | Friday, February 17, 2023 10:35 AM |
| **To:** | 'Charles G' |
| **Subject:** | Additional Opportunity |

Hi Charles,

I know you said that you were looking for something remote or hybrid, I do have a short term project with SE Delco, which is located in Folcroft, not too far from you!

**Company:** SE Delco School District (https://www.sedelco.org/Page/1)
**Location:** 1560 Delmar Drive, Folcroft, PA 19032
**Role:** IT Support Tech
**Duration:** 1-2 months
**Pay: 21hr**
**Process:** Resume review/Direct Start for solid techs
- Compliance includes Criminal, FBI child abuse and finger printing checks
**Job Order Number:** 03720-0012599507

**Schedule:**
Monday-Friday (8am-4pm)- **37.5 hour work week**


**Call Notes:**
- Customer service and communication skills are important
- Technical support and ticket support (remote and via deskside support)
- Will be supporting 2 locations but both within a mile of each other (must have reliable vehicle)
- Main technical skills:
  - Focused around break/fix with laptops and desktops
  - Familiarity with google cloud (GCP)
  - Windows support/Microsoft suite
  - Deployment and installation of hardware and software (utilize Dell/Lenovo hardware)
  - Imaging experience nice to have (they utilize clonezilla and kangaroo for imaging)
  - Light A/V work as well


**Abby Fox**
**Branch Director of Recruiting**
**Technology**
Company: (888) 396-0099 Ext: 67118
Direct Line: (267) 996-4347
Connect with us: LinkedIn | Facebook | Twitter | Instagram | YouTube | Blog
**Robert Half** | 1735 Market Street | Suite 2500 | Philadelphia | PA 19103 | roberthalf.com



**rh Robert Half**®
Talent Solutions

**EXHIBIT Y: Post-Termination IT Infrastructure Overhauls (Board Meeting Minutes)**

This exhibit contains six sub-exhibits of Southeast Delco School District Board of Directors' Committee of the Whole meeting minutes between June 2024 and March 2025. These records show a sweeping series of infrastructure improvements, technology upgrades, and modernization initiatives, most of which occurred only after Plaintiff's protected disclosures about unsafe, outdated, and noncompliant systems. The timing of these expenditures, coupled with the District's prior refusal to act during Plaintiff's tenure, supports his Monell claim of deliberate indifference and retaliation.

## EXHIBIT Y-1: June 20, 2024 – HR Software Upgrade Approval

This sub-exhibit contains an excerpt from the June 20, 2024 Committee of the Whole meeting minutes in which the Board approved an agreement with PowerSchool for implementation of "Unified Talent" modules. These upgrades replaced the District's outdated HR software systems, which lacked integration and efficiency. During Plaintiff's tenure, internal HR communication and contract records were inconsistent and error-prone—conditions he documented in prior protected speech. The approval of this contract just weeks after his termination signals that the District only acted once whistleblowing pressure was removed.

WHEREAS, Act 1 requires school districts of the second, third, and fourth class to provide by resolution for the collection and payment of school real property taxes in installments for certain eligible taxpayers;

WHEREAS, Southeast Delco School District (hereinafter "Southeast Delco") is a school district of the second class;

WHEREAS, Act 1 excludes from installment treatment interim or delinquent school property taxes;

WHEREAS, Southeast Delco pursuant to Act 1 has decided to authorize the collection and payment of school real property taxes in installments for all eligible taxpayers.

AND NOW, on this 27th day of June, 2024, it is hereby RESOLVED by Southeast Delco the following:

1. All taxpayers in the Southeast Delco School District are eligible to pay school real property tax in installments.

2. Taxes shall be paid in no more than three (3) equal installments and according to the following schedule:
   a. Installment #1 due no later than August 1 and with 10% penalty if received after August 1;
   b. Installment #2 due no later than October 1 and with 10% penalty if received after October 1;
   c. Installment #3 due no later than December 1 and with 10% penalty if received after December 1.

3. A taxpayer's timely payment in full of Installment #1 shall be conclusive evidence of the taxpayer's intention to pay school real property taxes by installment.

9. **Approve** the software subscription, implementation and hardware fees for the upgrade of the human resources software. Services will be provided by Criterion, in the amount not to exceed $24,570.00. *Supporting document attached*

10. **Approve** the exoneration of church properties from the real estate tax levied for 2024/2025 Fiscal Year.

11. **Approve** the appointment of Craig A. Butler, Chief Operating and Financial Officer, as the primary agent on the Delaware County School District Joint Purchasing Board.

12. **Approve** the year-end accounting close for financial records of Southeast Delco School District for fiscal year 2023/2024 and all necessary budgetary transfer.

13. **Approve** the selection of the Pennsylvania Trust to provide actuarial services utilizing Conrad Siegel actuaries to satisfy the accounting valuation of post-employment retirement benefits as required under GASB 75.

14. **Approve** the district's membership in the Delaware Valley Consortium for Excellence and Equity for 2024/2025, at an annual fee of $12,000 paid from the General Fund.

15. **Approve** the library contribution of $1,000 each to Collingdale, Folcroft, Sharon Hill boroughs and Darby Township.

**EXHIBIT Y-2: August 15, 2024 – HVAC Unit Installation at Darby Township School**

This sub-exhibit shows that the District approved HVAC upgrades at Darby Township School, including installation of new rooftop units. One of these units was responsible for cooling the technology office where Plaintiff and other technician frequently worked under extreme heat conditions during his tenure. The HVAC system's inadequacy was among the operational failures Plaintiff raised internally. The timing of the repairs—several months after his termination—further reflects a pattern of deliberate inaction until after protected speech was silenced.

**15.**    **Approve** the attached supplemental positions for the 2024-2025 school year.
*Supporting documentation attached*

**Non-Voting Human Resources Agenda Items to be Discussed:**
No Items

**POLICY**
No Items

**PROPERTY**

1.    **Approve** the instillation of a HVAC split unit at Darby Township School in the estimated amount not to exceed $15,000.00.

**Non-Voting Property Agenda Items to be Discussed:**
- Update for modernization projects
- ESC renovations & Board Room update

**SAFETY**
No Items

**UPCOMING EVENTS / MEETINGS**
School Board Business – Thursday, August 22, 2024 – 7:00 PM
Committee of the Whole – Thursday, September 19, 2024 – 6:00PM
School Board Business – Thursday, September 26, 2024 – 7:00 PM

**EXHIBIT Y-3: October 17, 2024 – District-Wide Wiring, Laptop, and SSO Upgrades**

This sub-exhibit reflects approval of substantial technology infrastructure upgrades, including new wiring throughout the District, Dell laptop purchases, audio-visual system replacements, and implementation of ClassLink single sign-on (SSO) software. Plaintiff had raised serious concerns about outdated devices, classroom wiring failures, and lack of secure account provisioning during his employment. These deficiencies were ignored at the time but rapidly corrected after Plaintiff's protected disclosures and termination—showing institutional acknowledgment of systemic failures only after whistleblower retaliation.

8. **Approve** the updated listing of approved field trip locations available for consideration by principals for in-state classroom field trips for the 2024-2025 school year *(Updated October 2024)*.
   *Supporting documentation attached*

9. **Approve** the purchase of ClassLink SSO annual license in the amount not to exceed $20,397.00 paid from the general fund.
   *Supporting documentation attached*

10. **Approve** an agreement with K12 Insight to provide a tool to facilitate collaboration across district staff, in real-time to deliver a single, timely response to parents/guardians via any channel (email, web, phone, text message, or social media) for a one-year period starting from October 31, 2024 through October 30, 2025, at a cost not to exceed $38,430.
    *Supporting documentation attached*

   **Non-Voting Education Agenda Items to be Discussed:**
   - APHS Scheduling Update

## FINANCE

1. **Ratify** the purchase of Chromebook 3110, from Dell Corporation, via COSTARS Contract #003-E22-603, in the estimated amount not to exceed $385,000. Funding Source: 2024-2025 Additional Funds New Initiatives.

2. **Ratify** the purchase of Latitude laptop computers, for the teaching staff, from Dell Corporation, via COSTARS Contract #003-E22-603, in the estimated amount not to exceed $172,000. Funding Source: 2024-2025 Additional Funds New Initiatives.

3. **Ratify** the purchase of mobile radios, district-wide, from R.F. Design & Integration, Inc., in the estimated amount not to exceed $70,000. Funding Source: 2024-2025 Additional Funds New Initiatives.

4. **Ratify** the upgrade of district communication wiring infrastructure and reprogramming of existing mobile radios, district-wide, from R.F. Design & Integration, Inc., in the estimated amount not to exceed $112,000. Funding Source: 2024-2025 Additional Funds New Initiatives.

5. **Approve** the purchase of communication repeaters extending the range of communications, district-wide, from R.F. Design & Integration, Inc., in an estimated amount not to exceed $84,000. Funding Source: 2024-2025 Additional Funds New Initiatives.

6. **Resolve** WHEREAS, on June 27, 2006, the Pennsylvania legislature passed Act 1 of Special Session 2006, entitled the "Taxpayer Relief Act" (hereinafter "Act 1");

   WHEREAS, Act 1 requires school districts to limit tax increases to the level set by an inflation index unless the tax increase is approved by voters in a referendum or the school district obtains from the Department of Education or a court of common pleas certain referendum exceptions;

   WHEREAS, Act 1 does, however, allow a board of school directors to elect to adopt a resolution indicating that it will not raise the rate of any tax for the support of the public schools for the following fiscal year by more than its index, provided this resolution must be adopted no later than 110 days prior to the date of the election immediately preceding the upcoming fiscal year;

**EXHIBIT Y-4: November 14, 2024 – Purchase of Digital Archiving Software**

This sub-exhibit details the Board's approval of a contract with "Archive Social," a software solution for digital records archiving. Plaintiff had repeatedly encountered poor document retention, lack of organized digital infrastructure, and risky manual processes during his time supporting District IT operations. These practices raised both FERPA and cybersecurity concerns. The Board's post-termination decision to implement a modern archiving system illustrates a reactive strategy to concerns Plaintiff had previously escalated, reinforcing a pattern of willful neglect followed by retroactive correction.

**SOUTHEAST DELCO SCHOOL DISTRICT**
**BOARD OF SCHOOL DIRECTORS**
**COMMITTEE OF THE WHOLE**
**THURSDAY, NOVEMBER 14, 2024**

**FOR DISCUSSION**

1. Committee Reports
   a.) Education
   b.) Finance
   c.) Human Resources
   d.) Parent Student Advisory
   e.) Policy
   f.) Property
   g.) Safety and Security

2. Executive Session
   a.) Personnel
   b.) Legal Items
   c.) Negotiations

**OLD / UNFINISHED BUSINESS**

**NEW BUSINESS**

**EDUCATION**

1. **Ratify** Reynolds Business Systems to digitally archive all active and inactive Special Education files at a cost of $94,418.69.
   *Supporting documentation attached*

2. **Approve** the agreement between the Southeast Delco School District and Delaware County Intermediate Unit for English Language Development services for student ID# 9322002.

3. **Approve** the agreement between Southeast School District and Fairwold Academy for student # ID 425129.

4. **Approve** the revised agreement between Southeast Delco School District and Blazerworks Service Agreement. This revision is due to an Entity Name Change that supplements the Blazerworks Client Service Agreement between VocoVision LLC d/b/a Blazerworks (BW) and it Clients effective July 1, 2024, where VocoVision LLC d/b/a Blazerworks has transitioned to a new entity, **Blazerworks, LLC.**

1

**EXHIBIT Y-5: February 20, 2025 – AES Security Cameras, Laptop Upgrades, and More**

This sub-exhibit includes the approval of multiple large-scale technology and security upgrades: a contract with AES for security camera installation, Dell laptop purchases, and other hardware deployments. Many of these issues, such as broken hallway cameras, obsolete student laptops, and a lack of building security, were documented by Plaintiff during his employment. The sweeping scope of the February 2025 upgrades reveals the District's post-termination effort to address critical failures that were previously dismissed when raised internally.

3. **Approve** the out of district placement at Melmark School for the 2024-2025 school year for the following student #133145.
   *Supporting document attached*

4. **Approve** the expulsion of the following student:

   | ID | Date | School | Reason |
   |---|---|---|---|
   | 325031 | 01/16/2025 | APHS | Discipline |

5. **Approve** the updated APHS Course Selection Guide for 2025-2026.
   *Supporting document attached*

6. **Approve** members of the Boy's Track team to attend the New Balance National Championship from March 13th-16th, 2025 in Boston, Massachusetts.

7. **Approve** a two-year contract with Lifetouch to provide student photos and ID cards.
   *Supporting document attached*

8. **Ratify** the contract with DJ Heavy Hittaz to provide entertainment services during the Boys and Girls Basketball Senior Nights at a cost of $400.00.
   *Supporting document attached*

9. **Approve** the updated listing of approved field trip locations available for consideration by principals for in-state classroom field trips for the 2024-2025 school year (Revised February 2025).
   *Supporting document attached*

10. **Approve** to amend resolution 6.07 of the November 21, 2024 agenda: Approve the following principal requests for out of state trips: Academy Park High School – Morey's Pier – Wildwood, NJ – 6/5/25 Academy Park High School – Medieval Times – Hanover, MD – **4/4/25**

    **Non-Agenda Items**
    None


**FINANCE**

1. **Ratify** the consortium purchasing agreement between the DCIU and Southeast Delco School District for the Frontline Education Professional Development Management system in the amount of $10,046.00 to be paid from the general fund.

2. **Ratify** the purchase of 100 Dell Latitude 3450, BTX laptop computers from Dell Technologies, for teacher use, the amount of $94,287.00, to be paid from the General Fund New Initiatives funding.
   *Supporting document attached*

3.  **Ratify** the consortium purchasing agreement between the DCIU and Southeast Delco School District for the Frontline Education Professional Development Management system in the amount of $10,046.00 to be paid from the general fund.

4.  **Approve** the agreement with ePlus for the renewal of enterprise licenses for district WiFi access points for a term of 5 years at a cost not to exceed $84,445.00 to be paid from the general fund.
    *Supporting document attached*

5.  **Approve** the proposal from Izzard Enterprises LLC for the renewal of the Barracuda support services for email filtering for one-time cost not to exceed $20,000.00, to be paid for from the general fund.
    *Supporting document attached*

6.  **Approve** the proposal from Izzard Enterprises LLC for the renewal of the Barracuda Advance email Security Service (Cloud Based) for email filtering for the term of one year at a cost not to exceed $25,968.00, to be paid for from the general fund.
    *Supporting document attached*

7.  **Approve** the proposal from Dell Technologies for the purchase of 30 touch-screen Chromebook units for student use at a cost not to exceed $8,952.60, to be paid for from the General Fund New Initiatives funding.
    *Supporting document attached*

8.  **Approve** the authorization to purchase one 2025 Ford Transit-250 Cargo RWD Medium Roof Van 148" WB Base (R1C) for the maintenance department, via CoStars State Contract, from Fred Beans Ford of West Chester, in the amount of $60,235.94, to be paid from the general fund. This vehicle will replace two antiquated maintenance utility vehicles.
    *Supporting document attached*

9.  **Approve** the authorization to purchase three Kubota Zero Turn Z700 Series Z781Kwi-60 lawnmowers for the maintenance department, via CoStars State Contract, from Eagle Power Turf and Tractor in the amount of $37,025.10, to be paid from the general fund. This vehicle will replace two antiquated maintenance utility vehicles.
    *Supporting document attached*

10. **Approve** the purchase and installation PremSys Intelligent Dual Reader system for entry doors, from AES, at the Delcroft School in the amount of $27,607.00, to be paid from the general fund.
    *Supporting document attached*

11. **Approve** the Superintendent to attend the PASA Leadership Forum from March 18 – 21, 2025 in State College, PA.
    *Supporting document attached*

12. **Approve** the extension of the engagement of Transpar Group, Inc., to provide consulting services related to transportation assessments and implementation of routes, scheduling and overall operations at an estimate cost of $150,000.00. Funding Source-General Fund.
    *Supporting document attached*

**EXHIBIT Y-6: March 20, 2025 – $481,000 Contract for CCTV Modernization**

This sub-exhibit shows Board approval of a nearly half-million-dollar contract with CM3 Building Solutions to fully modernize the District's CCTV system. This is one of the most significant IT infrastructure investments in recent years. During Plaintiff's tenure, numerous cameras and wiring throughout the District were nonfunctional, posing student safety and liability risks. Despite Plaintiff's attempts to escalate these concerns internally, no action was taken until almost a year after his termination, highlighting institutional retaliation and conscious disregard for staff warnings.

3. **Approve** the agreement from Advanced Electronic Security to furnish materials and installation services for CCTV modernization at Academy Park High School, Delcroft School, Darby Township School, Sharon Hill School, Harris School, and Southeast Delco Kindergarten Center at a cost not to exceed $498,701.00, to be paid for from the general fund new initiatives funding.
*Supporting document attached*

4. **Approve** the agreement from Renaissance Learning for the Star Reading, Math/Algebra, and Early Literacy (Star Comprehensive Suite) platform, and related professional development for Academy Park High School, Delcroft School, Darby Township School, Sharon Hill School, Harris School, and Southeast Delco Kindergarten Center, for a term commencing on 7/1/2025 and ending on 6/30/2028 at a cost not to exceed $203,586.00, to be paid from the general fund.
*Supporting document attached*

5. **Approve** the attendance of the following individuals at the PASA Women's Caucus in Hershey, PA from May 18th to May 20th, 2025, for Dr. Shannon Reddick-Smack, Dr. Deborah Gibbs-Tapper, LeAnne Hudson, and Barbara Young at a cost not to exceed $1,500.00 per person, to be paid from the general fund.
*Supporting document attached*

6. **Approve** the agreement for the renewal and continued adoption of SAVVAS Envision AGA (Algebra, Geometry, Algebra 2) math instructional materials for Academy Park High School at a cost not to exceed $101,125.44, for a period of 3 years, to be paid from the general fund.
*Supporting document attached*

7. **Approve** the updated listing of approved field trip locations available for consideration by principals for in-state classroom field trips for the 2024-2025 school year (Revised March 2025).
*Supporting document attached*

8. **Approve** the 2025-2028 Comprehensive Plan. The 2025-2028 Comprehensive Plan will be finalized 3/28/25 following the 30-day public review.
*Supporting document attached*

9. **Approve** the 2025-2026 school year calendar.
*Supporting document attached*

**Non-Agenda Items**
- DJ for Spring Sports Senior Events
- Before and After Care RFP

**FINANCE**

1. **Approve** disposal of two antiquated maintenance vehicles, located at the Educational Service Center facility.

**EXHIBIT Z-1: Demand Letter from Plaintiff's Counsel to District Solicitor Robert DiOrio (July 2025)**

A formal demand letter sent by Plaintiff's counsel outlining claims under the First Amendment, Monell liability, and Pennsylvania law. The letter requests a good faith settlement discussion, warning of imminent litigation if unresolved.

Tese Law LLC
1324 Valley Drive
West Chester, PA 19382
www.teselaw.com
(201) 500-TESE
(512) 956-TESE

**T̲L**

Gabriel Vincent Tese, Esquire
Founding Partner
vince@teselaw.com
Licensed in NJ, NY, PA & TX

July 2, 2025

*Via Certified USPS Mail To:*

Robert Diorio, Esquire
DiOrio & Sereni, LLP
1 West Front Street Media, PA 19063

*Copy via email to: rdiorio@dioriosereni.com*

**Re: Charles Gibbone v. Southeast Delco School District and Craig Butler – Demand,
Notice of Claims, and Request for Statute of Limitations Tolling Agreement**

Dear Attorney Diorio:

I understand you are the current Solicitor for the Southeast Delco School District (the "District"). I represent Charles Gibbone in connection with his unlawful termination from the District on April 30, 2024, in retaliation for his protected whistleblower activities and First Amendment speech regarding financial misconduct and waste of taxpayer funds.

Based on my initial investigation, it is my understanding that Mr. Gibbone was terminated less than 24 hours after he (1) sent an email to CFO Craig Butler criticizing the District's financial management and infrastructure failures, and (2) requested to speak at a public board meeting. The District claimed he was terminated for "unprofessionalism" but has since admitted under oath that no documentation exists supporting this allegation. Also, multiple professional references from District colleagues contradict any claims of unprofessionalism.

Even more concerning is that my client's case seems to follow a pattern of retaliation against financial whistleblowers, including the August 2023 removal of Director of Accounting Nikeya Fisher for raising similar concerns. I understand that another employee has recently filed a lawsuit alleging whistleblower retaliation against Mr. Butler and the District and that the District is currently under active criminal investigation by the Delaware County District Attorney's Office for fraud and public corruption.

As detailed in the attached draft complaint, my client has strong claims for:

- First Amendment retaliation under 42 U.S.C. § 1983
- Monell liability against the District
- Pennsylvania Whistleblower Law violations

As a result of Mr. Butler and the District's actions, Mr. Gibbone has suffered significant

July 2, 2025
Re: Charles Gibbone v. Southeast Delco School District and Craig
Butler – Demand, Notice of Claims, and Request for Statute of
Limitations Tolling Agreement

economic damages including substantial lost wages, ongoing reduced earning capacity, and substantial reputational harm.

*STATUTE OF LIMITATIONS TOLLING REQUEST*

While the federal claims are timely, the Pennsylvania Whistleblower Law has a 180-day limitation period. Our position is that this statute was properly tolled until February 2025 when Mr. Gibbone discovered through Right-to-Know proceedings that the District possessed no documentation supporting their stated termination reason.
To facilitate settlement discussions, we request that the District agree to toll all applicable statutes of limitations for 60 days.

*SETTLEMENT DEMAND*

To resolve this matter without litigation, Mr. Gibbone demands $200,000 in damages, plus agreement that the District will provide a neutral employment reference and confirmation from the Board that they will investigate the fraud, waste, and abuse that my client has identified and reported.

Please confirm by July 9, 2025, whether the District will agree to the tolling request. If not, we will file the attached federal complaint immediately to preserve Mr. Gibbone's rights. We believe the evidence clearly establishes liability and look forward to discussing a reasonable resolution.

Regards,

Vince Tese

*Attorney for Charles Gibbone*

*Encl*
Draft Federal Complaint
Draft Tolling Agreement

cc: Charles Gibbone

## EXHIBIT Z-2: Proposed Tolling Agreement Sent by Plaintiff's Counsel (July 2025)

The proposed tolling agreement attached to the letter of demand, giving the District the opportunity to pause the statute of limitations clock while parties explored settlement. The District never signed or returned the agreement, and no negotiations occurred.

## **TOLLING AGREEMENT**

This Tolling Agreement ("Agreement") is entered into on _____, 2025, between Charles Gibbone ("Gibbone") and Southeast Delco School District and Craig Butler (collectively, "District").

## **RECITALS**

WHEREAS, Gibbone has asserted potential claims against District arising from his termination of employment on April 30, 2024;

WHEREAS, Gibbone has provided District with a draft federal complaint outlining potential claims under 42 U.S.C. § 1983 and the Pennsylvania Whistleblower Law, 43 P.S. § 1421 et seq.;

WHEREAS, the parties wish to engage in settlement discussions without the pressure of impending statute of limitations deadlines;

NOW THEREFORE, the parties agree as follows:

1.      TOLLING PERIOD. The running of all applicable statutes of limitations, statutes of repose, and other time-based defenses relating to any and all potential claims by Gibbone against District arising from or relating to Gibbone's employment and termination is hereby tolled from the date of this Agreement through _____, 2025 ("Tolling Period").

2.      COVERED CLAIMS. This Agreement tolls limitations periods for all potential federal and state law claims, including but not limited to claims under 42 U.S.C. § 1983, the Pennsylvania Whistleblower Law, and any other employment-related claims.

3.      EXTENSION. This Agreement may be extended only by written agreement signed by both parties.

4.      TERMINATION. Either party may terminate this Agreement upon seven (7) days' written notice to the other party. Upon termination, the statutes of limitations shall resume running as if the Tolling Period had not occurred.

5.      NO ADMISSION. This Agreement shall not be construed as an admission of liability or wrongdoing by any party.

6.      PRESERVATION OF RIGHTS. Except as specifically set forth herein, all rights and defenses of the parties are expressly preserved.

7.      GOVERNING LAW. This Agreement shall be governed by Pennsylvania law.

--Signatures Follow on Next Page--

1

IN WITNESS WHEREOF, the parties have executed this Agreement.


*Charles Gibbone*
CHARLES GIBBONE

SOUTHEAST DELCO SCHOOL
DISTRICT (Print Name and Title
below)
Name _____

Title _____


CRAIG BUTLER
Craig Butler, individually

**EXHIBIT Z-3: USPS Certified Mail Tracking Receipt to Robert DiOrio, Esq. (Delivered July 9, 2025)**

Photographic evidence of the certified mail receipt showing delivery of the demand letter and tolling agreement to Robert DiOrio at 1 West Front Street, Media, PA 19063, signed for by "Mirjana McIlroy" on July 7, 2025.

7/15/25, 1:47 PM                          USPS.com® - USPS Tracking® Results

**ALERT: SEVERE WEATHER AND FLOODING IN TEXAS, FLORIDA, VIRGINIA, AND THE NORTHE...**

# USPS Tracking®

FAQs >

**Tracking Number:**

Remove ✕

# 95890710527026042924 13

Copy         Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to the front desk, reception area, or mail room at 11:27 am on July 7, 2025 in MEDIA, PA 19063.

**Get More Out of USPS Tracking:**

   **USPS Tracking Plus®**

## Delivered

**Delivered, Front Desk/Reception/Mail Room**

MEDIA, PA 19063
July 7, 2025, 11:27 am

**See All Tracking History**

What Do USPS Tracking Statuses Mean? **(https://faq.usps.com/s/article/Where-is-my-package)**

## Text & Email Updates                                              ⌃

**Select what types of updates you'd like to receive and how. Send me a notification for:**

**Text**        **Email**

☐          ☐  All Below Updates

☐          ☐  Expected Delivery Updates ⓘ

https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=95890710527026042924 13                1/3

☐    ☐  Day of Delivery Updates ⓘ

☐    ☐  Package Delivered ⓘ

☐    ☐  Available for Pickup ⓘ

☐    ☐  Delivery Exception Updates ⓘ

☐    ☐  Package In-Transit Updates ⓘ

**USPS Tracking Plus®**                                                    ⌃

Your item is eligible for USPS Tracking Plus. This feature allows you to buy extended access to your tracking history and receive a statement via email upon request. Without this feature, your regular tracking history is only available on this site until July 4, 2027. To extend your access to this tracking history, select the length of time you would like and confirm your selection. You can only purchase extended history once, so all orders are final and are not eligible for a refund.

**Note:** For multiple tracking numbers, you can save and continue adding USPS Tracking Plus selections to your cart until you are ready to complete your purchase.

3 Years
**$5.25**

5 Years
**$6.25**

7 Years
**$7.30**

10 Years
**$8.50**

☐  I have read, understand, and agree to the **Terms and Conditions.
(https://www.usps.com/terms-conditions/tracking-plus.htm)**

**Confirm Selection**

## Product Information  ∧

**Postal Product:** First-Class Mail®

**Features:** Certified Mail™

**See tracking for related item: 9590940293795002098671 (/go/TrackConfirmAction?tLabels=9590940293795002098671)**

**See Less** ∧

Track Another Package

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

**FAQs**

**EXHIBIT Z-4: Insurance Representative Brian Elias Acknowledgement of Service Without Settlement Engagement (Late July 2025)**

Although Brian Elias of the District's insurance carrier replied to Plaintiff's counsel in late July 2025, he refused to engage in any substantive settlement discussions. His sole communication was to confirm acceptance of service.

Plaintiff retained counsel solely to facilitate potential pre-litigation settlement discussions in good faith.



# UNITED STATES POSTAL SERVICE®

## PRIORITY® MAIL

**PRIORITY MAIL POSTAGE REQUIRED**

- Expected delivery date specifi...
- Domestic shipments include $...
- USPS Tracking® service includ...
- Limited international insurance...
- When used internationally, a cu... ...nations.

*Insurance does not cover certain items. ...
exclusions see the Domestic Mail Manual...

** See International Mail Manual at *http://...
limitations of coverage.

## MAILING BOX
### FOR DOMESTIC AND INT...

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

## TRACKED ▪ INSURED



PS00010133300

1092 February 2024
ID: 13.375 x 11.875 x 2.75
OD: 13.6875 x 12 x 2.875
ODCUFT: 0.273

### VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE



how2recycle.info
Flatten Before Recycling
PAPER BOX



UNITED STATES POSTAL SERVICE®  |  Retail

**P**  |  US POSTAGE PAID  **$11.80**

Origin: 19064
09/25/25
4152620863-45

### PRIORITY MAIL®

3 Lb 6.40 Oz
**RDC 03**

EXPECTED DELIVERY DAY: 09/27/25

C019

SHIP TO:
RM 2609
601 MARKET ST
PHILADELPHIA PA 19106-1732

**USPS TRACKING #**

9505 5150 5463 5268 8182 15



UNITED STATES POSTAL SERVICE®  |  **PRIORITY® MAIL**

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:
Charles Gibbone
925 Beatty Rd
Springfield, PA 19064

PAID SEP 26 2025

TO: Clerk of Court
United State District
Court
Eastern District of PA
James A. Byrne US
Courthouse
601 Market St Rm 2609
Philadelphia PA 9106

Label 228, December 2023     FOR DOMESTIC AND INTERNATIONAL USE